**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MAD DOGG ATHLETICS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| PELOTON INTERACTIVE, INC. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Mad Dogg Athletics, Inc. ("MDA") hereby alleges, for its Complaint against Defendant Peloton Interactive, Inc. ("Peloton"), on personal knowledge as to MDA's own actions and on information and belief as to the actions of others, as follows:

## OVERVIEW OF THE ACTION

1.     MDA created the indoor cycling market with the introduction of its Spinning® bikes and programs in the early 1990s and has been a source of continuous innovation in the fitness industry over the past 25 years. In 1994, cyclists and entrepreneurs John Baudhuin and Johnny Goldberg (affectionately known as "Johnny G" in the Spinning® community) founded MDA to develop the Spinning® indoor cycling program and the Spinner® line of bikes. When John and Johnny G started manufacturing bikes in a garage a few years earlier, they never imagined their cycling-based program and indoor cycling bikes would one day become a global fitness phenomenon and create an entirely new market in the fitness industry. As cyclists, the two were looking to build a better stationary bike for cycling training, and together they built the first Spinner® indoor cycling bike using the ergonomics, feel and geometry of a real road bike. Unlike traditional stationary bikes that were ridden in a seated position, the frame geometry of the

Spinner® indoor cycling bikes allowed riders to alternate seated and standing positions as they would when riding out on the road. By incorporating a high-quality rigid steel frame and components found on traditional road bikes like aluminum cranks, shift levers to adjust resistance, clipless pedals, aerodynamic handlebars and racing saddles, John and Johnny created the first indoor cycling experience for riders that simulated the feel of riding out on the road.



An original Spinner® bike from 1993

2.      Between 1991 and 1994, the two manufactured approximately 150 indoor cycling bikes that went to select studios and gyms in Los Angeles and New York. With John running the business and Johnny G tirelessly promoting the Spinning® program, the pair realized that their indoor cycling program was quickly becoming a mainstream fitness craze. In 1993, Rolling Stone named "Spinning" the "hot exercise" in the magazine's annual "hot list." With the success of their indoor bikes and cycling program, John and Johnny officially incorporated MDA on April 14,

1994, and shortly thereafter registered and trademarked the Spin®, Spinning® and Spinner® names for its extended range of bikes, programs and products.

3.     As demand for Spinner® bikes rapidly increased, MDA licensed its technology and trademarks and outsourced manufacturing to Schwinn to help commercialize the Spinning® indoor cycling bikes and concept. From the very beginning, MDA was not only focused on manufacturing its bikes, but also incorporating the science of cycling and performance training into its programs and classes. In 1995, MDA launched the Spinning® Instructor Certification Program to train the growing number of fitness professionals interested in teaching indoor cycling classes. The Spinning® Instructor Certification Program quickly became the gold standard for indoor cycling education and certification. To date, MDA has trained over 300,000 instructors and has reached millions of enthusiasts in over 80 countries through a worldwide network of thousands of fitness studios and gyms.



Spinning Event, Italy 2020

4.      After Schwinn filed for bankruptcy in 2001, MDA created a new line of Spinner® bikes that incorporated the latest advances in manufacturing technology. The Spinner® NXT became the first indoor cycling bike to incorporate corrosion-resistant aluminum into its designs. Not satisfied with having Spinning® bikes, classes and programs available only in studios and clubs, MDA embarked on an ambitious program to make indoor cycling available to fitness enthusiasts in their homes. In 2003, MDA launched its first Spinner® indoor cycling bike and video series focused on bringing the same expert coaching found in Official Spinning® Facilities to riders at home. Shortly thereafter, Johnny G retired from the business to pursue other interests.

5.      Realizing that there was an increasing demand for home-based Spinning® indoor cycling bikes, programs and content, MDA expanded its line of indoor cycling bikes for the home and its library of instructor-led classes on DVD. In 2008, MDA forever changed the indoor cycling world with the introduction of the eSpinner®—the world's first touch-screen display-controlled indoor cycling bike. The eSpinner® finally brought instructor-led coaching and heart rate training straight to riders in the comfort of their own home. MDA was awarded patent protection on the core functionality of this revolutionary product.



