IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MAD DOGG ATHLETICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2:20-cv-00382-JRG |
| | ) |
| PELOTON INTERACTIVE, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT PELOTON INTERACTIVE, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT................................................................................................................2

        A.      Mad Dogg Concedes § 101 Can Be Assessed Based On A Representative Claim..................................................................................................................2

        B.      *Alice* Step One:  The Claims Are Directed To An Abstract Idea ............................2

        C.      *Alice* Step Two:  The Asserted Claims Add Nothing Inventive ..............................8

III.    CONCLUSION...........................................................................................................10

i

# **TABLE OF AUTHORITIES**

## **CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) .................................................................................................... 1, 4

*Ancora Technologies, Inc. v. HTC America, Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) .......................................................................................... 8

*British Telecommunications PLC v. IAC/InterActiveCorp*,
  813 F. App'x 584 (Fed. Cir. 2020) ..................................................................................... 2

*CardioNet, LLC v. InfoBionic, Inc*,
  955 F.3d 1358 (Fed. Cir. 2020) .......................................................................................... 8

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) .......................................................................................... 9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) .................................................................................... 1, 3, 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) .......................................................................................... 2

*Data Engine Technologies LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ........................................................................................ 7, 8

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ................................................................................... 10

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
  830 F. App'x 634 (Fed. Cir. 2020) ..................................................................................... 8

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ................................................................................ 4, 9, 10

*McRO, Inc. v. Bandai Namco Games America Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) .......................................................................................... 7

*Peloton Interactive, Inc. v. Echelon Fitness, LLC*,
  No. 19-cv-1903-RGA, 2020 WL 3640064 (D. Del. 2020) ............................................... 10

*Ubisoft Entertainment, S.A. v. Yousician Oy*,
  814 F. App'x 588 (Fed. Cir. 2020) .......................................................................... 1, 4, 7, 10

*Ultramercial, Inc. v. Hulu LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) .......................................................................................... 4

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................................... 4

iii

## I. INTRODUCTION

Even in its opposition, Mad Dogg does not (because it cannot) claim to have invented a bike "frame," a "flywheel," a "set of handlebars," a "mechanism that provides resistance," a "computer" or a "display," or *any* of the conventional components that make up the inventions it claimed in its '240 and '328 patents.  Rather, Mad Dogg asserts three reasons why its claims are eligible, each of which fails.  *First*, Mad Dogg argues that its claims recite a collection of "physical" bike and computer components.  Yet that is the same argument that *Alice* rejected—the mere fact that a claimed apparatus "'exist[s] in the physical … realm,' is beside the point."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 224 (2014).  *Second*, Mad Dogg argues that the bike components are purportedly innovative, but this is contrary to its own express statements in the specification, Complaint, and prosecution history admitting they were long known—including in Mad Dogg's own patents and products.  *Third*, Mad Dogg argues that the computer components are not generic—and thus confer eligibility—because they must be programmed to retrieve and display content, but this is yet another argument directly foreclosed by *Alice* and its progeny.  In truth, Mad Dogg's claims are far less eligible than other claims found ineligible on motions to dismiss that Mad Dogg has not (and cannot) legitimately distinguish, including in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019), and *Ubisoft Entertainment, S.A. v. Yousician Oy*, 814 F. App'x 588, 589-90 (Fed. Cir. 2020).  Nor can Mad Dogg identify any reason to delay this Court's finding of ineligibility—no claim construction or material fact disputes.

To distract from these dispositive points, Mad Dogg spills much ink claiming that its patents "were the blueprints" for Peloton's products, and that it inspired Peloton's innovations "years before Peloton was founded."  D.I. 37 (Opp.) 1.  These claims are as baseless as they are irrelevant to the issue of patent eligibility.  Mad Dogg also relatedly attempts to distract the Court by citing snippets of arguments Peloton made in other cases about patents owned by Peloton that

are not at issue here. Even though those other cases are obviously irrelevant, and even though there are myriad, critical distinctions between Peloton's patents and the Mad Dogg patents at issue here, one point is important to make clear: Mad Dogg's patents fail under every articulation of the *Alice* standard Peloton set forth in the briefs Mad Dogg cites. And regardless, they fail as a matter of law under recent Federal Circuit case law, which Mad Dogg simply cannot distinguish.

For the reasons set forth herein, Peloton respectfully requests that this suit be dismissed.

