# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MAD DOGG ATHLETICS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-00382 |
| | ) |
| PELOTON INTERACTIVE, INC. | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

## PLAINTIFF MAD DOGG ATHLETICS, INC.'S SUR-REPLY IN OPPOSITION TO DEFENDANT PELOTON INTERACTIVE, INC.'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

|      |      | Page |
|------|------|------|
| I.   | INTRODUCTION ................................................................................................. 1 |
| II.  | ARGUMENT ........................................................................................................ 1 |
|      | A.   *Alice* Step One: Each Asserted Claim is Directed to a Technological Improvement in the Relevant Technological Art ............................................... 1 |
|      | B.   *Alice* Step Two: Each Asserted Claim Recites an Inventive Concept ................ 9 |
| III. | CONCLUSION ................................................................................................... 10 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................................................................... 2

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ............................................................................................. 7

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ............................................................................................. 7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ........................................................................................... 7, 8

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................................................. 2

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
  No. 2:17-CV-00662-JRG-RSP, 2019 WL 2959568 (E.D. Tex. Apr. 18, 2019) .................. 4

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ......................................................................................... 1, 6

*Ubisoft Ent., S.A. v. Yousician Oy*,
  814 F. App'x 588 (Fed. Cir. 2020) ............................................................................... 7, 8, 9

*Ultramercial, Inc. v. Hulu LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) ............................................................................................. 2

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ............................................................................................. 5

**I.      INTRODUCTION**

Perhaps the most revealing aspect of both Peloton's Motion and Reply is how little space Peloton devotes to quoting the actual wording of any asserted claim of the '240 and '328 patents. Peloton mostly relies on reorganizing snippets of what it characterizes as a "representative claim" of Mad Dogg's patents to manufacture Section 101 arguments that have no legal or factual connection to the actual language of any asserted claim from these patents. The Court should deny Peloton's motion because the asserted claims, when considered in their actual wording, recite and are directed to a novel, programmable exercise bike.

**II.     ARGUMENT**

   **A.    *Alice* Step One: Each Asserted Claim is Directed to a Technological Improvement in the Relevant Technological Art**

Peloton's Reply continues to press the deeply flawed argument that "the claims merely recite gathering, analyzing, and displaying instructional information." ECF No. 49 at 4. This characterization neither fairly describes what the asserted claims actually recite nor what they are "directed to" for purposes of the patent-eligibility inquiry.

To advance this argument, Peloton continues to misapply *Alice* step one, where "a court must look to the claims *as an ordered combination*, without ignoring the requirements of the individual steps." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (emphasis added). Instead, Peloton focuses on what it characterizes as a patent-ineligible concept in the asserted claims: "provid[ing] instructions for the rider" and "simulat[ing] an instructor-led exercise class." ECF No. 49 at 2. But "[t]he 'directed to' inquiry . . . cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon—after all, they take place in the physical world. Rather, the 'directed to'

1

inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether '*their character as a whole is directed to excluded subject matter.*'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citation omitted, last emphasis added).[1]

Here, each asserted claim is directed to "an exercise bike"—a machine that falls within one of the four categories of patent eligible subject matter under 35 U.S.C. § 101. The claimed exercise bike is not characterized in broad generic language designed to preempt the field of exercise bikes. To the contrary, the structural features of the claimed exercise bike are described with specificity. For example, claim 1 of the '240 patent recites:

> An exercise bike, comprising:
>
> a frame that is configured to allow a rider to ride in sitting and standing positions;
>
> a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;
>
> a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;
>
> a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;

'240 patent at 7:49-60 (cl. 1); *see also id.* at 8:54-65 (cl. 14); '328 patent at 8:2-12 (cl. 1). This exercise bike is enhanced by a networked computer coupled to the bike and a display and input device coupled to the computer:

---

[1] Peloton takes issue with Mad Dogg's citation to *Ultramercial, Inc. v. Hulu LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013), for the uncontroversial proposition that all claims may be "stripped down" to something that could be characterized as an abstract idea. ECF No. 49 at 4, n.1. It is true that the Supreme Court vacated this decision in light of *Alice*. But it is also true that in *Alice*, the Supreme Court reiterated this very point: "At some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (internal citations and quotation marks omitted).

> a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding positions including sitting and standing positions, and that stores power exerted by the rider;
>
> a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions, thereby simulating an instructor-led exercise class, and that displays power exerted by the rider; and
>
> an input device that is coupled to the computer and that enables the rider to input data into the computer.

'240 patent at 7:61-8:10 (cl. 1); *see also id.* at 8:66-9:14 (cl. 14); '328 patent at 8:13-30 (cl. 1).

