# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| MAD DOGG ATHLETICS., | |
| Plaintiff, | |
| v. | C.A. No. 2:20-cv-00382-JRG |
| | **JURY TRIAL DEMANDED** |
| PELOTON INTERACTIVE, INC., | |
| Defendant. | |

## <u>DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND OF THE ASSERTED PATENTS.........................................1

III.   MAD DOGG'S LEGAL ERRORS ..................................................................3

IV.    THE COURT SHOULD ADOPT PELOTON'S CLAIM CONSTRUCTIONS. ................4

       A.    The preambles are not limiting. ..............................................................4

       B.    "the rider is provided with instructions for the rider to manually adjust
             pedaling resistance, and instructions for the rider to vary cadence and
             riding positions including sitting and standing positions"......................................6

       C.    "a frame that is configured to allow a rider to ride in sitting and standing
             positions" .................................................................................................10

       D.    "computer … configured to … " ...........................................................13

       E.    "a mechanism that provides resistance to the flywheel and that is manually
             adjustable by the rider to vary the pedaling resistance" .........................................17

       F.    "a mechanism that measures the rider's cadence".................................................22

       G.    "smooth transition" / "a direct drive mechanism … that facilitates a
             smooth transition between sitting and standing positions"...............................25

       H.    "appropriate cadence" / "target display revealing the appropriate cadence
             at which a rider should be pedaling" (claim 7 of the '240 patent; claim 4 of
             the '328 patent) .........................................................................................29

V.     CONCLUSION.........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
908 F.3d 765 (Fed. Cir. 2018) ........................................................................5

*Accuhale LLC v. AstraZeneca LP*,
No. 6:11-cv-707, 2013 WL 4045904 (E.D. Tex. Aug. 7, 2013) ....................19

*Advanced Aerospace Techs., Inc. v. United States*,
124 Fed. Cl. 282 (Fed. Cl. 2015) ..................................................................28

*Advanced Display Systems, Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2002) ....................................................................26

*Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*,
No. 6:11-CV-011, 2012 WL 2872121 (E.D. Tex. July 12, 2012)............27, 28

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2018) ............................................................ *passim*

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
796 F.2d 443 (Fed. Cir. 1986) ......................................................................28

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................................................................24

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) ......................................................................8

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009) ......................................................................4

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ...................................................................4, 5

*Chimie v. PPG Indus. Inc.*,
402 F.3d 1371 (Fed. Cir. 2005) ......................................................................7

*Cook Biotech Inc. v. Acell, Inc.*,
460 F.3d 1365 (Fed. Cir. 2006) ....................................................................26

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
382 F. Supp. 3d 586 (E.D. Tex. 2019), *reconsideration denied*,
No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019)..........14

ii

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
   412 F.3d 1291 (Fed. Cir. 2005) .............................................................................15, 22

*Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*,
   899 F.3d 1291 (Fed. Cir. 2018) ..........................................................................4, 14, 23

*Edwards Lifesciences LLC v. Cook Inc.*,
   582 F.3d 1322 (Fed. Cir. 2009) .........................................................................................7

*Engel Indus., Inc. v. Lockformer Co.*,
   96 F.3d 1398 (Fed. Cir. 1996) .........................................................................................24

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995) .........................................................................................29

*Fiber, LLC v. Ciena Corp.*,
   792 F. App'x 789 (Fed. Cir. 2019) ..............................................................................22, 24

*Finisar Corp. v. DirecTV Group, Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008) .......................................................................................14

*Frank's Casing Crew and Rental Tools, Inc. v. Tesco Corp.*,
   No. 2-07-CV-015 (TJW), 2008 WL 4900137 (E.D. Tex., Nov. 12, 2008) ...................17

*Function Media, L.L.C. v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013) ....................................................................................4, 25

*Genband USA LLC v. Metaswitch Networks Ltd.*,
   No. 2:14-CV-33-JRG-RSP, 2015 WL 4722185 (E.D. Tex. Aug. 7, 2015) ...................23

*Grecia v. Samsung Elecs. Am. Inc.*,
   780 F. App'x 912 (Fed. Cir. 2019) .................................................................................13

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
   91 F.3d 1580 (Fed. Cir. 1996) .........................................................................................19

*In re Katz Interactive Call Processing Pat. Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) .......................................................................................14

*Integrity Worldwide LLC v. Rapid-EPS Ltd.*,
   No. 3:17-CV-0055-K, 2018 WL 3609430 (N.D. Tex. May 29, 2018) ..........................19

*Intell. Ventures I LLC v. HCC Ins. Holdings, Inc.*,
   No. 6:15-CV-660, 2016 WL 11258759 (E.D. Tex. Aug. 26, 2016)...............................26

*Intell. Ventures II LLC v. FedEx Corp.*,
   No. 2:16-CV-00980-JRG, 2017 WL 5896180 (E.D. Tex. Nov. 29, 2017) ...................21

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) ................................................................27, 30

*Luv N' Care, Ltd. v. Jackel Int'l Ltd.*,
115 F. Supp. 3d 808 (E.D. Tex. 2015) ......................................................27, 30

*Midwest Athletics & Sports All. LLC v. Xerox Corp.*,
No. 6:19-CV-06036-EAW, 2020 WL 7692767 (W.D.N.Y. Dec. 28, 2020)................19

*MIT v. Abacus Software*,
462 F.3d 1344 (Fed. Cir. 2006) ..........................................................18, 20, 23

*MTD Prod. Inc. v. Iancu*,
933 F.3d 1336 (Fed. Cir. 2019) ..................................................................4

*Nanology Alpha LLC v. WITec Wissen. Instr. & Tech. GmbH*,
No. 6:16-CV-00445-RWS, 2017 WL 5905272 (E.D. Tex. Nov. 30, 2017)................18

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ..............................................................................25

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008) ..............................................................5, 6

*Oyster Optics, LLC v. Coriant Am. Inc.*,
No. 2:16-CV-1302-JRG, 2017 WL 6026729 (E.D. Tex. Dec. 5, 2017),
opinion clarified, 2018 WL 3067727 (E.D. Tex. June 21, 2018)............................27, 30

*PACid Grp., LLC v. Apple, Inc.*,
No. 6:09-CV-143-LED-JDL, 2010 WL 2813654 (E.D. Tex. July 15, 2010)................8

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ..........................................................3, 6, 8, 12

*Pitney Bowes, Inc. v. Hewlett–Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999) ..................................................................4

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017) ..................................................................27

*Soque Holdings (Bermuda) Ltd. v. Keycsan, Inc.*,
No. C-09-2651, 2010 WL 2292316 (N.D. Cal. June 7, 2010) ............................15

*Springs Window Fashions LP v. Novo Indus., L.P.*,
323 F.3d 989 (Fed. Cir. 2003) ..................................................................26

*Toro Co. v. Deere & Co.*,
355 F.3d 1313 (Fed. Cir. 2004) ..............................................................19, 20

*Unicorn Glob. Inc. v. Golabs, Inc.*,
 No. 3:19-CV-0754-N, 2020 WL 2745692 (N.D. Tex. May 26, 2020) ........................19

*Uniloc 2017 LLC v. Google LLC*,
 No. 2-18-CV-00491-JRG-RSP, 2020 WL 569857 (E.D. Tex. Feb. 5, 2020) ................8

*UNILOC 2017 LLC v. Verizon Commc'ns, Inc.*,
 No. 2:18-cv-00536 JRG, 2020 WL 805271 (E.D. Tex. Feb. 18, 2020),
 *aff'd*, 846 F. App'x 914 (Fed. Cir. 2021) .........................................................................4

*Uniloc USA, Inc. v. Huawei Device USA, Inc.*,
 2:17-CV-736-JRG-RSP, 2018 WL 6590079 (E.D. Tex. Dec. 14, 2018) ......................22

*Uni-Sys., LLC v. U.S. Tennis Ass'n Nat'l Tennis Ctr. Inc.*,
 No. 17-CV-147-KAM-CLP, 2020 WL 3960841 (E.D.N.Y. July 13, 2020) ................19

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
 503 F.3d 1295 (Fed. Cir. 2007) .......................................................................................7

*Williamson v. Citrix Online, LLC*,
 792 F.3d 1339 (Fed. Cir. 2015) ...............................................................4, 17, 18, 23

### STATUTES

35 U.S.C. § 112 ...............................................................................................................3, 16

v

## I.    INTRODUCTION

Plaintiff Mad Dogg's opening claim construction brief refuses to engage with inconvenient facts and law. On the facts, Mad Dogg ignores the words it chose for its patent claims and tries to import concepts like "open geometry" and "time-shifting" into claims that say nothing of the sort. Similarly, Mad Dogg tries to inject new facts and figures into the patents' common specification. Mad Dogg then tries to have it both ways, urging the Court to nominally give some terms their "plain and ordinary meaning," while in reality hoping to avoid the Court's scrutiny of the limited, narrow, and unsupported "plain meanings" Mad Dogg will later argue applies to those same terms to avoid the prior art. Mad Dogg's analyses rest on fundamental errors on the law, notably disregarding or failing to correctly apply settled precedent like *Phillips* and *Williamson*, and mixing up basic patent law principles of indefiniteness and enablement. Only Peloton's proposed constructions stay true to the claim language and specification as *Phillips* mandates, and reflect what the inventor actually told the Patent Office he invented in 2005—not what Mad Dogg takes false credit for years later. Respectfully, the Court should reject Mad Dogg's claim constructions and adopt Peloton's.

