# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MAD DOGG ATHLETICS, INC. | ) |
| | ) |
| Plaintiff, | ) Case No. 2:20-cv-00382-JRG |
| | ) |
| v. | ) |
| | ) |
| PELOTON INTERACTIVE, INC. | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

# PLAINTIFF MAD DOGG ATHLETICS, INC.'S
# REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................................................................... ii

I.     The Claim Preambles Are Limiting. ............................................................................... 1

II.    The "Frame" Term Should Be Given Its Plain and Ordinary Meaning. ......................... 1

III.   "Smooth Transition" Is Not Indefinite. ........................................................................... 2

IV.    "A Mechanism That Provides Resistance" Should Be Given Its Plain And
       Ordinary Meaning. .......................................................................................................... 4

V.     The "Computer" Terms Should Be Given Their Plain and Ordinary Meaning. ............. 6

VI.    The "Rider Is Provided With Instructions" Terms Should Not Be Limited. .................. 8

VII.   "A Mechanism That Measures the Rider's Cadence" Should Be Given Its Plain
       and Ordinary Meaning. ................................................................................................... 9

VIII.  "Appropriate Cadence" Is Not Indefinite. ..................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008)......................................................................................................7

*Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*,
   55 F.3d 615 (Fed. Cir. 1995)..........................................................................................................1

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002)........................................................................................................1

*Estech Sys., Inc. v. Target Corp.*,
   No. 2:20-cv-00123-JRG-RSP, 2021 WL 1090747 (E.D. Tex. Mar. 31, 2021) ...............5, 7, 10

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
   796 F.3d 1312 (Fed. Cir. 2015)......................................................................................................4

*Free Stream Media Corp. v. Alphonso Inc.*,
   No. 2:15-CV-1725-RWS, 2017 WL 1165578 (E.D Tex. Mar. 29, 2017) .................................6

*GREE, Inc. v. Supercell Oy*,
   No. 2:19-cv-00413-JRG-RSP, 2020 WL 6559435 (E.D. Tex. Nov. 6, 2020).........................7

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005)......................................................................................................2

*Nautilus Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014).......................................................................................................................3

*Personalized Media Commc'ns., L.L.C. v. ITC*,
   161 F.3d 696 (Fed. Cir. 1998)........................................................................................................5

*Razor USA LLC v. DGL Grp., Ltd.*,
   No. 19-12939-JMV-MF, 2021 WL 651257 (D.N.J. Feb. 19, 2021)..........................................6

*Rowe v. Dror*,
   112 F.3d 473 (Fed. Cir. 1997)........................................................................................................1

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
   948 F.3d 1342 (Fed. Cir. 2020)..................................................................................................4, 7

*Sonix Tech. Co., Ltd. v. Publ'ns. Int'l, Ltd.*,
   844 F.3d 1370 (Fed. Cir. 2017)......................................................................................................2

*Thorner v. Sony Comput. Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)..................................................................................................8

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)..................................................................................................6

*Zak v. Facebook, Inc.*,
    No. 4:15-cv-13437, 2020 WL 589433 (E.D. Mich. Feb. 6, 2020) ............................................6

*Zeroclick, LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018)..................................................................................................6

Peloton relies upon nonexistent concepts like "definition by implication," seeks means-plus-function treatment where no claim uses the word "means," and contends that well-understood terms are not "readily ascertainable," all in complete defiance of the straightforward claim language in the Asserted Patents. Even where the parties seemingly agree on adopting the plain and ordinary meaning for certain terms, Peloton fabricates disputes where none exist. As explained below, Mad Dogg's constructions follow well-established canons and are supported by intrinsic evidence, including the claim language and specification.