The eSpinner®

4

6.      For the home market, MDA currently manufactures a line of connected Spinner®
bikes and a complete line of Spinning-branded apparel and accessories. In 2018, MDA unveiled
the new Active and Performance Series lines of Spinner® bikes, all high-quality bikes designed for
the home that provide studio-grade quality, ergonomics and functionality. Each of the bike models
in the Active and Performance Series was carefully designed and meticulously engineered to
provide authentic studio experience for riders at home. In addition, the Spinning Digital and
Spinning Digital+ apps provide users at home with the ability to access studio quality classes from
top Spinning instructors from around the world with classes in both English and Spanish.

7.      In the commercial market, MDA works with Precor® to manufacture and distribute
the Spinning® line of commercial indoor cycling bikes. The collaboration leverages Precor's global
operations and MDA's expertise in indoor cycling bikes, programs and education to provide gyms
and studios with everything they need to offer great classes and expert instruction.



The Spinner Chrono® manufactured by Precor®

8.	Peloton is a fitness company founded in 2012 to exploit the indoor cycling market that MDA created. The Peloton Bike, its first commercial product, was released in 2014. Like the eSpinner® bike that MDA released four years earlier, the Peloton Bike features a touch-screen that displays on-demand classes which provide the rider with instructor-led coaching, including instructions to adjust pedaling resistance and vary cadence and riding positions, thereby simulating an instructor-led exercise class in the rider's home.

9.	The Peloton Bike and the recently released Bike+ (collectively, the "Peloton Bikes") incorporate MDA's patented technology covering core features of a stationary exercise bike designed to simulate an instructor-led class in the rider's home, without the right or authority to do so. Without permission from or compensation to MDA, Peloton has built a multi-billion dollar business based in large part on MDA's pioneering patented inventions in the indoor cycling market that MDA founded over 25 years ago. MDA brings this action under 35 U.S.C. § 271 to right these wrongs and remedy Peloton's infringement of United States Patent Nos. 9,694,240 and 10,137,328.

## THE PARTIES

10.	MDA is a corporation organized and existing under the laws of the state of California, having a principal place of business at 2111 Narcissus Court, Venice, CA 90291.

11.	Peloton is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 125 W. 25th Street, New York, NY 10001.

## JURISDICTION AND VENUE

12.	This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

13.     This Court has personal jurisdiction over Peloton. Peloton has continuous and systematic business contacts with the State of Texas, including with the Eastern District of Texas. Peloton, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including through interactive web pages) the Peloton Bikes in the State of Texas and the Eastern District of Texas.

14.     Peloton has been registered to do business in Texas since at least May 27, 2015, has been assigned Texas Taxpayer No. 32057346739, and has a Texas registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, TX 78701.

15.     Peloton, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed its infringing Peloton Bikes into this District and into the stream of commerce with the intention and expectation that the Peloton Bikes will be purchased for use in this District. Peloton has offered and sold and continues to offer and sell the Peloton Bikes for delivery and use in this District.

16.     Venue is proper in this Court under 28 U.S.C. § 1400(b) because Peloton has a regular and established place of business in this District and has committed acts of infringement in this District.

17.     Peloton occupies permanent, physical spaces within this District from which it conducts business. One such space is its campus of over 27,000 square feet located at 6600 Chase Oaks Blvd., Plano, Texas 75023.



Peloton campus located at 6600 Chase Oaks Blvd., Plano, Texas 75023

18.     Another example of a permanent, physical space occupied by Peloton within this District is its showroom located at 7500 Windrose Avenue, Plano, Texas 75024. Peloton provides personalized demonstrations of, and sells and offers to sell, the Peloton Bikes at this location.

Peloton showroom at 7500 Windrose Avenue, Plano, Texas 75024



19.     Peloton has committed acts of infringement in this District by offering for sale and selling the Peloton Bikes in this District, including from the Peloton showroom located in Plano, Texas. Pursuant to these sales, Peloton has delivered (either itself or through authorized agents) Peloton Bikes for use in this District.

20.     Peloton has also induced infringement in this District by providing manuals and documentation to owners and/or users of Peloton Bikes located in this District that teach them to use, and with the intent that they use, the Peloton Bikes in an infringing manner. Peloton has further induced infringement in this District by providing software to owners and/or users of Peloton Bikes located in this District that enable them to use, and with the intent that they use, the Peloton Bikes in an infringing manner.