## II.     ARGUMENT

### A.     Mad Dogg Concedes § 101 Can Be Assessed Based On A Representative Claim

Claim 1 of the '240 patent is representative because the other claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The other independent claims ('240 patent cl. 14 and '328 patent cl. 1) are materially the same and the dependent claims focus on the same abstract idea and add only inconsequential limitations ('240 patent cls. 2-13 and 15-17 and '328 patent cls. 2-5). D.I. 27 (Br.) 6, 9-11, 17-18. And, as Mad Dogg "d[oes] not present any 'meaningful argument for the distinctive significance of any claim limitation' not found in claim 1,'" it "forfeited its ability to argue that other claims are separately patent eligible." *British Telecommunications PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587-88 (Fed. Cir. 2020); *cf.* Opp. 29. In any event, the claims are ineligible even considered separately. Br. 8-21 & n.2.

### B.     *Alice* Step One: The Claims Are Directed To An Abstract Idea

At step one, Mad Dogg's claims are directed to the abstract idea of providing instruction for using an exercise bike—an activity that exercise instructors have long performed. Br. 8-14. The claims, with unusual candor, state that their goal is to "simulat[e] an instructor-led exercise class" and provide "instructions for the rider." '240 patent cl. 1. The claims purport to accomplish that goal using conventional stationary bicycle components coupled to generic computer

components that access and display exercise routines. That is the epitome of claims that are directed to an abstract idea at *Alice* step one. Mad Dogg's arguments to the contrary fail.

***First***, Mad Dogg argues that the claims are eligible because they recite "a 'machine'"—"an *exercise bike*, with certain specific physical features," coupled to a computer. Opp. 18, 29. But "physical features" like a "frame," a "direct drive mechanism," a "flywheel," or "handlebars," have existed since the inception of the bicycle, and Mad Dogg does not contend otherwise. According to Mad Dogg, Peloton improperly "oversimplifies" and "ignores" those features. Opp. 17, 20. Not so. As Peloton explained, step one "evaluates the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole is directed to' an abstract idea," and, per that inquiry, Mad Dogg's claims are directed to an abstract idea, like other concepts the Federal Circuit found abstract notwithstanding their tangible components. Br. 7-14.

For example, in *ChargePoint*, the Federal Circuit held ineligible claims that purported to improve electric charging stations, despite reciting "apparatus[es]" and computerized "systems" with an array of "quite tangible" machine components, including a "control device," "transceiver," "charge transfer device," "electrical receptacle," "power line," "current measuring device," and "data control unit," among others. 920 F.3d at 770-73 (Rule 12(b)(6)). The court rejected the patentee's arguments that the claims were eligible because they included a "concrete arrangement of components" with certain benefits. *Id*. The claims' "focus," as confirmed in the specification, was "the abstract idea of network communication for device interaction," and they did not provide "any technical details regarding how" to achieve their goal. *Id*. at 768-70. Likewise, here, the claims' physical components, like a frame and handlebars, do not change the focus on an abstract idea (mimicking human instruction) and the claims provide no "technical details regarding how" to achieve that goal beyond using conventional computer and display technology. *Id.*; Br. 9-11.

3

Similarly, in *Ubisoft*, the Federal Circuit held ineligible claims for a computer game that provided guitar instruction by "presenting … fingering notations" on a "display device," receiving the user's performance on a "guitar input device," "assessing" the user's performance, "selectively changing a difficulty level," and "generating at least one mini-game."  814 F. App'x at 589-90. Nonetheless, the court found the claims abstract at step one as they were akin to "the ordinary mental processes of a guitar instructor" and merely recited "gathering, analyzing, and displaying" certain information.  *Id*. at 591-92 (Rule 12(b)(6)).  The court rejected the patentee's argument (repeated here) that such analysis "'overgeneralized' the asserted claims … and that 'the true focus and claimed advance … is the specific asserted improvement in computer capabilities.'"  *Id.* at 591.  Here, as there, the claims echo human instructional activities despite the physical components; the claims merely recite gathering, analyzing, and displaying instructional information; and the specification confirms the purported invention focuses on human activities not improved technology.  Here, as there, the claims are ineligible on the pleadings.

As these and numerous other decisions (including *Alice*) make plain, directing the reader to perform an abstract idea using computers or other physical components—without improved technology for doing so—does not make claims "any less abstract" at *Alice* step one.  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("*Symantec*"); *see* Br. 10; *Alice*, 573 U.S. at 224.  In each, the courts held that, considered as a whole, the claims were nonetheless focused, at their core, on abstract ideas.  So too here.[1]

---

[1] Remarkably, Mad Dogg (at Opp. 12) relies on *Ultramercial, Inc. v. Hulu LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013), which is no longer good law.  There, the court found computerized claims eligible and held that the analysis must *not* look at whether claims are directed to an abstract idea "at their core."  *Id.* at 1344.  But the Supreme Court *vacated* that decision in light of *Alice*, and the Federal Circuit then held the opposite: the claims were *in*eligible on the pleadings and courts *must* assess whether there was an abstract idea "at the heart" of the claims.  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014).  Here, too, the claims are abstract at their core.