Peloton's patent-eligibility argument is premised on attacking a non-existent version of the asserted claims. Peloton treats the asserted claims as if they focus, to the exclusion of anything else, on a generic computer that provides exercising instructions (i.e., "gathering, analyzing, and displaying instructional information."). As illustrated above, Peloton manufactures that argument by simply ignoring the first four elements of the asserted claims, which recite an exercise bike with specific structural features. The enhancement of this exercise bike with the narrowing limitations of a networked computer and display—which, among other things, stores or calculates and displays power exerted by the rider—does not transform the claims into a generic exercising machine that gathers, analyzes, and displays information.[2]

---

[2] Peloton's Reply leads with a section heading in which it asserts that Mad Dogg "Concedes" that Peloton's patent-eligibility argument can be based on a representative claim. ECF No. 49 at 2. Pelton cites to no such concession in Mad Dogg's Opposition—as none exists. In reality, Mad Dogg's Opposition noted that Peloton had failed to demonstrate that claim 1 of the '240 patent can be treated as representative: "Peloton's focus on claim 1 as "representative" is accompanied by its utter failure to show that there are no legally relevant distinctions between claim 1 and the remaining asserted claims." ECF No. 37 at 19 n.2. It is too late for Peloton to raise this argument

Taken as a whole, the asserted claims are directed to specific technological solutions to inadequate prior art systems. The specification of the asserted patents clearly describes the inadequacy of prior art exercise bikes—and the solution of the improved exercise bike. For example, the specification explains that, "[h]ealth clubs *typically* have *different* types of stationary exercise bikes available on their floors for individuals to ride. However, these bikes *typically* do *not* have the open geometry, adjustability or other characteristics that allow an individual to experience an exercise program such as provided by indoor cycling programs. In other words, *the bikes themselves are inadequate*." '240 patent at 1:54-60.[3] The specification goes on to explain: "The current invention also provides an advance over indoor cycling bikes that may be located on the health club floor for random use without an instructor. These other [prior art] type of indoor cycling bikes may pose a safety threat, especially when in a fixed gear configuration. Bike **10** of the current invention may provide instructions regarding a cadence limit, or other variables to reduce or avoid this risk. The instructions may also take the rider's health into account. Accordingly, bike **10** overcomes some of the risks associated with random, non-instructed use of indoor cycling bikes that are typically used in a group class led by an instructor." '240 patent at 7:31-41. *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1260 (Fed. Cir. 2017)

---

in its Reply. *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00662-JRG-RSP, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)) ("At the outset, the Court holds that Defendants' 'bucketing' argument is waived. It is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'").

[3] Peloton's argument that "the claims require no particular 'geometry,'" ECF No. 49 at 6 n.4, fails to take account of specific limitations implementing the "open geometry" discussed in the specification. *E.g.*, '240 patent at 7:51-55 (cl. 1) ("a frame that is configured to allow a rider to ride in sitting and standing positions," and "a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions"). It is this open geometry—absent from prior art exercise bikes typically found in health clubs—that allows the rider to smoothly transition between sitting and standing positions.

(reversing § 101 dismissal where "the specification discusses the advantages offered by the technological improvement").[4]

How does Peloton justify ignoring every feature of the claimed exercise bike—except the computer components—for purposes of its patent-eligibility analysis? Because, according to Peloton, those features were "typical" at the time of the patent. ECF No. 49 at 5. But the written description of Mad Dogg's patents says otherwise: "For example, the LIFECYCLE type bike does not have the geometry to permit alternating standing and sitting in a smooth manner. In contrast, bike **10** of the current invention is intended for alternating standing and sitting and thus allows different riding positions. This in turn burns more calories and provides for a total body workout by using different muscle groups. For example, the standing position allows core abdominal muscles to be used. This is not achieved by the LIFECYCLE type bike." '240 patent at 7:14-23. Even if "typicality" of non-computerized features of a programmable exercise bike were the determinant of patent eligibility, Peloton's motion should still be denied because that is a disputed factual question that cannot be resolved on a motion to dismiss.