## II.    BACKGROUND OF THE ASSERTED PATENTS

Mad Dogg's two patents, U.S. Patent Nos. 9,694,240 and 10,137,328, have a common specification and claim priority to an application filed in 2005. They relate generally to a bike used for exercising. (Rawls Decl. ¶ 24.) The claims include a number of common components such as a frame, a direct-drive mechanism, handlebars, and a resistance mechanism. (*Id*., ¶¶ 25-36.) Mad Dogg does not claim to have invented the bicycle or these age-old components. Nor does it contend it invented any of the computer-related components recited in its claims, like a generic "computer" or "display" or "input device," which have existed for decades.

In its brief, Mad Dogg studiously ignores the central purpose of the invention which is

described plainly in the specification. Mad Dogg told the Patent Office it invented an exercise bike for users who *cannot* take cycling classes, and need a device to use "without an instructor." The specification explains the problem: "*without an instructor*, the individual may not receive the proper instruction or guidance essential to simulating the different riding positions and/or resistances and/or pedal cadences that an instructor typically provides during a class."[1] (Ex. A,[2,3] 1:63-67.) "Accordingly, a need exists for a stationary exercise bike for use by an individual *who is not participating in an instructor-led class* …." (Ex. A, 2:10-16.) Similarly, Mad Dogg distinguished its claimed inventions from "videos of an instructor providing instruction," which it admits "have been available for an individual to watch as he or she rides an indoor cycling bike." (*Id.* at 2:20-23.) And Mad Dogg even acknowledged that "an indoor cycling bike and a display screen" which "provides directions to the rider" were known in the art before its patents. (*Id.* at 2:28-32.)

Rather than these concepts, Mad Dogg purported to invent attaching to a bike a computer that could "generate any number of work out routines" and display a "series of icons" and "word text" to a user, that "light up" or "flash" to provide instructions. (Ex. A, Fig 2A, 4:56-63, 5:46-49, 5:50-6:56.) This approach, Mad Dogg contends, "overcomes some of the risks associated with random, *non-instructed* use of indoor cycling bikes that are typically used in a group class led by an instructor." (*Id.* at 7:39-41.)

Peloton launched its first product, the Peloton Bike, in 2014, offering live and on-demand fitness classes from world-class instructors. Its revolutionary platform and product took the home fitness industry by storm. A year later, in 2015, Mad Dogg—whose lawyers had kept its patent

---

[1] All emphasis in quotes has been added unless otherwise indicated.

[2] All exhibits are attached to the Declaration of Gabriel Gross, filed herewith.

[3] The Asserted Patents share identical specifications. For ease of reference, Peloton will refer to the specification of the '240 patent. The '328 patent is included in Exhibit B, filed herewith.

applications alive at the Patent Office *for over a decade*—began drafting new claims in an effort

to cover what Peloton was doing. (Ex. C (Sept. 30, 2015 Resp. to Mar. 31, 2015 Office Action),

2-4.) Once it saw Peloton's success, Mad Dogg reimagined its decade-old patent application, ap-

plied for new claims designed to ensnare Peloton, and convinced a patent examiner to allow the

patents. As these claim construction proceedings lay bare, however, Mad Dogg's revisionist view

of its patent claims finds no support in its 2005-era specification or the intrinsic record.

## III.    MAD DOGG'S LEGAL ERRORS

Mad Dogg's brief is laden with legal errors. It disregards and does not even cite the most

authoritative case on claim construction principles, *Phillips*, that reaffirmed the primacy of the

intrinsic record. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Mad Dogg instead

heavily relies on extrinsic evidence like dictionaries for definitions of generic words like "com-

puter" and "mechanism." (Pl. Br. 17, 23, 28.[4]) This approach is "less reliable" and "improperly

restricts the role of the specification in claim construction." *Phillips*, 415 F.3d at 1318, 1320.

Mad Dogg also is wrong on the law of means-plus-function claiming. First, it argues that

if a person of ordinary skill in the art[5] (a "POSITA") "would have been aware" of structures or

"could have developed" an algorithm for performing functions recited in the claims, then the

means-plus-function statute, 35 U.S.C. § 112, ¶ 6, cannot apply. (Pl. Br. 15-16, 20-21, 28.) This is

not the law. "[I]t is well established that proving that a person of ordinary skill *could* devise some

method to perform the function *is not the proper inquiry* as to definiteness—that inquiry goes to

---

[4] Notably, however, despite engaging two expert witnesses, one an engineering professor and the other a product design expert, neither provided a declaration in support of Mad Dogg's proposed claim constructions.

[5] Mr. Rawls provided unrebutted testimony that at the relevant time a POSITA "would have had at least a bachelor's degree in biomechanics or engineering (or equivalent) and about five years or more industry experience or equivalent experience in designing cardiovascular exercise equipment (such as treadmills, bicycles, steppers, ellipticals) or in a similar field. A POSITA could substitute directly relevant additional education for experience, *e.g.*, substituting an advanced degree relating to the design of cardiovascular exercise equipment (such as treadmills, bicycles, steppers, ellipticals) or biomechanics (or equivalent), for industry experience in a related field, and vice versa, substituting additional industry experience for a formal degree in a relevant field." (Rawls Decl. ¶¶ 37-39.)

enablement." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013) (citing *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009); *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1299 (Fed. Cir. 2018); *MTD Prod. Inc. v. Iancu*, 933 F.3d 1336 (Fed. Cir. 2019).

Second, despite Mad Dogg's claims to the contrary, there is no "strong presumption" that § 112, ¶ 6 does ***not*** apply to claims that do *not* use the word "means." (Pl. Br. 13, 18, 26.) The Federal Circuit in *Williamson v. Citrix Online, LLC* "expressly overrule[d] the characterization of that presumption as 'strong.'" 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*). Rather, the presumption is overcome when a claim that does not use "means" recites function without sufficient structure for performing that function, as Mad Dogg does in several instances. *Infra* §§ IV.D-IV.F.

## IV.    THE COURT SHOULD ADOPT PELOTON'S CLAIM CONSTRUCTIONS.

### A.    The preambles

The preambles are not limiting. The terms "exercise bike" and "stationary bike" do not "give life, meaning, and vitality" to the claims. *UNILOC 2017 LLC v. Verizon Commc'ns, Inc.*, No. 2:18-cv-00536 JRG, 2020 WL 805271, at *10 (E.D. Tex. Feb. 18, 2020), *aff'd*, 846 F. App'x 914 (Fed. Cir. 2021). This is because a POSITA reading the bodies of the claims ***apart*** from the preambles understands what the invention is: a bicycle used for exercising. (Rawls Decl. ¶¶ 40-43). *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). The bodies of the claims recite common structural bike elements such as "a frame," "a direct drive mechanism," "a pedal assembly," "a flywheel," and "a set of handlebars," which describe to a POSITA a bicycle that can be used for exercising. (Rawls Decl. ¶¶ 42-43.) Thus, the preamble is not essential to understand the claim because the body of the claims describe this structurally complete invention. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-9 (Fed. Cir. 2002). In contrast, the words "exercise" and "stationary" merely state a purpose or intended use.

*Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 770 (Fed. Cir. 2018). Further, Mad Dogg did *not* rely on the preambles "to distinguish the claimed invention from the prior art" because the prior art included "exercise bikes" and "stationary bikes."[6] (Pl. Br. 5.)  The preambles thus are not limiting.[7]

If the Court disagrees, however, only Peloton has provided a construction explaining what the preambles mean: a bike used for exercise. (Rawls Decl. ¶¶ 44-45 ("The language of the term is clear, and a POSITA would understand from reading the claims that any bicycle used for exercise that satisfies the recited limitations is being claimed.").) This is amply supported by the specification. (*See, e.g.*, Ex. A, 1:21-27, 2:42-44.) Mad Dogg does not dispute this construction, rebut Mr. Rawls's testimony, or offer an alternative construction. (Pl. Br. 3-5.) Thus, the undisputed evidence of record supports only Peloton's construction of the preambles, if the Court finds them to be limiting. The Court should reject Mad Dogg's invitation to find the preambles limiting, but leave them un-construed, which would delay an inevitable dispute over their meaning until the parties are litigating infringement or invalidity. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361-63 (Fed. Cir. 2008).