## I. The Claim Preambles Are Limiting.

Peloton is wrong to suggest that the body of the claim describes a "structurally complete invention." ECF No. 65 at 4. The claim body recites some, but not all, structural elements of "an exercise bike." Moreover, Peloton completely ignores that the preamble provides antecedent basis for the term "the stationary bike" that appears in the body of each independent claim. *Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). Peloton is also wrong to suggest that the preamble only "'state[s] a purpose or intended use,'" ECF No. 65 at 4; rather, the terms "stationary bike" and "exercise bike" recite "essential structure." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)). Peloton's alternative construction of the preamble—"a bike used for exercise"—should not be considered because Peloton did not include it in the Joint Claim Construction Statement ("JCCS"), ECF No. 61 at 2, and cannot be correct in any event because it would include road bikes even though the term "the ***stationary*** bike" appears in each independent claim. ECF No. 64 Ex. A at 7:61, 8:66; *id*. Ex. B.

## II. The "Frame" Term Should Be Given Its Plain and Ordinary Meaning.

The parties agree that this claim term should be construed in accordance with its plain and ordinary meaning, but Peloton contends that "the parties differ sharply on what that plain meaning

is." ECF No. 65 at 10. That is simply not true. Mad Dogg does not seek to "import some specific criteria" that, according to Peloton, would somehow render the term indefinite, ECF No. 64 at 6, but Peloton refuses to accept that assurance. Instead, Peloton accuses Mad Dogg of arguing that this claim term should be construed to refer to an "open geometry," even though Mad Dogg did not use those words in its analysis of this claim term and does not seek any such construction.

A frame "configured to allow a rider to ride in a sitting and standing position" is clear and simple for a jury to understand. *See* ECF No. 64 at 6. To **illustrate** (not define) this straightforward claim language, Mad Dogg provided a comparison between the frame of a stationary exercise bike embodied in Figure 1 of the Asserted Patents and the frame of a recumbent-style stationary exercise bike in the prior art. *Id*. There is no factual disagreement with that comparison—which is not an attempt to "import some specific criteria" into the claims. *See* ECF No. 65 at 10-12.

Peloton now appears to seek a construction of this claim term to mean "a bike that allows a rider to sit or stand while riding." *Id*. at 10. Peloton has improperly rewritten the claim term to delete the word "frame"—a structural feature of the claimed exercise bike—and to remove that it is the "frame" which is "configured" so as "to allow a rider to ride in a sitting and standing position." Peloton did not include this proposed construction in the JCCS. ECF No. 61 at 3.

### III. "Smooth Transition" Is Not Indefinite.

Peloton argues that the claims are indefinite because they do not explain "what a 'smooth transition' is" and the incorporated by reference "patents do not address the entire limitation." ECF No. 65 at 25-26. But an express definition of "smooth transition" is not required because "'a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.'" *Sonix Tech. Co., Ltd. v. Publ'ns. Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005)). Here, the specification plainly describes (1) the invention as having "flywheel **20** which is coupled

to pedal assembly **18** in a direct drive . . . configuration" as shown in Figure 1 and (2) the resulting benefit of this configuration of facilitating "alternating standing and sitting in a smooth manner." ECF No. 64 Ex. A at 3:11-13, 7:15-21. These passages, along with many others, *see* ECF No. 64 at 10-11, are more than sufficient to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

Peloton's attempt to sow confusion between the claimed "direct drive mechanism that couples a pedal assembly and a flywheel" and the "inertia wheel" disclosed in the '424 patent, ECF No. 65 at 26, is disingenuous. The '424 patent uses "inertia wheel," "inertia flywheel" and "high-inertia flywheel" interchangeably (*e.g.*, "an inertia flywheel" provides antecedent basis for "the inertia wheel") and describes the "smooth, non-jerky pedaling rhythm" as a benefit "derived from **the direct drive interaction** between the inertia flywheel and the crank arms to which the rider's feet are attached." ECF No. 64 Ex. K at 1:14-31.