### COUNT I

**(Infringement of U.S. Patent No. 9,694,240)**

21.     MDA incorporates herein by reference paragraphs 1 through 20 above as if set forth in full.

22.     On July 4, 2017, the United States Patent and Trademark Office duly issued U.S. Patent No. 9,694,240, entitled "PROGRAMMED EXERCISE BICYCLE WITH COMPUTER AIDED GUIDANCE" (the "'240 patent"). A true and correct copy of the '240 patent is attached hereto as Exhibit A. The '240 patent is directed to a stationary exercise bike along with a display that provides instructions to lead a rider through an exercise program.

23.     The '240 patent has been in full force and effect since its issuance. MDA owns by assignment the entire right, title, and interest in and to the '240 patent, including the right to seek damages for past, current, and future infringement thereof.

24. Peloton began selling and offering to sell the Peloton Bike in or about January 2014 and the Peloton Bike+ in or about September 2020.

25. Peloton has infringed and continues to infringe the '240 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling, exporting from, and/or importing into the United States the Peloton Bikes, without authority or license.

26. Peloton indirectly infringes the '240 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(b), by (among other things) and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Peloton's partners, customers and end-users, in this District and elsewhere in the United States. For example, Peloton's partners, customers and end-users directly infringe through their use of the inventions claimed in the '240 patent. Peloton induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Peloton Bikes, and providing instructions, documentation, and other information to customers and end-users instructing them to use the Peloton Bikes in an infringing manner, including (i) instruction, technical support and services, (ii) training, marketing, product manuals, and advertisements, and (iii) software and mobile applications providing the foregoing and enabling customers and end-users to use the Peloton Bikes in an infringing manner. As a result of Peloton's inducement, Peloton's partners, customers and end-users use the Peloton Bikes in the way that Peloton intends and that directly infringes the '240 patent. Peloton has known of the '240 patent, and that the Peloton Bikes infringe the '240 patent, or has been willfully blind to such infringement, since at least the filing of this Complaint. Despite this knowledge of the '240 patent and that the Peloton Bikes infringe the '240 patent, Peloton has continued to perform these

affirmative acts with the intent, or willful blindness, that the induced acts directly infringe the '240 patent.

27.     Peloton also indirectly infringes the '240 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Peloton's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Peloton Bikes and causing the Peloton Bikes to be manufactured, used, sold, and offered for sale, contribute to Peloton's customers' and end-users' use of the Peloton Bikes, such that the '240 patent is directly infringed. The Peloton Bikes are a material part of the invention of the '240 patent, are not a staple article or commodity of commerce, have no substantial non-infringing use, and are known by Peloton to be especially made or adapted for use in the infringement of the '240 patent. Peloton has known of the '240 patent, and that the Peloton Bikes infringe the '240 patent, or has been willfully blind to such infringement, since at least the filing of this Complaint. Despite this knowledge of the '240 patent and that the Peloton Bikes infringe the '240 patent, Peloton has continued to perform these affirmative acts with knowledge of the '240 patent and with intent, or willful blindness, that they cause the direct infringement of the '240 patent.

28.     Claim 1 of the '240 patent is reproduced below with the addition of labels [a], [b], [c], [d], [e], [f], and [g] corresponding to limitations of the claim.

1.     An exercise bike, comprising:

[a]     a frame that is configured to allow a rider to ride in sitting and standing positions;

[b]     a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;

[c]     a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;

[d]     a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;

[e]     a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding positions including sitting and standing positions, and that stores power exerted by the rider;

[f]     a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions, thereby simulating an instructor-led exercise class, and that displays power exerted by the rider; and

[g]     an input device that is coupled to the computer and that enables the rider to input data into the computer.

29.     The Peloton Bikes embody each and every limitation of at least claim 1 of the '240 patent, literally or under the doctrine of equivalents, as described in the non-limiting examples set forth below from the Peloton Bike. The Peloton Bike+ has the same features described below and

embodies each and every limitation of at least claim 1 of the '240 patent for the same reasons as does the Peloton Bike. These non-limiting examples are preliminary and are not intended to limit MDA's right to modify these non-limiting examples or allege that other aspects of the Peloton Bikes infringe the identified claim, or any other claims, of the '240 patent.