4

*__Second__*, Mad Dogg argues that the bike hardware components improve technology because they provide (1) an unclaimed "open geometry" allowing riders to "alternate between sitting and standing positions" and (2) a "resistance mechanism." Opp. 15. That is baseless and contrary to the specification, Complaint, and prosecution history.

The specification explains that such bicycles were "typical[]" at the time of the patent: "instructor-led exercise classes using stationary exercise bikes ha[d] become increasingly popular" and in such classes "the instructor *typically* leads a class of participants by instructing them to assume *different riding positions, such as sitting and standing*," and such bikes "*typically* have a resistance device to vary how difficult it is to pedal." '240 patent at 1:33-45; *see id*. at 1:61-66.[2] Elsewhere, the specification treats the "open geometry that allows a rider to simulate different riding positions" as wholly conventional, not as any purported innovation. *Id*. at 3:3-15. Indeed, the specification expressly "incorporates by reference" ('240 patent at 3:3-15) prior art Mad Dogg patents, from years before the '240 and '328 patents, that expressly described stationary bikes that "can be used by the rider … in an alternating standing and sitting pedaling position."[3]

The *only* problem the specification identifies in those bicycles is that participants often cannot attend "instructor-led classes" due to "scheduling conflicts" and, "*without an instructor*, the individual may not receive the proper instruction or guidance essential to simulating the different riding positions and/or resistances … that an instructor typically provides." '240 patent at 1:47-2:2; *see id*. at 2:2-2:39, 7:31-41. Accordingly, the avowed purpose is using a computer instead of a person "to provide instructions to a rider that leads the rider through an exercise

---

[2] All emphases added unless otherwise noted.

[3] U.S. Patent No. 6,468,185 at 2:11-13; *see id*. at 4:56-57 ("appropriate for standing and sitting"); U.S. Patent No. 6,793,608 at 3:49-50 ("quick transition from sitting to standing, and … back"); U.S. Patent No. 5,961,424 at Fig. 1 (depicting identical open geometry as '240 patent Fig. 1).

program." *Id.* at 2:64-65.[4]  That—not Mad Dogg's post hoc attempt to salvage its claims or manufacture a fact issue—controls the inquiry.  Br. 11.  And that is an abstract human activity.

Likewise, the Complaint admits that "in the early 1990s"—well before these patents—Mad Dogg produced "indoor cycling bikes [that] allowed riders to *alternate seated and standing positions*" and "shift levels to *adjust resistance*."  Compl. ¶ 1; *also compare id.* (depicting "bike from 1993") *with* '240 patent Fig. 1 (depicting identical bike components, except with attached computer).  The Complaint further makes clear that the purported "core" advance lies in attaching a computer to provide "instructor-led coaching."  Compl ¶ 5; *id*. ¶ 9 ("patented technology cover[s] a stationary exercise bike designed to simulate an instructor-led class").  The Complaint never suggests that the bike hardware itself is somehow innovative.  It is not.

In addition, during prosecution, the examiner stated that prior art "discloses a stationary bike frame that is configured to allow a rider to ride in sitting and standing positions fig. 1" and all of the other claimed bike hardware components.  Jan. 6, 2016 Final Rejection at 2.  In response, the patentee *did not dispute that characterization* and instead overcame the prior art by clarifying limitations relating to "the instructions provided by the chosen exercise routine."  July 6, 2016 Request for Continued Examination at 5.  The patentee never asserted that any structural feature of the stationary bicycle itself is inventive.  That confirms Mad Dogg's argument is without merit.

**<u>Third</u>**, Mad Dogg argues the claims recite "multiple computing devices—i.e., networked computer, display, and input device, with a specific software protocol for them to interact with the rider."  Opp. 15.  But those same "computing devices" are present in countless computer claims

---

[4] Although the specification notes that *some* prior bikes did not "permit alternating standing and sitting," '240 patent at 1:58-59, 7:12-21, it elsewhere admits that bikes permitting such alternating positions were "typically" used in instructor-led classes and that the advance is not in the hardware but in providing instructions, as discussed.  Also, the claims require no particular "geometry."