But Peloton's "typicality" argument finds no support in the law. Even if the purely mechanical features of the claimed exercise bike were "typical," Peloton's argument would still fail because it violates a fundamental canon of the Federal Circuit's patent-eligibility case law: "a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO*, 837 F.3d at 1313. Here, the mechanical features of the claimed exercise

---

[4] Peloton argues that "the case law Mad Dogg cites is inapposite because, in each case, the eligible claims provided a specific technological improvement directed to a specific technological problem." ECF No. 49 at 7. But that is precisely why Mad Dogg cited those cases: As the specification itself describes, prior art exercise bikes suffered from inadequacies that were overcome with the specific, novel combination of mechanical and computer features recited in the asserted claims. Peloton has reaped extraordinary revenues from selling exercise bikes that meticulously copy every feature of those claims.

bike work *in combination* with the networked computer and display to create an improved exercise bike that overcomes the deficiencies of the prior art. Peloton ignores that it is the recited structural features of the claimed exercise bike that enable to rider to perform the specific exercise routines accessed by the networked computer and displayed on the display as instructions to the rider. In particular, to allow the rider to follow "instructions regarding cadence, pedaling resistance, and riding positions including sitting and standing positions," the claimed exercise bike includes (1) a "frame that is configured to allow a rider to ride in sitting and standing positions," (2) "a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions," (3) "a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position," and (4) a "mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance." '240 patent at 7:51-60; 7:64-66 (cl. 1)

It is the selection of *these particular mechanical features* of the claimed exercise bike in an ordered combination with the networked computer coupled to the bike and a display coupled to the computer that provides a technological solution to the technological deficiencies of prior art exercise bikes. Peloton notes that the specification of Mad Dogg's patents refers to prior art exercise bikes that include these mechanical features (among others). ECF No. 49 at 5. That may be true, but the claimed exercise bike recites *only* those mechanical features that are appropriate to enabling the rider to follow the instructions from exercise routines accessed by the networked computer "regarding cadence, pedaling resistance, and riding positions including sitting and standing positions." Taken together, the ordered combination of mechanical bike structures and

networked computer components is directed to an improved exercise bike, not to the disembodied functions of "gathering, analyzing, and displaying instructional information."[5]

Moreover, the mechanical features and computer components of the claimed exercise bike interact in ways that not even Peloton describes as "typical" (and which Peloton essentially ignores). The specific mechanical features of the bike enable the rider to follow instructions to perform specific exercise routines provided on a display coupled to a networked computer mounted on the bike. The specific networked computer components access a collection of exercise routines and interact with the rider by displaying instructions to the rider to perform those exercise routines. In turn, the computer interacts with the bike by calculating or storing and displaying the power exerted by the rider when following the displayed instructions to perform specific exercise routines. Peloton simply ignores all of this when arguing the claims as directed to an abstract idea.

Peloton's continued reliance on *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019), and *Ubisoft Ent., S.A. v. Yousician Oy*, 814 F. App'x 588 (Fed. Cir. 2020), remains unavailing. In *ChargePoint*, the Federal Circuit addressed a broad "apparatus" claim

---

[5] That various aspects of the asserted claims existed in prior art exercise bikes does not mean they were individually, or collectively as an ordered combination, well understood, routine, and conventional in February 2005, the priority date of Mad Dogg's patents. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional."); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."). In fact, the written description of Mad Dogg's patents expressly states that the recited mechanical features of the claimed exercise bike were *not* typical. *E.g.*, '240 patent at 7:14-23. While Peloton notes that the written description explains what "typically" transpires in an instructor-led class, '240 patent, 1:36-46, the written description does not state that the exercise bikes used in those classes were "typical" of exercise bikes from February 2005, let alone well-understood, routine, or conventional at the time. Peloton's citation to the Complaint in support of its argument that the mechanical features of the claimed exercise bike were "typical" as of February 2005 is also misplaced. The Complaint contains no such admission and, to the contrary, states that the exercise bikes that Mad Dogg first developed had entirely different features than "traditional stationary bikes that were ridden in a seated position." ECF No. 1 at 1.

7

comprising generic components that communicated "requests for charge transfer" to a "remove server" over a "wide area network." 920 F.3d at 766. The court concluded that "the claim is directed to the abstract idea of communication over a network for device interaction," *Id.* at 769, noting that the specification "suggests that the invention of the patent is nothing more than the abstract idea of communication over a network for interacting with a device, applied to the context of electric vehicle charging stations." *Id.* at 768. Although the claim was phrased in terms of an "apparatus" with certain generic components, the Federal Circuit concluded that the claim "would preempt the use of any networked charging stations." *Id.* at 769. Here, the asserted claims, read in light of the specification, are not directed to the abstract idea "gathering, analyzing, and displaying instructional information" applied to the context of an exercise bike. The Mad Dogg patents would not preempt the field of stationary exercise bikes that gather, analyze, and display instructional information, or even stationary exercise bikes coupled to a networked computer that provide exercise instructions on a display to a rider. The Mad Dogg patents are limited to exercise bikes with certain *specific mechanical features* that enable the rider to perform certain *specific exercise routines* from instructions displayed on a display from a networked computer. A responsible exercise equipment manufacturer could easily avoid infringement simply by excluding instructions for any one or more of the exercise routines recited in the claims ("cadence, pedaling resistance, and riding positions including sitting and standing positions").