---

[6] Mad Dogg amended the preamble to recite "[a]n exercise bike" instead of "an exercise device" but did ***not*** rely upon this to overcome the prior art. *Catalina Mktg.*, 289 F.3d at 808 ("clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation …."). (Ex. C (Sept. 30, 2015 Resp. to Mar. 31, 2015 Office Action); Ex. D (Mar. 19, 2018 Resp. to Sept. 13, 2017 Office Action).) The prior art references at issue already *were* directed to exercise bikes: Hernandez ("[a] spinning cycle exercise bike"), Fernandez ("a fitness apparatus comprising[] a stationary bicycle"), and Brisson (entitled "Bicycle Computer with Memory . . ."). (Ex. E (Mar. 31 2015 Non-Final Rejection), 2-4; Ex. F (Sept. 13, 2017 Non-Final Rejection), 2-4.)

[7] Even Mad Dogg has not treated the preambles as limiting in this litigation. It did not do so in its interrogatory response where it identifies the portions of the patent specification that it contends provide written description support for or enable ***each limitation***, or when Mad Dogg purported to show how its own products purportedly practice ***each limitation*** of the claims. (Ex. G (May 27, 2021 MDA Resps. to Peloton's First Set of Interrogs.), 18-21 (No. 8), 21-24 (No. 9), 24-30 (No. 10).)

**B.**     **"the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions" (claim 1 of the '240 patent; claim 1 of the '328 patent) and "the rider is provided with instructions for the rider to manually adjust pedaling resistance and to vary cadence" (claim 14 of the '240 patent)**

| Peloton's Constructions | Mad Dogg's Constructions |
|---|---|
| "the rider is provided with instructions, without an instructor, for the rider to manually adjust pedaling resistance and to vary cadence and riding positions including sitting and standing positions" | No construction required, plain and ordinary meaning |
| "the rider is provided with instructions, without an instructor, for the rider to manually adjust pedaling resistance and to vary cadence" | No construction required, plain and ordinary meaning |

This dispute turns on whether the claims require providing "instructions" to a rider with, or without, an instructor.[8] The claim language and specification make clear to a POSITA, in words and pictures, that the very purpose of the invention, and this claim term, is to provide a bike for use ***without an instructor*** and without requiring participation in an instructor-led class, as reflected in Peloton's construction. (Rawls Decl. ¶¶ 46-61.)

First, the claims require that the "display … ***displays*** an exercise routine" such that a "rider is provided with instructions." It is not sufficient that a rider receive audio instructions, for that is not "displaying" anything. (Pl. Br. 25.) Claim 1 of the '240 patent further recites that the displayed exercise routines are for "***simulating*** an instructor-led class." One cannot "simulate" an instructor-led class by literally providing an instructor-led class. (Rawls. Decl., ¶ 55.) It follows from the claims that the instructions are provided "without an instructor."

The specification, always "the single best guide to the meaning of a disputed term," *Phillips*, 415 F.3d at 1321, is replete with text making clear that the alleged invention is for providing

---

[8] Declining to construe the term, as urged by Mad Dogg, would improperly send this claim interpretation dispute to the jury. *O2 Micro*, 521 F.3d at 1361-63. Accordingly, the Court should construe the term and adopt Peloton's proposed construction.

instructions to users without an instructor. Indeed, every single section and every single column confirms that the claims provide instructions without a human instructor. This starts at the very beginning of the patents with their title: they provide "***computer aided*** guidance" as opposed to guidance from a human instructor. (Ex. A, Title.) Then, still on the cover, the Abstract describes "the invention"[9] as allowing "a rider to obtain benefits of a group, instructor-led class though the rider's schedule ***does not permit*** the rider to participate in the class." (*Id.* at Abstract.) The next section—the Field of the Invention—follows suit and states that "an embodiment of the invention" provides "instructions ***similar***," i.e., not the same, "to those provided by an instructor." (*Id.* at 1:24-29.) The same is true for the next section—the Background—which explains the problem the patent purports to solve: "***without an instructor***" the individual may not receive "proper instruction or guidance … that an instructor typically provides during a class." (*Id.* at 1:63-67.) That same section then describes the "need" in the prior art as one "for a stationary exercise bike for use by an individual who is ***not participating in an instructor-led class*** … so that the individual may receive benefits typically received during an instructor-led class." The Summary of the Invention follows suit and describes "the invention" as having a "***display***" on the bike that "provides instruction to lead a rider." (*Id.* at 2:42-44.) And the Detailed Description section of the patents describes the invention in the same terms, as providing instructions "***similar*** to that provided in instructor-led classes" (*id.* at 2:65-3:2), "through [a] display" (*id.*, 3:56-60), "automatically devise[d]" by a computer (*id.* at 4:56-59), preferably including "icons and screens that instruct the rider" (*id.* 5:50-

---

[9] "When a patent thus describes the features of *the 'present invention'* as a whole, this description limits the scope of **the invention**." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). Relatedly, "[w]hen the preferred embodiment is described in the specification as *the invention* itself, the claims are not necessarily entitled to a scope broader than that embodiment." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) (quoting *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005) and collecting cases).

52 and 6:21-25), using audio to "enable riders to hear audible beeps" as opposed to human instructors (*id.* at 7:6-8), and, as noted above, overcoming the "risks associated" with using an exercise bike when **not** in "a group class led by an instructor" (*id.* at 7:39-42).

Moreover, every embodiment in the specification is one that provides instructions without an instructor. (*Id.*) The same is true for every figure. Figure 2A (highlighted below) shows the display of the claimed invention, with a series of "icons" such as for sitting or standing (112-118), positions on handlebars that "light up" (110(1)-110(3)), and displays of "flashing" or "non-flashing" numbers or text reflecting metrics such as "Cadence Range" (126) "Resistance" (128) and "Other Instructions" (132). (Ex. A, 5:50-6:56; Fig. 2A.) Figure 2B is much the same, and no figure (or text) ever describes a human instructor as providing the "instructions" of the claims. (Ex. A, Fig. 2B; Rawls Decl., ¶¶ 51-52.) *Phillips*, 415 F.3d at 1316; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp.*, Inc., 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("When a patentee uses a claim term throughout the entire patent specifica-



FIG. 2A

tion, in a manner consistent with only a single meaning, he has defined that term 'by implication.'"); *Uniloc 2017 LLC v. Google LLC*, No. 2-18-CV-00491-JRG-RSP, 2020 WL 569857, at *5 (E.D. Tex. Feb. 5, 2020) (finding definition by implication based on the specification's description of every embodiment, the abstract, and background sections); *PACid Grp., LLC v. Apple, Inc.*, No. 6:09-CV-143-LED-JDL, 2010 WL 2813654, at *17 (E.D. Tex. July 15, 2010).

Mad Dogg claims that the "logical conclusion" of its specification is that the "instructions" may be provided by human instructors. (Pl. Br. 24-25.) In particular, it wrongly claims with no supporting evidence that its invention allows users to "time-shift" a live, instructor-led exercise class. (*Id*.) As shown above, nothing in the specification supports that conclusion, ever mentions the invention as being used in an instructor-led class, or otherwise suggests that the Court should read a "time-shifting" limitation into the claims.

Mad Dogg further claims that "the specification discloses instructions contained on video." (Pl. Br. 25.) But it does so only to ***distinguish*** and ***contrast*** the invention from prior art "videos of an instructor" which were known and common in 2005. (Ex. A, 2:20-24.) Mad Dogg also relies on the specification's statement that, as "an alternative to the computer discussed above, display 100 may include a device to receive a CD-ROM, DVD, VHS tape or other storage medium that ***contains or receives riding instructions*.'" (Ex. A, 4:66-5:3.) But, on its face, this passage mentions only the receipt or storage of instructions by a storage medium, and says nothing about displaying or providing those instructions to a user, not to mention providing those instructions by an instructor.[10] Finally, Mad Dogg argues that the "speaker" discussed in the specification somehow establishes that the "***displayed***" instructions are provided by an instructor. (Pl. Br. 25.) But, speakers do not display and, as shown above, Mad Dogg omits the preceding sentence that states the speaker "enable[s] riders ***to hear beeps*** indicating a change in position is needed." (Ex. A, 7:5-6.) Beeps are not provided by an instructor, and are not "displayed" as the claim requires.