Peloton is also wrong to suggest that Hernandez does not support Mad Dogg's position. First, Hernandez's description of a "smooth ride" while "alternately sitting and standing" shows that a smooth transition was an understood concept. ECF No. 64 Ex. L at 1:27-44. Second, Peloton is mistaken that Mad Dogg "told the Patent Office that Hernandez did ***not*** disclose the claimed 'direct drive mechanism.'" *Cf.* ECF No. 65 at 26 (emphasis in original).[1] Peloton's cite from the prosecution of non-asserted U.S. Patent No. 8,944,968 does not address the ***claimed*** direct drive mechanism and is irrelevant. *See* ECF No. 64 Ex. A at 8:57-59; ECF No. 65 Ex. K at 9.[2]

---

[1] All emphasis in quotes has been added unless otherwise indicated.

[2] Mad Dogg actually stated that the amended claim at issue recites "how the exercise bike contains a direct drive mechanism which facilitates the rider smoothly adopting alternating sitting and standing positions, ***and that instructions are provided to the rider regarding cadence, resistance and riding position so that the rider safely rides the bike***. Applicant respectfully submits ***that Hernandez does not show all the foregoing***. *Furthermore, Hernandez does not appear to disclose a computer that is configured to provide the recited instructions to safely lead the rider*

- 3 -

Peloton's complaint that the Asserted Patents provide "no way to measure" the claimed "smooth transition," ECF No. 65 at 27-28, misses the mark. "If [] an understanding of how to measure the claimed [feature] *was within the scope of knowledge possessed by one of ordinary skill in the art*, there is no requirement for the specification to identify a particular measurement technique." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015). Mr. Rawls's testimony confirms that a POSITA understands how to determine whether a transition is smooth. ECF No. 64 at 9 (citing *id*. Ex. I at 146:23-147:6, 148:21-25). Mr. Rawls's ability to imagine a scenario where there might not be a smooth transition further confirms the well-understood meaning of this term by a POSITA. *See id*. Ex. I at 147:3-148:6. Peloton cannot avoid this testimony by pointing to Mr. Rawls's *declaration* stating that people's subjective perceptions may vary. ECF No. 65 at 27. What matters is not *any given person's* subjective perception but whether *a POSITA* can determine, based on his or her own knowledge, whether the "smooth transition" element is met. Mr. Rawls clearly testified that he could.[3]

### IV.  "A Mechanism That Provides Resistance" Should Be Given Its Plain And Ordinary Meaning.

Peloton falsely contends that this claim "term is written in means-plus-function format." ECF No. 65 at 18. This claim term uses neither the word "means" nor the word "for." ECF No. 64 Ex. A at 7:58-60. As such, "there is a rebuttable presumption that section 112, paragraph 6, does not apply to that limitation." *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1353

---

*through a ride*." ECF No. 65 Ex. K at 12. Mad Dogg distinguished Hernandez based on the emphasized language.

[3] Peloton asks this Court to construe this claim term to have *the exact same meaning* as the "frame" claim term discussed above—"a bike that allows a rider to sit and stand." As with the "frame" claim term, Peloton's proposed construction reads out of the claim language structural features of the claimed exercise bike, namely "a direct drive mechanism that couples a pedal assembly and flywheel." Peloton also did not include this construction in the JCCS. *See* ECF No. 61 at 3.

(Fed. Cir. 2020). Peloton purports to rebut that presumption on the ground that "[n]othing in the claim calls out a specific structure." *See* ECF No. 65 at 18. But Peloton's demanding standard is contrary to established law. *E.g.*, *Personalized Media Commc'ns., L.L.C. v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("Even though the term 'detector' does not specifically evoke a particular structure, it does convey to one knowledgeable in the art a variety of structures known as 'detectors.' We therefore conclude that the term 'detector' is a sufficiently definite structural term to preclude the application of § 112, ¶ 6").

The same is true here. The claimed "mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary pedaling resistance" connotes a class of known structures in the exercise bike industry. *See* ECF No. 64 Ex. H ¶ 144 (identifying "brake pads or straps"); *id*. Ex. I at 154:10-155:8 (identifying "fan-type brakes," "rollers that you could sort of squeeze against the tire," "eddy current brakes" and "permanent magnet brakes"). Mr. Rawls also admitted as much at his deposition. *id*. Ex. I at 149:11-150:8, 153:5-20, 154:10-155:8.