**"1.    An exercise bike, comprising:"**

30.    The Peloton Bike is an exercise bike as shown in the image below. (The excerpted images in this Complaint are from the Peloton Bike Manual, *Peloton Support + Bike + Getting Started With Your Bike* (2018), *available at* https://support.onepeloton.com/hc/en-us/articles/218134663-Peloton-Manuals.)



**"[a]    a frame that is configured to allow a rider to ride in sitting and standing positions;"**

13

31.     As annotated in red in the image below, the Peloton Bike includes a frame that is configured to allow a rider to ride in sitting and standing positions.



**"[b]    a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;"**

32.     As annotated in red in the image below, the Peloton Bike includes a direct drive mechanism that couples pedals to a flywheel.



SPECIFICATIONS

33.     The direct drive mechanism facilitates a smooth transition between siting and standing positions.

**"[c]     a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;"**

34.     As annotated in red in the image below, the Peloton Bike includes handlebars that are coupled to the frame and provide the rider with at least one hand position.



**"[d]   a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;"**

35.     As annotated in red in the image below, the Peloton Bike includes an adjustable mechanism that provides pedaling resistance.

SPECIFICATIONS

**"[e]** **a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding positions including sitting and standing positions, and that stores power exerted by the rider;"**

36. As set forth in the excerpt below, a computer is coupled to the Peloton Bike.



37.     As set forth in the excerpt below, the computer is configured to connect with the internet or other computer network.



38.     As set forth in the excerpt below, connection to the internet or other computer network allows the rider to access "UP TO 14 DAILY LIVE RIDES" and "4,000+ ON-DEMAND RIDES." (This excerpt is available on Peloton's website. *See* "Ride Now With Peloton," available at https://www2.onepeloton.com/bike/classes.)

**UP TO 14 DAILY LIVE RIDES**

Tap into the energy of a group workout without leaving your home.

**4,000+ ON-DEMAND RIDES**

Take a class anytime, with our daily-updated, extensive on-demand library.

39.     During a ride the instructor instructs the rider to vary cadence, pedaling resistance and riding positions, including siting and standing positions.

40.     After a ride, a user can look at the user's ride history on the Peloton Bike or using the Peloton phone app or website and see the user's power and position on the leaderboard for each ride.

**"[f]     a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions, thereby simulating an instructor-led exercise class, and that displays power exerted by the rider; and"**

41.     As annotated in red in the image below, the Peloton Bike includes a display that is coupled to the computer.



42.     The display displays an exercise routine from the collection of rides so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions, thereby simulating an instructor-led exercise class.

43.     As annotated in red in the image below, the display displays the power exerted by the rider.



**"[g]    an input device that is coupled to the computer and that enables the rider to input data into the computer."**

44.     As shown in the excerpt below, the Peloton Bike includes a touch screen that enables the rider to input data into the computer.

**LOGGING IN**

Enter the username or email address and password for your Peloton account.

If you haven't set up your Peloton account yet, tap **Forgot password?** and enter the email address you used when you purchased your Peloton Pro.

45.     MDA has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for the infringement of the '240 patent.

## <u>COUNT II</u>

### (Infringement of U.S. Patent No. 10,137,328)

46.     MDA incorporates herein by reference paragraphs 1 through 19 above as if set forth in full.

47.     On November 27, 2018, the United States Patent and Trademark Office duly issued U.S. Patent No. 10,137,328, entitled "PROGRAMMED EXERCISE BICYCLE WITH COMPUTER AIDED GUIDANCE" (the "'328 patent"). A true and correct copy of the '328 patent is attached hereto as Exhibit B. The '328 patent is directed to a stationary exercise bike along with a display that provides instruction to lead a rider through an exercise program.

48.     The '328 patent has been in full force and effect since its issuance. MDA owns by assignment the entire right, title, and interest in and to the '240 patent, including the right to seek damages for past, current, and future infringement thereof.

49.     Peloton began selling and offering to sell the Peloton Bike in or about January 2014 and the Peloton Bike+ in or about September 2020.

50.     Peloton has infringed and continues to infringe the '328 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling, exporting from, and/or importing into the United States the Peloton Bikes, without authority or license.