6

found ineligible and do not make the claims any less abstract. *See* Br. 11-15; *Ubisoft*, 814 F. App'x at 589-90. And contrary to Mad Dogg's assertion, no "specific software protocol" is claimed. *See ChargePoint*, 920 F.3d at 769 ("unclaimed details" do not confer eligibility). Mad Dogg asserts the computer components provide two "technological improvements": retrieving exercise routines from a network location and displaying the exercise routines. Opp. 18. But the Federal Circuit has repeatedly held that retrieving information and displaying it—without more (e.g., specific rules or guidance)—is *not* a technological advance and instead reflects abstract activities. Br. 11-13.

***Fourth***, the case law Mad Dogg cites is inapposite because, in each case, the eligible claims provided a specific technological improvement directed to a specific technological problem. For example, the claims in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1307-08 (Fed. Cir. 2016), were eligible because they improved animation technology by (1) using rules that "define[d] output morph weight set stream as a function of phoneme sequence and time," (2) "obtaining a timed data file of phonemes" with "subsequences," (3) "generating an intermediate stream of output morph weight sets and … transition parameters between two adjacent morph weight sets," (4) "generating a final stream of output morph weight sets at a desired frame rate from said … output morph weight sets and … transition parameters," and (5) "applying said final stream of output morph weight sets to a sequence of animated characters." There is nothing approaching such specificity or a technological solution to a specific technological problem here—merely generic computer components that retrieve and display information like an instructor-led exercise class, with no specific "rules" or guidance on how to achieve it.

Mad Dogg's other cases similarly miss the mark. In *Data Engine Technologies LLC v. Google LLC*, the claims recited a "specific structure (i.e., notebook tabs)" that "performs a specific function (i.e., navigating within a three-dimensional spreadsheet)" to address the "arduous [prior

7

art] process of searching for, memorizing, and entering complex commands." 906 F.3d 999, 1002, 1011 (Fed. Cir. 2018).  In *Ancora Technologies, Inc. v. HTC America, Inc.*, the claims addressed a "specific computer problem" (a hacking vulnerability) with an improvement in computer security technology—a specific, unconventional verification structure located in "a particular, modifiable, non-volatile portion of the computer's BIOS" for determining authorization to use software.  908 F.3d 1343, 1348-49 (Fed. Cir. 2018).  And in *CardioNet, LLC v. InfoBionic, Inc*, the claims purportedly "'focus[ed] on a specific means or method that improves' cardiac monitoring technology" and the patent did not establish that "doctors were 'previously employing' the techniques performed on the claimed device." 955 F.3d 1358, 1368, 1370 (Fed. Cir. 2020); *see also, e.g.*, *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634 (Fed. Cir. 2020); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019).

In contrast, Mad Dogg's claims recite no specific improvement in technology, just generic computer and bicycle components to simulate a human providing exercise instructions: the purported "invention *serves to provide instructions* to a rider that leads the rider through an exercise program" and "the instruction [is] similar to that provided in instructor-led classes." '240 patent 2:64-3:2.  Indeed, the claims here are ineligible because they "merely 'collect[], organiz[e], and display ... information on a generic display device.'" *Data Engine Techs*., 906 F.3d at 1011 (citation omitted); *see id*. at 1011-13 (affirming certain claims were *in*eligible); *supra* at 3-7.

### C.   *Alice* Step Two:  The Asserted Claims Add Nothing Inventive

At step two, the claims add nothing inventive.  Br. 14-18.  Mad Dogg recycles its reliance on the bicycle and computer components, arguing that they provide a "unique combination of structural and software features." Opp. 23.  However, as discussed, those are wholly generic, and not the focus of the claimed invention—the bike components admittedly provide no technological advance, and the patents do not describe, let alone claim, any particular "software features." *Supra*

8

at 5-6. Rather, the purported advance is the abstract idea (providing instruction for using an exercise bike), which cannot supply the inventive concept. Br. 20. The claims recite no technological details for accomplishing that goal, and require only generic computer and display components, like other claims found ineligible. Br. 14-18.

Remarkably, Mad Dogg denies that its claimed "computer" and "display" are generic because "[g]eneric computer components cannot access exercise routines, calculate the rider's power, and display that information"—"[t]hey necessarily need to be programmed to perform these specific, claimed functions." Opp. 26. That is not the law: "the inquiry is *not* whether conventional computers already apply" the claim limitations, but rather "whether 'each step does no more than require a generic computer to perform generic computer functions.'" *Symantec*, 838 F.3d at 1318 (quoting *Alice*). Indeed, the Federal Circuit has repeatedly held those *same* computer-implemented functions—collecting, analyzing, and displaying information of a certain type—require only generic computers performing their basic functions. Br. 14-16. The same is true here.