*Ubisoft* is even farther afield than *ChargePoint* to the facts here. In *Ubisoft*, the Federal Circuit addressed claims to a computer program that presented an interactive game for playing a song on a guitar input device. 814 F. App'x at 589. The Federal Circuit observed that the claims "merely claim an abstract process in five steps: (i) 'presenting' notations; (ii) 'receiving' input; (iii) 'assessing' performance; (iv) 'determining' weaknesses; and (v) 'changing' the difficulty level

8

or 'generating' mini-games. The specification describes these steps in functional terms and not by what process or machinery is required to achieve those functions." *Id.* at 591 (citation omitted). The court concluded that "the claims recite nothing more than a process of gathering, analyzing, and displaying certain results." *Id.* In contrast to *Ubisoft*, the asserted claims here are not directed to the functionality of a software program that provides exercising instructions on a display to a rider. Rather, they are directed to *an exercise bike*, with certain specific physical features, that are enhanced by coupling a networked computer and a display to the frame of the bike. The claims describe the exercise bike not in functional terms but rather by the machinery and computer components required to achieve those functions.

At bottom, Peloton's analytical approach rests upon a profound mischaracterization of the asserted claims. The claims are directed to a programmable exercise bike and thus pass muster under *Alice* step one.

      **B.**    ***Alice* Step Two: Each Asserted Claim Recites an Inventive Concept**

Peloton's Reply runs out of steam by the time it reaches *Alice* step two. In less than a page, Peloton simply repackages the misguided arguments that it presented at *Alice* step one: that "the purported advance is the abstract idea (providing instruction for using an exercise bike)" and that the "bicycle and computer components" are "wholly generic" and "not the focus of the claimed invention." ECF No. 49 at 8-9. As discussed above, the asserted claims are directed to a programmable exercise bike that overcomes inadequacies in prior art exercise bikes. The written description of Mad Dogg's patents describes both the inadequacies of and the innovation over prior art exercise bikes. The innovation is *not* the abstract idea of "providing instruction for using an exercise bike" (or even "gathering, analyzing and displaying instructional information," as Peloton sometimes likes to say). The innovation lies in the ordered combination of specific mechanical features of an exercise bike that enables the rider to follow instructions to perform specific exercise

routines provided on a display coupled to a networked computer mounted on the bike, wherein the computer calculates or stores and displays power exerted by the rider while performing those exercise routines. The specification makes clear that combination of structural and computer features of the claimed exercise bike were not typical and represented an improvement over prior art bikes.[6]

### III. CONCLUSION

The '240 and '328 patents are not directed to "gathering, analyzing and displaying instructional information." They are directed to a novel, programmable exercise bike—the bike upon which Peloton has built its business. Moreover, the claims recite a novel and innovative ordered combination of structural features and computer components that represent an inventive concept far beyond any abstract idea mentioned in the claims. Peloton's motion should be denied.

Dated: April 12, 2021

CAPSHAW DERIEUX, LLP

/s/ *Elizabeth L. DeRieux*
Elizabeth L. DeRieux
Texas State Bar No. 05770585
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

*Counsel for Plaintiff*
*Mad Dogg Athletics, Inc.*

---

[6] Peloton also takes issue with Mad Dogg's argument that "[g]eneric computer components cannot access exercise routines, calculate the rider's power, and display that information." ECF No. 49 at 9 (referring to ECF No. 37 at 26). According to Peloton, each of these claimed functions "does no more than require a generic computer to perform generic computer functions." *Id.* (internal quotation marks omitted). While Mad Dogg disagrees—the computer components necessarily need to be programmed to perform these specific, claimed functions—this issue presents a factual dispute that cannot be resolved on a motion to dismiss.

OF COUNSEL:

David I. Gindler
Lauren Drake
J. Samuel Payne
David C. Jonas
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
(424) 386-4000

Javier Ramos
MILBANK LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006
(202) 835-7500

Paul L. Robinson
LAW OFFICE OF PAUL L. ROBINSON, ESQ. LLC
500 Patterson Plank Road
Union City, NJ 07087
(954) 292-0945

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

/s/ *Elizabeth L. DeRieux*
Elizabeth L. DeRieux

#4830-2223-9460v3