---

[10] Mad Dogg argues that "Peloton's expert could only take the unreasonable position that a "Digital Video Disk" (*i.e.*, DVD) and a "Video Home System" tape (*i.e.*, VHS tape) cannot display an instructor's audio or visual instructions in the claimed invention." (Pl. Br. 25; Ex. H, 108:22-109:22.) This is false. Mr. Rawls testified correctly that "CD-ROM, DVD, or VHS" are "just data" and that there is no indication in the specification that such data storage media, or even the concept of video, should be imported into the claims. (Ex. H, 109:3-18.) To the contrary and as noted above, the specification criticizes "such videos" from the prior art (Ex. A, 2:20-24), and only refers to such storage media "[a]s an ***alternative*** to the computer" required by Mad Dogg's claims. (*Id.* at 4:66-5:2.)

For these reasons, Peloton's construction should be adopted to clarify that the claimed instructions are provided "without an instructor" and ensure the claims are given their proper scope and meaning consistent with the specification.

**C.** **"a frame that is configured to allow a rider to ride in sitting and standing positions" (claims 1 and 14 of the '240 patent; claim 1 of the '328 patent)**

| Peloton's Construction | Mad Dogg's Construction |
|---|---|
| Plain and ordinary meaning<br><br>To the extent Mad Dogg seeks to import some specific criteria (e.g., open geometry, support structures) that it contends establish that some frames are configured to allow a rider to ride in sitting and standing positions while others are not, the term is indefinite | Plain and ordinary meaning |

Mad Dogg claims that "[t]he parties agree" that "a frame that is configured to allow a rider to ride in sitting and standing positions," deserves its plain and ordinary meaning. (Pl. Br. 6.) This is misleading—the parties differ sharply on what that plain meaning is. (*Id.*) The phrase simply refers to a bike that allows a rider to sit or stand while riding. (Rawls Decl. ¶¶ 62-74.) This is the plain and ordinary meaning and there is no reason to augment it further. Mad Dogg, however, argues that this term refers to an unclaimed, unspecified "open geometry," and urges the Court to cabin its construction in ways that are not supported by the intrinsic record. [11]

When Mad Dogg first disclosed its preliminary constructions, it argued that this phrase, "a frame that is configured to allow a rider to ride in sitting and standing positions," should be narrowly construed in thirteen parts: "[1] a frame of an exercise bike [2] having ***an open geometry*** and [3] which couples [4] an adjustable seat assembly, [5] an adjustable handlebar, and [6] a pedal assembly, which [7] thereby allows a rider to simulate different riding conditions, including

---

[11] This is consistent with how Mad Dogg characterized its patent in opposing Peloton's motion to dismiss. Then, Mad Dogg claimed that the "inventive concept of the asserted claims" was reflected in a frame that "that enables the ***open geometry*** required to facilitate a smooth transition between sitting and standing" and that its claims had some "specific limitations implementing the open geometry." (Dkt. No. 37 at 3; Dkt No. 53 at 4, n.3.)

[8] flats, [9] hills, [10] climbing, and [11] sprinting, in [12] a sitting and [13] standing position."
(Ex. I (Pl. LPR 4-2 Disclosures), 1.) Mad Dogg apparently thought better of submitting this pro-
posed construction to the Court and changed course. Now it contends that the same phrase is "clear
and simple for a jury to understand," but at the same time, persists in its contention that the term
includes unclaimed concepts such as an "open geometry," whatever that may mean. The claim
language does not support this:

> a frame that is configured to allow a rider to ride in sitting
> and standing positions;

Nothing in this language refers to any geometry, much less "open geometry" or a "spatial relation-
ship" of components. (Pl. Br. 6.) The claim simply requires a frame "configured to allow a rider"
to sit or stand. If the rider can both sit and stand, this limitation would be practiced or taught in the
prior art.

Second, the specification supports Peloton's simple reading of the term, not Mad Dogg's.
Mad Dogg argues that "the stationary exercise bike, as embodied in Figure 1 of the Asserted Pa-
tents, clearly allows a rider to ride in a sitting and standing position *because of the spatial rela-
tionship* between the seat, pedals and handlebars." (*Id.*) But Figure 1 does not define or require a
specific "spatial relationship" any more than the claim language does. So Mad Dogg resorts to
supplementing the figures of its patent, ostensibly showing the undefined, unexplained geometry
it would have the Court read into the claims. (*Id.* at 2, 6.)

But the specification does not use the term "frame" outside of the claims and nowhere does
it explain what a frame's "open geometry" is or that the patent requires some special configuration
that would allow a rider to sit or stand in some special way. Rather, the specification mentions
"open geometry" for different reasons than Mad Dogg suggests. It says that prior art bicycles may
be "inadequate" because they do not have an "open geometry, adjustability or other characteristics

11

that allow an individual **to experience an exercise program**." (Ex. A, 1:56-60). It also describes "**bike** 10 shown"—not just the frame—as "adjustable" and having "an open geometry that allows a rider to **simulate different riding positions and conditions**." (Ex. A, 3:5-8). This discussion at best refers to an unexplained, unclaimed feature but lacks any suggestion it is definitional of the claimed "frame" or limiting of the claims otherwise. *Phillips*, 415 F.3d at 1320.

Similarly, the specification disparages the "geometry" of some unspecified prior art "LIFECYLE **type** bike" about which it provides no detail.[12] (Ex. A, 7:14-17.). So Mad Dogg looks to supplement its specification here too by proffering an extrinsic user manual for two specific LifeCycle models, the "SU70 and SR70 Exercise Bikes," neither of which is mentioned in the patents. Mad Dogg claims that one model, the recumbent SR70 bike, contrasts with the claimed invention, and suggests that it elucidates the meaning of this claim term. (Pl. Br. 7; Dkt. No. 64, Ex. C.) But it is undisputed that "LifeCycle made **a variety** of different bicycles with **a variety** of frame structures and geometries" beyond the recumbent bike Mad Dogg selected, many of which "**did** allow riders to stand and sit." (Rawls Decl. ¶ 72.) In fact, the manual itself depicts an upright bike, the SU70 that Mad Dogg ignores, which allows a rider to sit or stand. (Dkt. No. 64, Ex. C., cover; Rawls Decl. ¶ 72.) These extrinsic manuals shed no light on what is meant by the specification and provide no reason for the Court to import "open geometry" into the claims.

By contrast, the specification overwhelmingly supports that this claim term refers to a bike that allows a rider to sit or stand without being limited to any specific "geometry." (*See, e.g.*, Ex. A, 1:36-40, 3:21-24, 3:36-39, 4:33-34, 5:61-67, 6:4-7, 6:21-25.) Finally, Mr. Rawls confirms that

---

[12] Mad Dogg argues that "[d]uring prosecution of the '240 patent, Mad Dogg distinguished the pending claims over a **recumbent** exercise bike of U.S. Patent No. 7,022,048 ("Fernandez"), noting that 'it does not appear that the bike of Fernandez may be ridden in a standing position.'" (Pl. Br. 7 n.5 (citing Ex. C (Sep. 30, 2015 Response), 6).) This is inaccurate. Fernandez (Ex. J, Fig. 9) discloses **both** upright and recumbent bikes, and neither the examiner nor Mad Dogg ever specified or even mentioned the "recumbent bike."

this is how a POSITA would understand the claim term in view of the specification and file history. (Rawls Decl. ¶¶ 67-71.) His testimony is unrebutted that if the claim required an "open geometry" that is nowhere defined or explained by the patent, it would fail to inform a POSITA about the scope of the invention and so renders the claims indefinite. (*Id.*, ¶¶ 72-74.)

### D.    "computer … configured to … " (claims 1 and 14 of the '240 patent; claim 1 of the '328 patent)

The three "computer" terms are means-plus-function terms under the correct legal standard, and the specification lacks any corresponding structure under the correct factual record. The Court should find these terms indefinite.

| Claim Term | Function |
|---|---|
| "a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network . . . and that stores power exerted by the rider." (claim 1 of the '240 patent) | connect with the internet or other computer network . . . and that stores power exerted by the rider |
| "a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network." (claim 14 of the '240 patent; claim 1 of the '328 patent) | connect with the internet or other computer network |
| "the computer is configured to measure the pedaling resistance and the rider's cadence and is configured to calculate power exerted by the rider based on the pedaling resistance and the rider's cadence" (claim 14 of the '240 patent; claim 1 of the '328 patent) | calculate power exerted by the rider based on the pedaling resistance and the rider's cadence |

To determine whether § 112, ¶ 6 applies to a claim limitation, the "essential inquiry is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Grecia v. Samsung Elecs. Am. Inc.*, 780 F. App'x 912, 914 (Fed. Cir. 2019) (internal quotations omitted). Where a claim term lacks the words "means," the rebuttable presumption that § 112, ¶ 6 does not apply is overcome if, as here, "the claim term fails to recite sufficiently definite structure or else recites function without reciting

sufficient structure for performing that function." *Diebold*, 899 F.3d at 1298. This is not a "strong presumption" as Mad Dogg argues. On the contrary, the *en banc* Federal Circuit in *Williamson* "expressly overrule[d] the characterization of that presumption as 'strong,'" abolishing the heightened standard that Mad Dogg applies. 792 F.3d at 1349.