Peloton complains that these known structures connoted by the term are of "limitless breadth." *See* ECF No. 64 at 20. That is untrue, as Mr. Rawls testified at his deposition: He repeatedly described these known structures as a "variety," ECF No. 64 Ex. I at 152:12-155:8, just like the "variety of structures known as 'detectors.'" *See Personalized Media Commc'ns.*, 161 F.3d at 705. Peloton also ignores that the claim language of "manually adjustable by the rider to vary the pedaling resistance" sets forth "significant structural context" that meaningfully limits the variety of structures connoted by the claim language. *Estech Sys., Inc. v. Target Corp.*, No. 2:20-cv-00123-JRG-RSP, 2021 WL 1090747, at *24 (E.D. Tex. Mar. 31, 2021) ("And the claims provide significant structural context through recitation of the objectives and operation of the [term] within the claims."). Like the many cases Mad Dogg previously cited, ECF No. 64 at 13-15,

a POSITA would understand the claim language to connote known structures and thus Peloton cannot overcome the presumption that § 112, ¶ 6 does not apply.

### V.     The "Computer" Terms Should Be Given Their Plain and Ordinary Meaning.

None of the "computer" claim limitations uses the words "means" or "for" and are thus subject to the rebuttable presumption that § 112, ¶ 6 does not apply. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Peloton makes absolutely no effort to overcome this presumption in the single paragraph of its brief addressing it. ECF No. 65 at 13-14. Peloton's failure is fatal to its position because "the mere fact that the disputed limitations incorporate functional language does not automatically convert the words into means for performing such functions." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018).[4]

Peloton also fails to rebut Mad Dogg's argument that the term "computer" connotes sufficiently definite structure as numerous courts have found with respect to the same or similar terms since *Williamson*. *See*, *e.g.*, *Zak v. Facebook, Inc.*, No. 4:15-cv-13437, 2020 WL 589433, at *8 (E.D. Mich. Feb. 6, 2020) ("Examining the claim language, the Court finds that the term 'computer' by itself connotes some degree of structure . . . ."); *Free Stream Media Corp. v. Alphonso Inc.*, No. 2:15-CV-1725-RWS, 2017 WL 1165578, at *20 (E.D Tex. Mar. 29, 2017) ("[T]he claims themselves connote sufficiently definite structure by describing how the 'relevancy-matching server' operates within the claimed invention to achieve its objectives."); *Razor USA LLC v. DGL Grp., Ltd.*, No. 19-12939-JMV-MF, 2021 WL 651257, at *13 (D.N.J. Feb. 19, 2021) ("Words such as computer . . . will not be considered nonce words and will not rebut the presumption that § 112(f) does not apply if a person of ordinary skill in the art can

---

[4] Contrary to Peloton's suggestion, *see* ECF No. 65 at 15 n.13, the Court is free to consider the incorporated patents' disclosures of known structures because, unlike Peloton's cite, none of the claims use "means for" and the presumption against § 112, ¶ 6 has not been overcome.

'reasonably discern' from the claim language that the words (computer . . .) are a specific reference to conventional items 'existing in the prior art at the time of the' invention.").