51.     Peloton indirectly infringes the '328 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(b), by (among other things) and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Peloton's partners, customers and end-users, in this District and elsewhere in the United States. For example, Peloton's partners, customers and end-users directly infringe through their use of the inventions claimed in the '328 patent. Peloton

22

induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Peloton Bikes, and providing instructions, documentation, and other information to customers and end-users instructing them to use the Peloton Bikes in an infringing manner, including (i) instruction, technical support and services, (ii) training, marketing, product manuals, and advertisements, and (iii) software and mobile applications providing the foregoing and enabling customers and end-users to use the Peloton Bikes in an infringing manner. As a result of Peloton's inducement, Peloton's partners, customers and end-users use the Peloton Bikes in the way that Peloton intends and that directly infringes the '328 patent. Peloton has known of the '328 patent, and that the Peloton Bikes infringe the '328 patent, or has been willfully blind to such infringement, since at least the filing of this Complaint. Despite this knowledge of the '328 patent and that the Peloton Bikes infringe the '328 patent, Peloton has continued to perform these affirmative acts with the intent, or willful blindness, that the induced acts directly infringe the '328 patent.

52.     Peloton also indirectly infringes the '328 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Peloton's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Peloton Bikes and causing the Peloton Bikes to be manufactured, used, sold, and offered for sale, contribute to Peloton's customers' and end-users' use of the Peloton Bikes, such that the '328 patent is directly infringed. The Peloton Bikes are a material part of the invention of the '328 patent, are not a staple article or commodity of commerce, have no substantial non-infringing use, and are known by Peloton to be especially made or adapted for use in the infringement of the '328 patent. Peloton has known of the '328 patent, and that the Peloton Bikes infringe the '328 patent, or has been

willfully blind to such infringement, since at least the filing of this Complaint. Despite this knowledge of the '328 patent and that the Peloton Bikes infringe the '328 patent, Peloton has continued to perform these affirmative acts with knowledge of the '328 patent and with intent, or willful blindness, that they cause the direct infringement of the '328 patent.

53. Claim 1 of the '328 patent is reproduced below with the addition of labels [a], [b], [c], [d], [e], [f], [g], and [h] corresponding to limitations of the claim.

1. A stationary bike, comprising:

[a] a frame that is configured to allow a rider to ride in sitting and standing positions;

[b] a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;

[c] a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;

[d] a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;

[e] a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding position including sitting and standing positions;

[f] wherein the computer is configured to measure the pedaling resistance and the rider's cadence and is configured to calculate power

exerted by the rider based on the pedaling resistance and the rider's cadence; and

[g]     a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions;

[h]     wherein the display displays cadence, pedaling resistance and the power exerted by the rider.

54.     The Peloton Bikes embody each and every limitation of at least claim 1 of the '328 patent, literally or under the doctrine of equivalents, as described in the non-limiting examples set forth below from the Peloton Bike. The Peloton Bike+ has the same features described below and embodies each and every limitation of at least claim 1 of the '240 patent for the same reasons as does the Peloton Bike. These non-limiting examples are preliminary and are not intended to limit MDA's right to modify these non-limiting examples or allege that other aspects of the Bike infringe the identified claims, or any other claims, of the '328 patent.

**"1.     A stationary bike, comprising"**

55.     The Peloton Bike is a stationary bike as shown in the image below.



SPECIFICATIONS

**"[a]   a frame that is configured to allow a rider to ride in sitting and standing positions;"**

56.     As annotated in red in the image below, the Peloton Bike includes a frame that is configured to allow a rider to ride in sitting and standing positions.



**"[b]   a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;"**

57.     As annotated in red in the image below, the Peloton Bike includes a direct drive mechanism that couples pedals to a flywheel.



58.     The direct drive mechanism facilitates a smooth transition between siting and standing positions.

**"[c]    a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;"**

59.     As annotated in red in the image below, the Peloton Bike includes handlebars that are coupled to the frame and provide the rider with at least one hand position.



**"[d]    a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;"**

60.    As annotated in red in the image below, the Peloton Bike includes a resistance knob that provides resistance to the flywheel and is manually adjustable by the rider to vary pedaling resistance.



**"[e]    a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding position including sitting and standing positions;"**

61.    As set forth in the excerpt below, a computer is coupled to the Peloton Bike.



62.     As set forth in the excerpt below, the computer is configured to connect with the internet or other computer network.