Nor does Mad Dogg identify any basis to delay finding the claims ineligible. Br. 18-21. Mad Dogg concedes there are no material claim construction disputes, D.I. 34, and apparently accepts (by not disputing) that no particular allegations in the Complaint bolster eligibility. Mad Dogg's purported fact issues are (1) whether the particular combination of bike and computer elements existed in the prior art and (2) whether computers were previously programmed to provide the claimed instructional content. Opp. 25-26. These arguments fail and do not create a fact issue. *See supra* at 3-7, 9; *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019) (inquiry "is *not* whether the entire claim as a whole was 'well-understood, routine [and] conventional,'" rather whether there is something inventive "apart from" abstract idea); *Symantec*, 838 F.3d at 1318 ("inquiry is *not* whether conventional computers already"

9

perform functions). Such conclusory assertions of inventiveness, especially where contradicted by the specification itself (as here), are not accepted as true. Br. 7, 19; *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020). At most, Mad Dogg's arguments address novelty or non-obviousness, a separate inquiry that does not preclude finding the claims ineligible on the pleadings. Br. 20.

Finally, unable to identify anything inventive in its claims, Mad Dogg cites snippets of arguments from other cases about other patents (owned by Peloton) not at issue here. Opp. 16, 21, 22, 27, 29. But this distraction only highlights the fundamental weakness in *Mad Dogg's* claims. Far from simply accessing and displaying exercise routines (as in Mad Dogg's claims), the Peloton patents at issue in the cases Mad Dogg cites—which relate to Peloton's novel and revolutionary leaderboard technology—recite unconventional technological advancements over the prior art that synchronize performance parameters to simulate the feeling of live competition for the user of an archived class and, among other things, permits thousands of people in different locations to take an archived class at the same time and compete against each other in real time via an unconventional user interface. *Peloton Interactive, Inc. v. Echelon Fitness, LLC*, No. 19-cv-1903-RGA, 2020 WL 3640064, at *3-4 (D. Del. 2020). In stark contrast, Mad Dogg's patents at issue here admit that they seek to imitate human instruction, and the components such as a computer and display could not be more generic.

Simply put, Mad Dogg's claims here are indistinguishable from the claims for retrieving, analyzing, and displaying information that the Federal Circuit found ineligible on the pleadings in cases such as *Ubisoft*, *University of Florida*, and *DIRECTV*. Br. 2-3, 8, 11-14. Mad Dogg's arguments to the contrary misstate the record and misapply the law.

### III. CONCLUSION

Peloton respectfully requests this Court dismiss Mad Dogg's complaint with prejudice.

| | |
|---|---|
| Date: April 5, 2021 | */s/ Steven N. Feldman* <br> Steven N. Feldman <br> Benjamin Z. Bistricer |
| OF COUNSEL: | LATHAM & WATKINS LLP <br> 885 Third Avenue |
| Lawrence J. Gotts <br> Gabriel K. Bell <br> Ethan L. Plail <br> LATHAM & WATKINS LLP <br> 555 Eleventh Street, NW, Suite 1000 <br> Washington, D.C. 20004-1304 <br> Tel: (202) 637-2384 <br> Fax: (202) 637-2201 <br> Email: lawrence.gotts@lw.com <br> Email: gabriel.bell@lw.com <br> Email: ethan.plail@lw.com | New York, NY 10022 <br> Tel: (212) 906-1200 <br> Fax: (212) 751-4864 <br> Email: steven.feldman@lw.com <br> Email: benjamin.bistricer@lw.com |
| | Melissa R. Smith <br> (TX State Bar No. 24001351) <br> GILLAM & SMITH, LLP <br> 303 S. Washington Ave. <br> Marshall, TX 75670 <br> Telephone: (903) 934-8450 <br> Facsimile: (903) 934-9257 <br> Email: melissa@gillamsmithlaw.com |
| Gabriel S. Gross <br> Douglas E. Lumish <br> LATHAM & WATKINS LLP <br> 140 Scott Drive <br> Menlo Park, CA 94025 <br> Tel: (650) 328-4600 <br> Fax: (650) 463-2600 <br> Email: gabe.gross@lw.com <br> Email: doug.lumish@lw.com | *Attorneys for* <br> *Defendant Peloton Interactive, Inc.* |
| Kimberly Q. Li <br> LATHAM & WATKINS LLP <br> 200 Clarendon Street <br> Boston, MA 02116 <br> Tel: (617) 948-6000 <br> Fax: (617) 948-6001 <br> Email: kimberly.li@lw.com | |

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on April 5, 2021 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

 */s/ Melissa R. Smith*
Melissa R. Smith