For computer-implemented means-plus-function claims like this, the structure that must be disclosed in the specification "is not the general purpose computer, but rather the special purpose computer ***programmed to perform the disclosed algorithm***." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008). As the Federal Circuit has made clear, in some cases general computer functions such as "processing," "receiving," and "storing" "can be achieved by any general purpose computer without special programming," so no structure other than the general purpose computer term need be claimed. *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011); *see also Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 615 (E.D. Tex. 2019), *reconsideration denied*, No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019). This is not such a case.

Mad Dogg's "computer," according to the claims, does not simply perform "computing" or another general purpose function. To the contrary, the claims require that the computer calculate power, measure cadence and resistance, access the internet, access a collection of exercise routines that include instructions, etc. Each of these is a "specific function[] that would need to be implemented by programming a general purpose computer to convert it into a special purpose computer capable of performing those specified functions." *In re Katz*, 639 F.3d at 1316 (citing *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2018)). In particular, a POSITA must understand the "patent to disclose structure that sufficiently corresponds to the

claimed function, which in the case of a specific function implemented on a general purpose computer requires an algorithm." *Id.* at 1317; *see also Soque Holdings (Bermuda) Ltd. v. Keycsan, Inc.*, No. C-09-2651, 2010 WL 2292316, at *12 (N.D. Cal. June 7, 2010) (finding "computer" a means-plus-function term, noting that where "'computer' is insufficient structure for a 'means' limitation, the naked term 'computer' cannot describe sufficient structure when recited directly in the claim limitation").

The recitation of a "computer" performing the functions listed in Mad Dogg's claims does not convey to a POSITA any particular structure or algorithm that performs those functions, and so these terms should be construed as means-plus-function. (Rawls Decl. ¶¶ 47, 72, 78.) A general purpose, unprogrammed computer cannot perform the claimed functions, and a POSITA would need some form of algorithm in order to program the computer to perform the recited functions. (*Id.*) Even Mad Dogg agrees, and told this Court, that a special purpose computer is needed to perform the recited functions:

> [T]he claims are *not* directed to achieving the result of "simulating an instructor-led exercise class" ***through a generic off-the-shelf computer (which, for that matter, cannot by itself interface with an exercise bike)***. Rather, they are directed to an exercise bike, with certain specific physical features, that are enhanced by coupling a *special purpose computer*, display, and input device to the frame of the bike.

(D.I. 37 at 18.) [13] The "computer" of the claims is not merely connected to the internet, but rather, is "configured to connect with the internet ***or other computer network to access a collection of exercise routines***, wherein the exercise routines include instructions." (D.I. 37 at 18.) Mad Dogg fails to identify any corresponding structure in the claims or the specification as a whole that can

---

[13] Mad Dogg cites to the '185 patent, which is incorporated by reference into the asserted patents, to support its contention that "[t]he specification of the Asserted Patents clearly describes a class of known structures." (Pl. Br. 22-23.) However, "material incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement for a means-plus-function clause." *See Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1301 (Fed. Cir. 2005).

perform these claimed functions. (Pl. Br. 18-23.) The parts of the specification Mad Dogg relies on serve only to emphasize the generic nature of the claimed computer. Indeed, every citation identified by Mad Dogg reiterates that a "computer" is used ***without providing any further structure or disclosing an algorithm*** sufficient to perform the claimed functions. (*Id.* at 21-22.)

As Mr. Rawls explains in his unrebutted declaration, the specification does not disclose any algorithm, let alone an algorithm that would perform the claimed functions. (Rawls Decl. ¶¶ 78, 103, 108.) Mad Dogg does not dispute his conclusion that the specification fails to disclose any algorithms to perform the claimed function. *See also Aristocrat*, 521 F.3d at 1337. Accordingly, the Court should construe the three "computer" limitations as means-plus-function terms. Given the absence in the specification of any structure or algorithms to perform the claimed functions, it should find them indefinite under 35 U.S.C. § 112, ¶ 2. *Id.* at 1338..

As its main defense, Mad Dogg erroneously conflates the standard for means-plus-function claiming under § 112, ¶ 6 with that for enablement under § 112, ¶ 1. Mad Dogg criticizes Mr. Rawls for "conceding" that "'(i) a POSITA … ***would have been able to*** connect a computer to the internet in 2005 without being providing a specific algorithm,' … ; (ii) there 'were known ways to measure the power and resistance to a POSITA' in 2005 … ; and (iii) 'a POSITA could have developed an algorithm to be able to store the power exerted by a rider on a computer in 2005 ….'" (Pl. Br. 21.) Mad Dogg misses the point.

"Whether the disclosure would *enable* one of ordinary skill in the art to make and use the invention is not at issue here." *Aristocrat*, 512 F.3d at 1336. The "consideration of the understanding of one skilled in the art in no way relieves the patentee of adequately disclosing sufficient structure in the specification. It is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art ***would know*** what structures to use to accomplish the claimed

function." *Id.* (internal quotations omitted). The proper inquiry is "to look at the ***disclosure*** of the

patent and determine if one of skill in the art would have understood that ***disclosure*** to encompass

software to perform the claimed function and been able to implement such a program, not simply

whether one of skill in the art would have been able to write such a software program." *Id.* at 1337

(internal quotations omitted, emphasis in original).

> **E.    "a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance" (claims 1 and 14 of the '240 patent; claim 1 of the '328 patent)**

| Peloton's Construction | Mad Dogg's Construction |
|---|---|
| As governed by 35 U.S.C. § 112(f) (pre-AIA § 112, ¶ 6):<br><br>• Recited function: providing resistance to the flywheel in a way that is manually adjustable by the rider to vary the pedaling resistance<br><br>• Disclosed structure: structure labeled with reference numeral 16 as depicted in Figure 1 (friction brake) | No construction required, plain and ordinary meaning, not governed by 35 U.S.C. § 112(f) |

This is a means-plus-function term in which the patentee uses the word "mechanism" in

place of "means." It should be governed by a standard application of § 112, ¶ 6 and construed to

reflect the corresponding structure disclosed in the specification and its equivalents. *See Frank's*

*Casing Crew and Rental Tools, Inc. v. Tesco Corp.*, No. 2-07-CV-015 (TJW), 2008 WL 4900137

(E.D. Tex., Nov. 12, 2008) (finding "moving mechanism" invokes § 112, ¶ 6 and limiting it to the

structures in the specification). Properly construed, this term refers to the friction brake shown in

the specification's Figure 1, labeled with reference numeral 16, and its equivalents. (Rawls Decl.

¶¶ 121-27.)

The first step of the analysis requires determining "whether the words of the claim are

understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the

name for structure." *Williamson*, 792 F.3d at 1348. They are not. "[A] mechanism that provides

resistance" is defined only by its function, and the unrebutted expert testimony of Mr. Rawls confirms that a POSITA would understand "mechanism" in the context of these patents as a generic term that does not connote any definite structure. (Rawls Decl. ¶ 122.)

The claim language supports this conclusion. The term is written in means-plus-function format, *i.e.*, as a means ("mechanism") for performing a function ("providing resistance to the flywheel" and being "manually adjustable by the rider to vary the pedaling resistance"). *Williamson*, 792 F.3d at 1350. As in *Williamson*, the claim merely replaces "means" with "mechanism." *Id*. "Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word "means" because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Id.*  (*citing MIT v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)).

Mad Dogg again invites the Court to apply a "strong presumption" that a claim lacking the word "means" does not invoke § 112, ¶ 6. (Pl. Br. 13.) *Williamson* rejected this. 792 F.3d at 1349. Nothing in the claim calls out a specific structure to perform the claimed functions; rather, *any* structure that "provides resistance to the flywheel" and "is manually adjustable" would fall within the scope of this functional language. (Rawls Decl. ¶ 122.) Thus, the term recites "function without reciting sufficient structure for performing that function" and therefore invokes § 112, ¶ 6.