The claims themselves provide evidence of the structural nature of the "computer" terms and confirm that Peloton fails to overcome the presumption that § 112, ¶ 6 does not apply. *See Samsung Elecs.*, 948 F.3d at 1354 ("[T]he term 'digital processing unit' clearly serves as a stand-in for a 'general purpose computer' or a 'central processing unit,' each of which would be understood as a reference to structure in this case, not simply any device that can perform a particular function."). In *Samsung*, the court stated that "claim 1 requires that the 'digital processing unit' be operably connected to a 'data entry device' such as a keyboard, which in turn is connected to other components. That portion of claim 1 constitutes further evidence of the structural nature of the term 'digital processing unit,' as used in the claim." *Id*. Here, the claim language similarly confirms the structural nature of the computer terms by reciting that the computer "is coupled to the stationary bike" and a display "is coupled to the computer." ECF No. 64 Ex. A at 7:61-8:1; *see also Estech Sys.*, 2021 WL 1090747, at *24 ("claim recitation of how functionally defined components interact to achieve a claim-recited objective provides sufficient indicia of structure to maintain the presumption against § 112, ¶ 6."); *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00413-JRG-RSP, 2020 WL 6559435, at *22 (E.D. Tex. Nov. 6, 2020) (concluding that the context provided by the claim language "indicates the structural nature of the claimed rendition processing module and is sufficient to sustain the presumption against § 112, ¶ 6."). Because it fails to overcome this presumption, Peloton's extensive reliance on *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008), and related decisions, for the proposition that a computer-implemented means-plus-function claim must be supported in the specification by disclosure of a special-purpose computer and an associated algorithm to

perform the recited function, is wholly irrelevant.

## VI. The "Rider Is Provided With Instructions" Terms Should Not Be Limited.

Peloton contends that the claims and specification provide a "definition by implication," ECF No. 65 at 8, even though it does not dispute that the specification fails to provide an express definition or a disavowal of claim scope for departing from the plain and ordinary meaning. But the law is clear that an "'implied' redefinition must be so clear that it equates to an explicit one. In other words, a person of ordinary skill in the art would have to read the specification and conclude that the applicant has clearly disavowed claim scope or has acted as its own lexicographer." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012). Peloton does not even purport to meet this exacting standard and thus its construction fails. *See id*. at 1366-67.

None of the various snippets from the intrinsic record identified by Peloton supports importing a negative limitation into the claims. For example, the title "Computer Aided Guidance" does not exclude guidance from a human instructor provided over the computer. The sentence from the Abstract that the "invention allows a rider to obtain benefits of a group, instructor-led class though the rider's schedule does not permit the rider to participate in the class" also does not exclude guidance from a human instructor provided over the computer. Indeed, it conveys just the opposite, given that the rider "obtain[s] the benefits of a group, instructor-led class." So does the claim language, which describes the claimed exercise bike with a display "that displays an exercise routine from the collection of exercise routines … thereby simulating an instructor-led exercise class." ECF No. 64 Ex. A at 8:1-8. The exercise routines that are displayed to the rider to simulate an instructor-led class would logically include exercise routines demonstrated by an instructor.

Peloton's citations from the Background section fare no better and do not exclude any form of instructions to the rider. Nothing prevents the "display that provides instruction to lead a rider" in the Summary from displaying videos of an instructor providing instructions. Peloton's attempt

to recast the Detailed Description by cobbling together snippets from specific embodiments spread around six different columns of the specification, *see* ECF No. 65 at 7-8—none of which limits the scope of the invention claimed—does not support importing the proposed negative limitation.

Peloton concedes that the specification discloses instructions contained on video but claims that it does so only to "distinguish and contrast the invention" with the prior art. *See id*. at 9. This is not true because the invention includes the use of videos containing riding instructions. The concern addressed by the Asserted Patents is that "such videos require a separate VCR and monitor to play the video," ECF No. 64 Ex. A at 2:23-24, and the Asserted Patents solve this issue by providing a display with an "opening" to "receive a CD-ROM, DVD, VHS tape or other storage medium that contains or receives riding instructions." *Id*. at 4:66-5:3, Fig. 3. Thus, the invention, like the prior art, includes using "***videos of an instructor providing instruction*** for an indoor cycling bike class." *Id*. at 2:20-21. Mr. Rawls's claim that a DVD and VHS tape are "just data" cannot override the invention's use of videos. *See* ECF No. 64 Ex. I at 108:22-109:22.