63.     As set forth in the excerpt below, connection to the internet or other computer network allows the rider to access "UP TO 14 DAILY LIVE RIDES" and "4,000+ ON-DEMAND RIDES." (This excerpt is available on Peloton's website. *See* "Ride Now With Peloton," available at https://www2.onepeloton.com/bike/classes.)

**UP TO 14 DAILY LIVE RIDES**
Tap into the energy of a group workout without leaving your home.

**4,000+ ON-DEMAND RIDES**
Take a class anytime, with our daily-updated, extensive on-demand library.

64.     During a ride the instructor instructs the rider to vary cadence, pedaling resistance and riding positions, including siting and standing positions.

**"[f]     wherein the computer is configured to measure the pedaling resistance and the rider's cadence and is configured to calculate power exerted by the rider based on the pedaling resistance and the rider's cadence; and;"**

65.     As set forth in the excerpt below, the computer measures both resistance and the rider's cadence. Cadence is "measured in RPMs" and resistance is "measured as a percentage of maximum resistance." Output (*i.e.*, how much power a rider is exerting at any point in time) is a function of cadence and resistance and calculated therefrom. (This excerpt is available on Peloton's website. *See* "Understanding Your Metrics," Peloton Support + Calibration + Using the Bike, *available at* https://support.onepeloton.com/hc/en-150/articles/203325985-Understanding-Your-Metrics.)



## Understanding Your Metrics

Your **Cadence**, measured in RPMs (rotations per minute), is how fast you're pedalling.

**Resistance**, measured as a percentage of the maximum resistance (0 - 100 per cent), is your level of difficulty, which can be set by turning the resistance knob. Turn the knob right to increase the difficulty and left to decrease difficulty.

Your **Output**, measured in Watts, is how much power you are exerting at any point in time. You can increase your output by increasing your cadence, your resistance, or both.

**Total Output**, measured in KJ (kilojoules), is how much work you've done over the whole ride. This is calculated by taking the average output times the number of seconds in the ride divided by 1,000. For instance, if you average 100 Watts in a 2,700-second ride (45 minutes), your total output will be 270 KJ. If you want to increase your total output and move up the leaderboard, you'll need to keep your output high over the full ride. This may mean increasing your resistance, possibly even above what the coach recommends.

**"[g]    a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions;"**

66.    As annotated in red in the image below, the Peloton Bike includes a display that is coupled to the computer.



67.    The display displays an exercise routine from the collection of rides so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions, thereby simulating an instructor-led exercise class.

**"[h]  wherein the display displays cadence, pedaling resistance and the power exerted by the rider."**

68.     As annotated in red in the image below, the display displays cadence, pedaling resistance, and power exerted by the rider.



69.     MDA has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for the infringement of the '328 patent.

**PRAYER FOR RELIEF**

WHEREFORE, MDA prays for a judgment in its favor and against Peloton and respectfully requests the following relief:

A.     A judgment that Peloton infringes the '240 and '328 patents;

B.     Damages for infringement of the '240 and '328 patents in an amount to be determined at trial;

C.     An order permanently enjoining Peloton from further infringement of the '240 and '328 patents;

D.     For other monetary relief, including costs and expenses and pre- and post-judgment interest;

E.     A determination that Peloton's infringement of the '240 and '328 patents has been and is willful, and an award of enhanced damages, up to and including trebling of the damages awarded to MDA;

F.     A determination that this is an exceptional case under 35 U.S.C. § 285 and an award of attorneys' fees and costs to MDA;

G.     An order awarding MDA any such other relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, MDA hereby demands a jury trial as to all issues so triable.

Date: December 14, 2020

CAPSHAW DERIEUX, LLP

*/s/ Elizabeth L. DeRieux*
Elizabeth L. DeRieux
Texas State Bar No. 05770585
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Mad Dogg Athletics, Inc.*

OF COUNSEL:
David I. Gindler
Lauren Drake
J. Samuel Payne
David C. Jonas
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019
(424) 386-4000

Javier J. Ramos
MILBANK LLP
1850 K Street, NW
Suite 1100
Washington, DC 20006
(202) 835-7500

Jordan Fernandes
MILBANK LLP
55 Hudson Yards
New York, NY 10001-2163
(212) 530-5000

Paul L. Robinson
Law Office of Paul L. Robinson, Esq. LLC
500 Paterson Plank Road
Union City, NJ 07087
(954) 292-0945