Every case Mad Dogg cites in support of its argument that "a mechanism that provides resistance to the flywheel" is ***not*** a means plus function term is distinguishable because, in those cases, the evidence established that a POSITA would understand the claim language to connote particular structures. *See, e.g.*, *Nanology Alpha LLC v. WITec Wissen. Instr. & Tech. GmbH*, No. 6:16-CV-00445-RWS, 2017 WL 5905272, at *9-11 (E.D. Tex. Nov. 30, 2017) (finding the claims

imparted structure because they "not only describe the structural elements, but also recite the interaction between the structural elements"); *Unicorn Glob. Inc. v. Golabs, Inc.*, No. 3:19-CV-0754-N, 2020 WL 2745692, at *5 (N.D. Tex. May 26, 2020) (finding that a POSITA would understand from the claims that "rotating mechanism" referred to a particular structure comprising barrels, bearings, and shafts); *Uni-Sys., LLC v. U.S. Tennis Ass'n Nat'l Tennis Ctr. Inc.*, No. 17-CV-147-KAM-CLP, 2020 WL 3960841, at *13 (E.D.N.Y. July 13, 2020) (finding that a POSITA would understand "retention mechanism" to connote sufficient structure because "retention" was well-defined in the art as a structural element); *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 6:19-CV-06036-EAW, 2020 WL 7692767, at *14 (W.D.N.Y. Dec. 28, 2020) (finding that "marking" in the term "marking mechanism" has "a straightforward definition" in the field of printing technology). In other examples cited by Mad Dogg, the word "mechanism" was modified by a preceding term that connoted structure to a skilled artisan. *See, e.g.*, *Accuhale LLC v. Astra-Zeneca LP*, No. 6:11-cv-707, 2013 WL 4045904, at *8 (E.D. Tex. Aug. 7, 2013) (finding "rotation mechanism" to connote structures that translate movement in one direction along an axis into a rotational movement perpendicular to that same axis); *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (finding that "detent mechanism," "***as the name for structure***, has a reasonably well understood meaning in the art"); *Integrity Worldwide LLC v. Rapid-EPS Ltd.*, No. 3:17-CV-0055-K, 2018 WL 3609430, at *4-5 (N.D. Tex. May 29, 2018) (finding "locking" among those words that "***describe a structure*** by its function and are therefore sufficient to describe a structure even if they appear to describe a function").

Here, the term merely recites a "mechanism" followed by purely functional language, which fails to denote structure to a POSITA. (Rawls Decl. ¶¶ 121-22.) *See Toro Co. v. Deere &*

*Co.*, 355 F.3d 1313, 1325 (Fed. Cir. 2004) ( "control mechanism" does not convey sufficient structure); *MIT*, 462 F.3d at 1354 ("colorant selection mechanism" does not convey sufficient structure, as it lacks a generally understood meaning in the art). Mad Dogg's claims provide no context for how "a mechanism that provides resistance to the flywheel" is structured to "provide[] resistance." (Rawls Decl. ¶ 122.)

Citing nothing but attorney argument, Mad Dogg contends that "a mechanism that provides resistance to the flywheel" evokes a "class of known structures in the exercise bike industry" and thus does not evoke § 112, ¶ 6. (Pl. Br. 15.) Not so. A "mechanism that provides resistance" does ***not*** evoke some finite list or "class" of known structures, and Mad Dogg proffers no evidence to show otherwise. Rather, it encompasses ***any and all*** devices that could provide resistance, including the many diverse examples Mr. Rawls cited in his unrebutted testimony.[14] (Rawls Decl. ¶¶ 123-27 (describing an array of mechanisms for providing resistance including pads, straps, alternators, cable brakes, belts, rollers, noting there are "several types of each," "several other ways"); *see also, e.g.*, Ex. H, 150:9-23, 152:12-154:24 (describing same, also "electromagnetic brakes," "fan-type brakes," and more, concluding, "So there's just a variety of different brakes.").) The limitless breadth of the claimed "mechanism," left unchecked, encompasses these and ***every other*** possible structure for performing the claimed functions.

Mad Dogg next resorts to dictionary definitions of "mechanism," divorced from the context

---

[14] Mad Dogg claims that "Peloton's expert admits the claimed "mechanism that provides resistance to the flywheel" connotes a class of known structures to a POSITA." (Pl. Br. 15.) This is false. The ability of a POSITA to name a number of examples which could fall within the scope of a means plus function claim does not provide definite structure. *Williamson*, 792 F.3d at 1351 ("But the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed."), 1354 ("The prohibition against using expert testimony to create structure where none otherwise exists is a direct consequence of the requirement that the specification adequately disclose corresponding structure."). Nor did Mr. Rawls "admit" that the "mechanism that provides resistance" connotes a class of known structures. The part of the transcript cited by Mad Dogg asked if a person of skill would have known of "various mechanisms to provide resistance" ***not*** whether the ***claim language*** denoted "a class of known structures to a POSITA." (Ex. H, 152:3-11.)

of its patents. (Pl. Br. 17.) But these dictionaries confirm that nothing about "a system of parts working together in a machine" or "a machine or part of a machine that performs a specific task" conveys a particular structure. These definitions emphatically prove the opposite, that a "mechanism" is any structure that "performs a specific task." (*Id.* (citing Pl. Br. Ex. O; Pl. Br. Ex. P).)

"[T]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 5896180, at *41 (E.D. Tex. Nov. 29, 2017) (internal citation omitted). The specification does not describe what type of resistance mechanism is used. It states only that "[b]ike 10 preferably includes … variable ***resistance mechanism 16***" and depicts it visually in Figure 1. (Ex. A, 3:8-18.) Mr. Rawls provides unrebutted testimony that "[a] POSITA would understand from the specification that the structure, the 'resistance mechanism' labeled 16 in Fig. 1, is the device that applies friction to the flywheel (by making contact with the flywheel as shown), and that is adjustable by turning the knob depicted at its top end." (Rawls Decl. ¶¶ 124-25.)



FIG. 1

Despite this single disclosure of a "friction brake," (Rawls Decl. ¶ 125), Mad Dogg claims that the specification "describes ***different kinds*** of resistance mechanisms." (Pl. Br. 16.[15]) It does not.[16] The only disclosed structure in the specification is the friction brake at reference numeral 16

---

[15] Mad Dogg cited the specification at 6:49-50 where it states: "the resistance may be computer controlled and change ***automatically***." (Pl. Br. 16.) This passage does not apply to this claim term, which expressly requires a resistance mechanism that is "***manually*** adjustable."

[16] Mad Dogg attempts to inject a general reference to "magnetic resistive bicycles" in the '424 patent, an incorporated reference. (Pl. Br. 15 n.8 (citing the '424 patent at 4:60 for "magnetic resistive bicycles").) But Mad Dogg only properly disclosed the '424 patent's discussion regarding bicycle frame design and "friction break [sic]" in accordance with Local Patent Rule 4-3(2). (Ex. L (JCCS Ex. A), 7 (citing the '424 patent at 7:30-44).) Regardless, "material

depicted in Figure 1. (Rawls Decl. ¶¶ 125-27.) Under a routine application of § 112, ¶ 6, the claimed "mechanism that provides resistance" should be limited to that structure and its equivalents.

**F.    "a mechanism that measures the rider's cadence" (claim 14 of the '240 patent)**

| Peloton's Construction | Mad Dogg's Construction |
|---|---|
| Indefinite, as governed by 35 U.S.C. § 112(f) (pre-AIA § 112, ¶ 6), for lacking sufficient structure: <br><br> • Recited function: measuring the rider's cadence <br><br> • Disclosed structure: none | No construction required, plain and ordinary meaning, not governed by 35 U.S.C. § 112(f) |

This is another means-plus-function term, in which "mechanism" is used instead of "means," and it too should be construed under § 112, ¶ 6. The term recites only a function (measuring the rider's cadence) and the nonce word "mechanism" does not connote any structure to a POSITA. (Rawls Decl. ¶¶ 129-31.) Because the specification also does not disclose any corresponding structure for performing the function (*Id.*, ¶¶ 131-39) the claim is indefinite. *See Fiber, LLC v. Ciena Corp.*, 792 F. App'x 789, 796 (Fed. Cir. 2019) (affirming that "'control' is a means-plus-function limitation invoking § 112, ¶ 6 and that there is insufficient corresponding structure in the specification, rendering the claim invalid as indefinite"); *Uniloc USA, Inc. v. Huawei Device USA, Inc.*, 2:17-CV-736-JRG-RSP, 2018 WL 6590079, at *3 (E.D. Tex. Dec. 14, 2018) (finding "step calculation logic to utilize the motion detected by the accelerometer to detect and count steps" a means-plus-function term and that a lack of corresponding structure in the specification renders the term indefinite).

---

incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement for a means-plus-function clause." *See Default Proof Credit*, 412 F.3d at 1301.