### VII. "A Mechanism That Measures the Rider's Cadence" Should Be Given Its Plain and Ordinary Meaning.

Peloton again contends that the presumption against § 112, ¶ 6 is purportedly overcome because a "POSITA would understand that the claim uses 'mechanism' as a generic, nonce term." *See* ECF No. 65 at 23. But the claim language is not generic; it immediately connotes a class of structures suitable for measuring cadence on a stationary exercise bike, as confirmed by Peloton's expert. *See* ECF No. 64 Ex. H ¶ 93 (identifying "magnets, sensors, or other electronics attached to a bicycle pedal, crank arm, chain stay, or different parts of a wheel"). Peloton argues that these "known ways to measure cadence" demonstrate an alleged "lack of structure," ECF No. 65 at 23, but, to the contrary, Peloton's expert confirmed that selecting a known mechanism that measures cadence would have been routine to a POSITA by 2005. ECF No. 64 Ex. I at 94:3-11 ("Q·And it

would have been within the knowledge of a POSITA to select one of these sort of known mechanisms for use in a particular exercise bike, right? A Generally, yes.").

Peloton is mistaken regarding the guidance provided by the claim language concerning the "mechanism that measures the rider's cadence." *Cf.* ECF No. 65 at 23-24. Here, the claim describes the mechanism that measures a rider's cadence and the computer which, among other things, is configured "to calculate power exerted by the rider based on the pedaling resistance and the rider's cadence." ECF No. 64 Ex. A at 8:65-9:14. This significant structural context recites the objectives and purpose for measuring a rider's cadence. *See Estech Sys.*, 2021 WL 1090747, at *24.

## VIII. "Appropriate Cadence" Is Not Indefinite.

Peloton's contention that the term "appropriate cadence" is "entirely subjective" is flatly contradicted by the claims. Claim 7 makes express that the "target cadence display reveal[s] the appropriate cadence at which the rider should be pedaling." ECF No. 64 Ex. A at 8:33-35. The "appropriate cadence" is presented to the rider on part of the display and is not subjective at all.

Peloton is misguided in arguing that a "POSITA would not understand 'appropriate cadence' to refer to the separately claimed 'target cadence.'" *Cf.* ECF No. 65 at 2. "Target cadence" is not a term in the claim, and the term "target cadence display" is part of the display, not a cadence. *See* ECF No. 64 Ex. A at 6:1, Fig. 2B (target cadence display 180). A POSITA would understand that the "appropriate cadence" is revealed to the rider on the target cadence display.

Peloton's complaint that the specification does not explain the term "appropriate cadence" is without merit. The claim language explains that the "appropriate cadence" is revealed to the rider on the "target cadence display," which a POSITA would understand corresponds to the "desired range being displayed on a target cadence display 180 located in the display screen 106." ECF No. 64 Ex. A at 6:10-12. Peloton's disregard of the intrinsic record and repeated citation to expert testimony is futile. *Cf.* ECF No. 65 at 29-30 (citing Rawls Decl.).

Dated: June 24, 2021                    Respectfully submitted,

/s/   *Elizabeth L. DeRieux*
Elizabeth L. DeRieux
Texas State Bar No. 05770585
Capshaw DeRieux, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
ederieux@capshawlaw.com
(903) 845-5770

David I. Gindler (admitted *pro hac vice*)
Alex G. Romain (admitted *pro hac vice*)
J. Samuel Payne (admitted *pro hac vice*)
David C. Jonas (admitted *pro hac vice*)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019
(424) 386-4000

Nathaniel T. Browand (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001-2163
(212) 530-5096

Javier J. Ramos (admitted *pro hac vice*)
MILBANK LLP
1850 K Street, NW
Suite 1100
Washington, DC 20006
(202) 835-7500

Paul L. Robinson (admitted *pro hac vice*)
Law Office of Paul L. Robinson, Esq. LLC
500 Paterson Plank Road
Union City, NJ 07087
(954) 292-0945

*Attorneys for Plaintiff*
*Mad Dogg Athletics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 24, 2021.

/s/   *Elizabeth L. DeRieux*
Elizabeth L. DeRieux