A POSITA would understand that the claim uses "mechanism" as a generic, nonce term. *Supra* at § IV.E. *Williamson*, 792 F.3d 1339, 1350 (*citing MIT*, 462 F.3d at 1354). Contrary to Mad Dogg's arguments, nothing in the claim language connotes a specific structure "that measures the rider's cadence." (Rawls Decl. ¶¶ 130-31.) Mad Dogg claims that "Peloton's expert thus admits that at least a well-known ***category of structures*** would be connoted to one of ordinary skill in the art by the claimed "mechanism that measures the rider's cadence." (Pl. Br. 27.) This misstates the record. Again, the ability of a POSITA to name several examples of structures is "not enough;" Mad Dogg cannot "simply [] state or later argue that persons of ordinary skill in the art ***would know*** what structures to use to accomplish the claimed function." *Aristocrat*, 512 F.3d at 1336. Mr. Rawls's testimony that there are many known ways to measure cadence—none of which is conveyed or limited by the claim language—in fact demonstrates the lack of structure in the claim term for performing that function. (Ex. H, 90:3-21; 94:3-6.) *See, e.g.*, *Genband USA LLC v. Metaswitch Networks Ltd.*, No. 2:14-CV-33-JRG-RSP, 2015 WL 4722185, at *12 (E.D. Tex. Aug. 7, 2015) (applying § 112, ¶ 6 where the claim terms "packetization module" and "echo cancellation module" "could refer to ***any structure that performs the claimed function***"); *Diebold*, 899 F.3d at 1301 (applying § 112, ¶ 6 where expert testimony established "that a skilled artisan would understand the functional term 'cheque standby unit' to be ***any structure capable of performing the claimed function***").

Mad Dogg contends there is "substantial guidance" ***in the claim language*** about the structure of the "mechanism that measures the rider's cadence." (Pl. Br. 27.) But Mad Dogg cites to a totally different limitation in claim 14, in which "the ***computer*** is configured to measure the pedaling resistance and the rider's cadence." The computer is not the "mechanism" at issue here. The claims require both "a mechanism that measure the rider's cadence' ***and*** a separate "computer"

23

configured to measure resistance and cadence, among other functions. *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (concluding that two separate elements recited in a claim "logically cannot be one and the same"); *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (finding claimed "spring means" and "hinged arm" to reference separate structures). And Mr. Rawls confirms that a POSITA would view the "mechanism" and "computer" as having different meanings, which Mad Dogg does not rebut. (Rawls Decl. ¶¶ 131, 137.) In any event, merely reciting a "computer" does not help Mad Dogg for the reasons discussed; nothing in *either* limitation connotes any structure for the mechanism.

Finally, Mad Dogg repeats that "extrinsic evidence, such as contemporaneous dictionary definitions" of "mechanism" supports its construction. (Pl. Br. 28.) Its reliance on these dictionaries is again misplaced, and confirms that the term "mechanism" conveys no particular structure whatsoever, and so this claim term should be construed under § 112, ¶ 6.[17] *Supra* § IV.E.

Next, we look to the specification to determine the "corresponding structure," if any is disclosed. *See Fiber*, 792 F. App'x at 795-96. The specification does not disclose any structures corresponding to the "mechanism" for measuring a rider's cadence. The only disclosure in the specification that refers to measuring a rider's cadence relates to that separate element, the "computer," and not the "mechanism": "The *computer* in display 100 may be coupled to the pedal assembly 18 so that the *computer* may measure the rider's actual cadence." (Ex. A, 6:8-10; Rawls Decl. ¶ 131.) Mad Dogg has not identified any other sections of the specification that purportedly disclose corresponding structures, and none exist. And, even if the specification's reference to a "computer" could be read to refer to the "mechanism that measures the rider's cadence," it would

---

[17] Mad Dogg argues that "[t]he specification adds to the term's structure and provides disclosure supporting the plain and ordinary meaning." (Pl. Br. 27.) As explained above this is the wrong inquiry. *Supra* § IV.E. Using the specification to show that the *claim language* provides definite structure proves that it does not. Regardless, none of Mad Dogg's citations to the specification connotes the "name for structure" to a person of skill. (Rawls Decl. ¶¶ 131-32.)

still not provide sufficient structure. Noting that "a computer" can measure cadence by being "coupled" to the pedals, does not inform a person of skill as to the **structure** required to, for example, "measure the rider's cadence." An algorithm would be required for that function, and none is disclosed in the specification. (Rawls Decl. ¶¶ 77-99, 102-5, 107-19). *See Aristocrat*, 521 F.3d at 1333; *Function Media*, 708 F.3d at 1318. With no structural disclosure in the specification, this means-plus-function claim term is indefinite.

G.    **"smooth transition" (claims 1 and 14 of the '240 patent; claim 1 of the '328 patent)**

| Peloton's Construction | Mad Dogg's Construction |
|---|---|
| Indefinite | Should be construed as part of "a direct drive mechanism that couples a pedal assembly and flywheel and that facilitates a smooth transition between sitting and standing positions"; but if construed separately, plain and ordinary meaning |

The Court should find both the term "smooth transition" and the larger limitation in which it appears indefinite. The term fails to inform a POSITA, with reasonable certainty, about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). (Rawls Decl. ¶¶ 141-49.)

First, nothing in the claims explains what a "smooth transition" is or how the claimed "direct drive mechanism" purportedly facilitates it. "Smooth transition" also is not in the specification. Its only mention of "smooth" is in the context of an unidentified prior art "LIFECYCLE type bike."[18] (Pl. Br. 11 (citing Ex. A, 7:15-21).) But even this does not inform the scope of the claim term, because the specification discusses only that some unspecified "geometry" permits a smooth "alternating" of positions, not how a "direct drive mechanism" facilitates "smoothness." From this,

---

[18] Mad Dogg relies on this sole disclosure in the specification, and appears to argue that both an upright and a recumbent LIFECYCLE—*neither* of which is mentioned in the specification—do not allow a "smooth transition" between sitting and standing. (Pl. Br. 7 n.5.) This only serves to underscore the indefiniteness of the term.

a POSITA would not understand the scope of the invention. (Rawls Decl. ¶ 141.)

Next, Mad Dogg tries to rely on two other inventors' patents it incorporated into its specification to support its construction, but these patents do not address the entire limitation. (Pl. Br. 10-11.) Like Mad Dogg's own specification, the '424 patent (issued to bike company Schwinn) says **nothing** about how a "direct drive mechanism" relates to "smoothness" of a "transition." To the contrary, it attributes a smooth "rhythm" or "operation" or "pedal[ing]," but not a "smooth transition," to something it calls an "**inertia wheel**," not to a direct drive mechanism. Nor does Hernandez support Mad Dogg, for as Mad Dogg admits, Hernandez attributes a "smooth **ride**"— not a smooth transition—to its "45-pound flywheel'" rather than to a direct drive mechanism as claimed.[19] Moreover, Mad Dogg told the Patent Office that Hernandez did **not** disclose the claimed "direct drive mechanism which facilitates the rider smoothly adopting alternating sitting and standing positions," and relied on an amendment introducing this claim term to overcome the Examiner's rejection. Ex. K (Aug. 6, 2013 Request for Continued Examination, 968 File History), 3. Mad Dogg cannot now argue to this Court that Hernandez "confirms" that this feature is well-known. *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.").

"Smooth transition" is a term of degree, as Mad Dogg admits. (Pl. Br. 11-12.) While such terms are not inherently indefinite, they still must "provid[e] enough certainty to one of skill in the

---

[19] Mad Dogg also fails to demonstrate that the '424 patent—and other patents like Hernandez—are incorporated to elucidate the claimed "smooth transition." *See Intell. Ventures I LLC v. HCC Ins. Holdings, Inc.*, No. 6:15-CV-660, 2016 WL 11258759, at *13 (E.D. Tex. Aug. 26, 2016) ("[To] incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents.") (citing *Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2002); *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1377-78 (Fed. Cir. 2006). Mad Dogg also failed to comply with Local Patent Rule 4-3(2) and disclose the portion of the '240 patent specification discussing Hernandez upon which Mad Dogg now relies, so the Court would be within its discretion to disregard it. (Pl. Br. 10 (citing Ex. A, 2:28-37); Ex. L (JCCS Ex. A) at 3-6.)

art when read in the context of the invention" and identify "'*some standard* for measuring the scope of the phrase.'" *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014) (citation omitted). There is no standard for measuring the "smooth transition" in Mad Dogg's claims, and Mad Dogg offers no expert testimony to explain how a POSITA would understand the scope of the term. This is an important factor to consider in assessing a claim term's indefiniteness. *See Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302-JRG, 2017 WL 6026729, at *30 (E.D. Tex. Dec. 5, 2017), opinion clarified, No. 2:16-CV-1302-JRG, 2018 WL 3067727 (E.D. Tex. June 21, 2018) (finding "unrebutted expert" opinion amounted to "clear and convincing evidence" that the claims were indefinite under *Nautilus*); *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 115 F. Supp. 3d 808, 832 (E.D. Tex. 2015) (cited by Mad Dogg).

Having no expert testimony of its own, Mad Dogg attempts to spin Mr. Rawls's deposition testimony, but applies the wrong legal standard. Mad Dogg claims Mr. Rawls "admitted that a POSITA can "*determine*" whether the movement of an exercise bike is "smooth" and that Mr. Rawls can "*recognize*" a "smooth transition." (Pl. Br. 9.) But Mr. Rawls explained that a "smooth transition" is based on a person's own subjective perception, which is legally insufficient. (Rawls Decl. ¶ 143.) *See Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377-78 (Fed. Cir. 2017) (holding claim term indefinite if "subjective in the sense that [it] turn[s] on a person's tastes or opinion"). Under these circumstances, in the absence of objective guidance or an objective measure of smoothness, this Court has found the term "smooth" to be indefinite. *See, e.g.*, *Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*, No. 6:11-CV-011, 2012 WL 2872121, at *15 (E.D. Tex. July 12, 2012) (finding "smooth bumps" indefinite due to the lack of "any objective anchor to determine how smooth the bumps must be to facilitate such a function; or even how to measure the 'smoothness' of the bumps to reach the proper threshold of smoothness").

For the same reason, all of Mad Dogg's cited cases construing "smooth" are distinguishable because in each, "smooth" describes something tangible and measurable.[20] Mad Dogg's patent, however, offers no way to measure the purported smoothness of the transition. And, as Mr. Rawls explains, due to a multitude of mechanical factors, direct drive mechanisms actually can **prohibit**, not "facilitate," the smoothness of a transition. (Ex. H, 122:2-22, 136:24-137:16, 144:11-16, 147:3-25[21]; Rawls Decl. ¶¶ 146-49.)

If the Court finds "smooth transition" to be definite, then the claim term "a direct drive mechanism that couples a pedal assembly and flywheel and that facilitates a smooth transition between sitting and standing positions" should be given its plain and ordinary meaning: a bike that allows a rider to sit and stand. (Rawls Decl. ¶ 148.) Mad Dogg disputes this plain and ordinary meaning. When the parties exchanged preliminary constructions, Mad Dogg proposed a construction reading into the claims: "a fixed gear, non-freewheeling coupling between a pedal assembly and a high-inertia flywheel, which thereby facilitates a smooth transition between sitting and standing positions." (Ex. I, 1.) None of these requirements is found in the claim language or other intrinsic evidence. After learning that Peloton proposed to give this term its plain and ordinary meaning in the alternative, Mad Dogg reversed course and now proposes the term be given its plain and ordinary meaning. (D.I. 61 at 3.) But this is a dodge, in that Mad Dogg still intends to argue that the claim requires unclaimed features like a "high-inertia flywheel" (Pl. Br. 10), "inertia flywheel,"

---

[20] *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 450 (Fed. Cir. 1986) (analyzing "smooth and unsublimated" in light of the specification's discussion of physical "edges of the craters" and "markings provided on the lens surface"); *Advanced Aerospace Techs., Inc. v. United States*, 124 Fed. Cl. 282, 295 (Fed. Cl. 2015) (analyzing "smooth continuation" of the leading edge of a plane wing and the joining of a wing and hook, relying on a figure depicting this physical characteristic). In contrast, this Court has found the term "smooth" indefinite in the absence of objective guidance or way to measure smoothness. *See, e.g.*, *Advanced Display Techs.*, 2012 WL 2872121, at *15.

[21] Exemplifying why a POSITA does not view a direct drive mechanism as something that "facilitates a smooth transition," Mr. Rawls explained that if one were to use a bike with such a direct drive mechanism, "spinning fast, [while] sitting down and try to stand up. You will fall on your face" because "your feet won't stop, and you'll be totally out of control." A POSITA thus would not understand the scope of a "direct drive mechanism" that, as claimed, "***facilitates*** a smooth transition" between sitting and standing.

"45-pound flywheel" or some unspecified "geometry." (*Id.* at 11.) None of these things should be read into the claims. To the extent the Court does not find the term indefinite, it should clarify that the plain and ordinary meaning refers to any bike that allows a rider to sit and stand. (Rawls Decl. ¶¶ 146-49; *see, e.g.*, Ex. H 134:22-135:14, 146:5-11, 147:10-148:13.)

H. **"appropriate cadence" / "target cadence display revealing the appropriate cadence at which a rider should be pedaling" (claim 7 of the '240 patent; claim 4 of the '328 patent)**

| Peloton's Construction | Mad Dogg's Construction |
|---|---|
| Indefinite | Should be construed as part of "the target cadence display revealing the appropriate cadence at which a rider should be pedaling"; but if construed separately, plain and ordinary meaning but if construction is required: "a certain range of cadence at which the rider should be pedaling" |

The Court should find both the term "appropriate cadence" and the larger limitation in which it appears indefinite, because it fails to inform a POSITA, with reasonable certainty, about the scope of the alleged invention. (Rawls Decl. ¶¶ 150-56.) *Nautilus*, 572 U.S. at 901.

The claims in which the term appears (claims 7 of the '240 patent and claims 4 of the '328 patent) provide no context for what is an "appropriate" cadence, which is entirely subjective. At most, they use a different term, "target cadence display." (Ex. A, cl. 7.) But a POSITA would not understand "appropriate cadence" to refer to the separately claimed "target cadence." (Rawls. Decl. ¶ 151.) *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995). "Appropriate cadence" also never appears in the specification and is not discussed in the prosecution history. Absent guidance from the intrinsic record, a POSITA would understand only that different cadences are "appropriate" for different riders on different bikes, and what is "appropriate" for a rider can vary on the same bike depending on the rider's own weight, height, skill, goals, fitness, etc. (Rawls Decl. ¶¶ 151, 153.) Because what is "appropriate" is subjective and lacks a "standard for measuring the scope of the phrase," no plain and ordinary meaning can apply. *See*

29

*Interval Licensing*, 766 F.3d at 1370-71.

Mad Dogg's attempt to define "appropriate cadence" by anchoring the term to the "target cadence display" should be rejected. Mad Dogg argues that the display "provides a certain range of cadence—the 'appropriate cadence'—at which the rider should be pedaling." (Pl. Br. 29.) But the specification only discusses the "target cadence display" shown to a rider, not an "appropriate cadence" for a rider. (Ex. A, 6:8-20.) By conflating the partial term "target cadence" (truncated from "target cadence display") and "appropriate cadence" and paying no mind to the specification, Mad Dogg again runs counter to the guidance of *Phillips*.

Mad Dogg contends that "appropriate cadence" means "a certain range of cadence at which the rider should be pedaling displayed to a rider" (Pl. Br. 29), but this is unsupported and unhelpful. The phrases, "a ***certain range*** of cadence" and "***should*** be pedaling" are as vague and undefined as "appropriate" and so do not solve the term's indefiniteness. (Rawls Decl. ¶¶ 154-55.) Mad Dogg provides no supporting law or expert opinion to explain how a POSITA would interpret the term or know whether a cadence is appropriate or inappropriate ,and its attorneys' argument should be given no weight. *See Oyster Optics*, 2017 WL 6026729, at *30 (finding indefiniteness in part because of unrebutted expert opinion); *Luv N' Care*, 115 F. Supp. 3d at 832 (same).

In sum the phrase "appropriate cadence" and the longer limitations that include this phrase are entirely subjective and undefined by the intrinsic evidence. (Rawls Decl. ¶ 156.) As such, the Court should find both terms indefinite.

## V.    CONCLUSION

For the reasons explained above, Peloton respectfully requests that the Court issue an order adopting Peloton's proposed constructions of the disputed claim terms.

Dated: June 17, 2021

Respectfully Submitted

*/s/ Gabriel S. Gross*

Melissa R. Smith
TX State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***COUNSEL FOR DEFENDANT
PELOTON INTERACTIVE, INC.***

OF COUNSEL:
Steven N. Feldman
New York Bar No. 4775052
Benjamin Zachary Bistricer
New York Bar No. 5590922
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: steven.feldman@lw.com
Email: ben.bistricer@lw.com

Douglas E. Lumish
California Bar No. 183863
Gabriel S. Gross
California Bar No. 254672
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: douglas.lumish@lw.com
Email: gabe.gross@lw.com

Sarah M. Gragert
Ethan Lawrence Plail
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2384

Facsimile: (202) 637-2201
Email: sarah.gragert@lw.com
Email: ethan.plail@lw.com

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: kimberly.li@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 17, 2021.

*/s/ Gabriel S. Gross*
Gabriel S. Gross