# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MAD DOGG ATHLETICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PELOTON INTERACTIVE, INC., <br><br> Defendant. | C.A. No. 2:20-cv-00382-JRG <br><br><br> **JURY TRIAL DEMANDED** |

# DEFENDANT'S OPPOSITION TO
# MAD DOGG'S MOTION TO STAY PROCEEDINGS

## I. INTRODUCTION

Recent discovery has established unequivocally that Mad Dogg's CEO, John Baudhuin, believed ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. This let him depress Mad Dogg's value, short-change his creditors, and personally buy Mad Dogg out of bankruptcy for what he believed to be pennies on the dollar.

These acts alone mandate dismissal of this Action. Under settled Fifth Circuit law, debtors are barred by judicial estoppel from asserting any claims post-bankruptcy that they fail to disclose to the bankruptcy court during the bankruptcy, much less claims that they actively concealed:

> The rationale for ... decisions invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. **The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.**[1]

*In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999); *see also Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) ("[J]udicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system.").

Mr. Baudhuin and Mad Dogg then continued their deception in this Action, giving ███████████████████████████████████████████████████████████████████████. For these reasons, among others, this Action should be dismissed, not stayed, and Peloton will bring a dispositive motion to end this case imminently. Mad Dogg's attempt to delay that outcome with its *Opposed Motion To Stay Proceedings* (ECF No. 105) (the "Motion to Stay") should be denied.

---

[1] All emphases added and internal citations and quotations omitted unless otherwise noted.

1

## II.     BACKGROUND[2]

### A.     Mad Dogg filed for bankruptcy and concealed its potential patent infringement claims against Peloton.

Mad Dogg commenced its chapter 11 proceeding in the United States Bankruptcy Court for the Central District of California on July 26, 2019; the Bankruptcy Court confirmed its plan of reorganization (the "Plan") on June 29, 2020; and the bankruptcy case finally closed on December 23, 2020.

Like all debtors, Mad Dogg was required to disclose to the Bankruptcy Court and its creditors all of its assets, including specifically any potential litigation claims against third parties. On August 26, 2019, Mr. Baudhuin signed sworn disclosures attesting that Mad Dogg had no possible litigation claims against Peloton or anyone else that might bring money into the estate. *In re: Mad Dogg Athletics, Inc.*, 2:19-bk-18730-WB (Bankr. C.D. Cal.), ECF No. 96. On April 10, 2020, Mr. Baudhuin again signed sworn disclosures attesting that Mad Dogg had no such claims. *Id.*, ECF No. 351. Moreover, Mad Dogg's valuation expert rested his opinion on representations from Mad Dogg's own management (presumably Mr. Baudhuin) telling the Bankruptcy Court that Mad Dogg's patents "are more for *defensive* purposes," and that "[a]ctively enforcing the patents, should the Company choose to do so, would be expensive and *probably not successful*." *See* Exhibit B (excerpts of Mad Dogg's bankruptcy valuation expert report).

The confirmed Plan provided a 51% recovery for Mad Dogg's general unsecured creditors and made Mr. Baudhuin the sole owner of 100% of Mad Dogg's equity, in exchange for a capital infusion of $500,000 cash and the conversion of his $500,000 court-approved secured DIP financing to equity.[3] ECF 104-1 at 6. By diminishing the perceived value of the business and its

---

[2] A non-exhaustive chronology is attached hereto as Exhibit A to facilitate the Court's review.

[3] A DIP (debtor-in-possession) financing is a loan provided to a debtor during the bankruptcy.

2

intellectual property, and representing that Mad Dogg had no potential claims against Peloton, Mr. Baudhuin was able to retain complete control of Mad Dogg and erase company debt.

    **B.**    <u>**At his deposition in this Action, Mr. Baudhuin**</u> .

On December 14, 2020, Mad Dogg initiated this Action against Peloton, alleging infringement of two patents issued by the PTO on July 4, 2017, and November 27, 2018, referred to in the Complaint, respectively, as the "'240 Patent" and the "'328 Patent." ECF No. 1.

    **1.**    **Mr. Baudhuin testified that** .

Peloton deposed Mr. Baudhuin on July 16, and 17, 2021. Peloton's counsel repeatedly pressed Mr. Baudhuin regarding █████:

    Q:  

    A:  █████.

Exhibit C (J. Baudhuin Dep. Tr.) at 360:8-19. Mr. Baudhuin further testified that  *See id*. at 361:9-10, 362:18-20.

Indeed, over the course of his deposition, Mr. Baudhuin repeatedly █████ *See, e.g., id.* at 144:17-145:11; 207:13-23; 350:9-24; 352:15-353:5; 353:13-354:10; 355:3-356:2; 360:9-361:13; 362:7-362:24; 373:22-374:4; 386:12-18.

### 2. Mr. Baudhuin's testimony was ███████████.

As detailed below, documents and information produced in discovery, including ████████████████████████████████████████, suggested that his testimony █████████ ████████████████████████████████████████████████. After his deposition, Peloton sought discovery from multiple sources, including Mad Dogg and third parties, to ascertain precisely when Mr. Baudhuin became aware of Mad Dogg's potential patent infringement claims against Peloton. To impede this investigation, as detailed in Peloton's *Motion to Compel Regarding Mad Dogg's Concealment of Claims from the Bankruptcy Court (Motion No. 1)*, ECF No. 97, Mad Dogg asserted many specious privilege objections and withheld documents. The truth emerged anyway. As just a few examples:

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, Exhibits D & E.

- ████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, Exhibits F & G.

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.*

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Exhibit H.

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Exhibit I.

4

- ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████ *See* Exhibit J.

- ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████ *See* Exhibit K.

- ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████ ████ ████ ████ ████ ████ ████ ████ ████ ████ ████
██████████████████████████████ Exhibit L (Aug. 1, 2021 Declaration of J. Baudhuin) ¶ 7.

- ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████ *Id.* ¶ 8.

3. **Mr. Baudhuin** ████████████████████████████.

Finally, on August 1, 2021—the night before the discovery cutoff and Peloton's motion to compel deadline—Mad Dogg sent Peloton ████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Exhibit L.

████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶¶ 6-7. ████████

████████ ████████████████████████████████

████████████████████ *Id.* ¶ 7.

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. To be clear, Mr. Baudhuin ████████████████ simply to unburden himself; he had no other choice.  Mad Dogg knew that the next day Peloton

5

would move to compel withheld documents and testimony that ████████████████ ████████████████████████, and knew that Peloton would seek judgment based on judicial estoppel in light of Mad Dogg's fraudulent representations to the Bankruptcy Court, because Peloton's counsel had told Mad Dogg's counsel as much.

### C. Mad Dogg confesses to the Bankruptcy Court and seeks to reopen the bankruptcy.

On August 13, 2021, Mad Dogg filed a motion seeking to reopen the bankruptcy case "for the limited purposes of amending its bankruptcy schedules and statement of financial affairs as necessary to list the Infringement Claims" and to have "a proper independent fiduciary representative acting for the creditors appointed to administer these assets and use any net litigation proceeds generated to pay creditor claims." ECF No. 104-1 at 4-5. Mad Dogg admitted that its patent infringement claims against Peloton "arose prior to commencement of th[e] bankruptcy case." *Id.* at 4. On August 18, 2021, Mad Dogg moved to appoint an independent fiduciary to control and administer the claims at issue in this Action.

### D. The Court-ordered schedule in this Action.

This case is in its latest stages. Fact discovery closed on August 2. The parties are now concluding expert disclosures and discovery, with expert rebuttal reports due on August 23 and expert depositions by September 2. The dispositive and *Daubert* motions deadline is September 7. The pretrial conference is scheduled for November 8, and jury selection is scheduled for December 13, less than four months from now.

## III. MAD DOGG'S REQUEST TO STAY THIS ACTION SHOULD BE DENIED

This Court considers the following three factors when evaluating whether to stay an action pending the resolution of separate proceedings: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the

issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). All three *Soverain* factors weigh against granting a stay here.[4]

### A. Peloton would be severely prejudiced by a stay.

A stay here would severely prejudice Peloton for two independent reasons. First, Mad Dogg's claims are on the verge of being dismissed on judicial estoppel grounds. Further delay would prejudice Peloton's right to seek dismissal and end this case promptly, after nine months of hard-fought and costly litigation. Peloton has been forced to conduct a lengthy, difficult, and often-obstructed investigation just to expose Mr. Baudhuin and Mad Dogg's deceit and inconsistent statements to two federal courts, and would be severely prejudiced if the Court were to allow Mad Dogg to press "pause" on the eve of the Court-ordered dispositive motion deadline. Second, a stay would confer on Mad Dogg, or a litigation trustee, an unfair tactical advantage— valuable months to devise a scheme to attempt for Mad Dogg or Mr. Baudhuin to retain the claims, and to continue building their rebuttal expert opinions and trial plans in this Action, while Peloton has prepared to move forward on the Court-ordered schedule.

#### 1. This Action should be dismissed now because Mad Dogg is barred by judicial estoppel from pursuing its claims.

The law is clear; in a bankruptcy case, "[*a*]*ny claim with potential must be disclosed*, even if it is 'contingent, dependent, or conditional.'" *In re Coastal Plains*, 179 F.3d at 208 (emphasis in original). "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Id*.

---

[4] While Mad Dogg cites *Soverain* as a case where the court "grant[ed] stay pending reexamination of patents-in-suit by PTO" (*see* Motion to Stay at 5), the *Soverain* court actually *denied* the stay because, like here, the action was in the late stages. *See Soverain*, 356 F. Supp. at 663.

7

Indeed, it is a felony for a debtor to conceal assets, including possible litigation claims, from a bankruptcy court. *See* 18 U.S.C. § 152 (prohibiting concealment of assets); 18 U.S.C. § 157 (prohibiting schemes to defraud in bankruptcy); Collier on Bankruptcy ¶ 521.06[b] (16th ed. 2021) ("The intentional and fraudulent omission of property from the sworn schedules is an offense punishable under the Criminal Code."); 11 U.S.C. § 521(a)(1)(B) (requiring disclosure of assets).

Mad Dogg has now admitted, as it should have long ago, that Mr. Baudhuin was aware of these claims and failed to disclose them to the Bankruptcy Court. *See* ECF No. 104-1 at 8-9. Under these circumstances, courts in this Circuit routinely bar plaintiffs from pursuing claims they failed to disclose: "The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *In re Coastal Plains*, 179 F.3d at 208; *see also, e.g., In re Superior Crewboats, Inc.*, 374 F.3d 330, 334-36 (5th Cir. 2004) (holding district court abused its discretion by rejecting judicial estoppel where plaintiff-debtor failed to disclose $2.5 million personal injury claim in its bankruptcy and subsequently prosecuted that claim); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (affirming dismissal of action on judicial estoppel grounds where plaintiff-debtor knew about, but failed to disclose, litigation claims during bankruptcy); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (affirming dismissal of FCA claims under judicial estoppel doctrine where plaintiff-debtor failed to disclose those claims); *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (affirming dismissal of claims on judicial estoppel grounds where claims were pending during the bankruptcy).[5]

---

[5] Applying judicial estoppel to bar claims under these circumstances is not unique to this Circuit: "All six appellate courts that have considered this question hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (collecting cases from the First, Third, Fifth, Eighth, Ninth, and Eleventh Circuits).

Moreover, even if a litigation trustee were appointed, it would not change the fact that this Action should be dismissed now. As the Fifth Circuit recognized in *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566 (5th Cir. 2015), district courts have the authority to dismiss a judicially-estopped action without prejudice to the rights of a trustee to later pursue a separate action pursuing those same claims. *Id*. at 575 (dismissing action and concluding that "our precedent clearly establishes that the district court did not abuse its discretion when it dismissed the Allens' claims based on judicial estoppel and provided a trustee with the opportunity to 'pursue for the benefit of the creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy.'"). That is precisely what should happen here.

Against this backdrop, it is no surprise that Mad Dogg wants to stay this Action, presumably to afford it time to find some way to use the Bankruptcy Court to salvage its claims for Mad Dogg's and John Baudhuin's benefit. Notably, Peloton offered to *agree* to a stay if Mad Dogg would stipulate that it is barred from pursuing its claims for its own benefit, but Mad Dogg refused, instead filing its Motion to Stay, in which it had the audacity to suggest that these claims may still be pursued for *Mad Dogg's* benefit. *See* Motion to Stay at 8.

The gamesmanship should come to an end now. The Court should move this case forward, rather than staying it, so that Peloton can exercise its right to seek dismissal of this Action promptly, without waiting for Mad Dogg or a trustee to try to pause and resume the litigation, with potentially a new plaintiff and an entirely new strategy.

### 2. A stay would put Peloton at an unfair tactical disadvantage.

Mad Dogg had 2019 and 2020 to plan for, analyze, strategize, and prepare its case against Peloton; Peloton did not. Peloton has worked tirelessly to adhere to the Court-ordered schedule and is prepared to move forward and meet the imminent deadlines in this Action, including the August 23 deadline for rebuttal expert reports, the September 7 deadline for dispositive and

*Daubert* motions, and the December 13 date for jury selection. Granting a stay would give Mad Dogg an unfair tactical advantage.

As an example, after evading for months in fact discovery its obligations to state its contentions about whether the prior art discloses particular claim limitations (critical evidence pertaining to the validity or invalidity of the patents-in-suit), Mad Dogg finally has to reveal and explain its true positions on this and other topics in a rebuttal expert report on August 23, and can delay no further. Mad Dogg should not be given two additional months to develop validity positions with its experts, when Peloton was forced to, and did, prepare its invalidity case in line with the Court-ordered schedule. To give Mad Dogg extra time to prepare expert reports, prepare for expert depositions, and try to devise ways to pursue its claims, when its entire lawsuit should be thrown out on judicial estoppel grounds, would confer an unfair tactical advantage and reward Mad Dogg's and Mr. Baudhuin's unlawful behavior.

### B. A stay would not simplify the case.

Mad Dogg contends that the simplification factor cuts in favor of staying the action because "the new developments in the bankruptcy court introduce uncertainty." Motion to Stay at 9. Not so. First, the most natural way to simplify this case is to let it proceed as scheduled so that Peloton can quickly bring dispositive motions that will end the case, which are due on September 7. It is not as though Mad Dogg is requesting a stay to narrow or simplify issues, drop any patents or claims, or eliminate parties.

Second, even if a litigation trustee were appointed during a stay, this would only complicate, not simplify, the case. In that event, Peloton would likely need to oppose the substitution or joining of the litigation trustee at this late stage of the proceedings, due both to the

immense prejudice that Peloton would incur[6] and the fact that Mad Dogg did not make an "honest and understandable mistake," as required to warrant the joining, ratification, or substitution of a trustee as the real party in interest. *See, e.g.*, *Feist v. Consol. Freightways Corp.*, 100 F. Supp. 2d 273, 280 (E.D. Pa. 1999), aff'd, 216 F.3d 1075 (3d Cir. 2000) (denying plaintiff's motion to substitute trustee as the real party in interest and granting defendant's motion for judgment on the pleadings because plaintiff could not establish it was an "honest mistake" to file in his own name where plaintiff failed to disclose claims to the bankruptcy court and sought counsel immediately after close of bankruptcy case to pursue those claims); *In re Lymon*, No. 18-13128, 2020 WL 7388073, at *9 (E.D. La. Jan. 15, 2020) (judicially estopping plaintiff-debtor and rejecting plaintiff-debtor's request to permit trustee to pursue action for benefit of estate and its creditors); *Degamo v. Bank of Am., N.A.*, 2019 WL 1209086, at *8 (D. Haw. Mar. 14, 2019) (rejecting substitution of trustees for judicially estopped debtor-plaintiff because of prejudice to defendant); *Van Sickle v. Fifth Third Bancorp*, 2012 WL 3230430, at *3 (E.D. Mich. 2012) (dismissing claims, denying stay and denying motion to substitute trustee where it was clear the claims belonged to the bankruptcy estate and there was no "excusable mistake"). In other words, waiting for a litigation trustee to be appointed would likely create more motion practice. The litigation trustee could move to join the action (which Peloton would likely oppose) and Peloton could cross-move for judgment on the pleadings because, once the trustee's motion to join this Action is denied,

---

[6] If a trustee were substituted in or joined this case, it would be manifestly unfair to Peloton, which has spent the better part of the last year preparing for trial *against Mad Dogg*, not against a different litigant who surely will bring a different approach and strategy to the case. Much of Peloton's evidence, themes, and strategies for winning this case center on Mad Dogg, its business practices, and its people. Mad Dogg requests a stay that would materially change this Action, and force Peloton to try a vastly different case than the one it has spent most of a year, thousands of hours, and millions of dollars preparing. Peloton should not have to prepare to try a second and entirely different case because Mad Dogg reopened a bankruptcy proceeding after its fraud on the Bankruptcy Court was exposed.

there would be no real party in interest in this Action (which Mad Dogg or the trustee would likely oppose).  Thus, staying this Action would complicate, not simplify, the case.

Finally, Mad Dogg's reliance on *Reed v. City of Arlington*, 650 F.3d 571, 579 (5th Cir. 2011) to argue that Peloton's judicial estoppel defense would be mooted if a trustee takes control over the claims is incorrect.  Even if a litigation trustee were permitted to take control over the claims, Peloton still would need to move for partial summary judgment on judicial estoppel grounds to establish that (1) Mad Dogg cannot recover any money on account of the claims in light of its fraud on the Bankruptcy Court, and (2) Mad Dogg's creditors' recovery must be limited to the amount they have been shorted by Mad Dogg.  *See, e.g., Weinstein v. Autozoners LLC*, 2014 WL 898081, at *7 (D. Nev. Mar. 6, 2014) (granting partial summary judgment and limiting the trustee's recovery of damages to the amount owed to creditors); *Wiggins v. Citizens Gas & Coke Util.*, 2008 WL 4530679, at *4 (S.D. Ind. Oct. 7, 2008) (granting summary judgment and finding trustee is estopped from receiving a recovery that exceeds the amount owed to creditors); *cf. In re Flugence*, 738 F.3d 126, 132 (5th Cir. 2013) (requiring that any recovery by trustee exceeding Flugence's debts be refunded to defendant).

For the foregoing reasons, this factor weighs against a stay.

### C. A stay is not warranted at this late stage of the case with a trial date set.

Mad Dogg aggressively pursued its claims in this Court against Peloton on a compressed trial schedule for the last nine months, forcing Peloton to devote significant resources and time to defend itself against claims that Mr. Baudhuin concealed from the Bankruptcy Court and Mad Dogg's creditors.  Mad Dogg prosecuted those claims through the end of fact discovery, ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  Indeed, Mad Dogg has requested a stay and sought to reopen the bankruptcy only ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

Fact discovery closed weeks ago, the rebuttal expert report deadline is in four days, the

12

dispositive motion and *Daubert* deadlines are less than a month away, with trial only four months away. The parties and the Court have spent significant resources advancing the case to this late stage. Under similar circumstances, courts routinely deny stay requests because the third factor so heavily weighs against imposition of a stay. *See Soverain*, 356 F. Supp. 2d at 662-63 (fact that parties had nearly completed discovery and a trial date was set "weigh[ed] heavily in favor of denying the stay"); *see also Personalweb Techs. LLC v. Int'l Bus. Machines Corp.*, No. 6:12-CV-659-JRG, 2016 WL 7364672, at *3 (E.D. Tex. Jan. 28, 2016) (Gilstrap, J.) (timing weighs against stay when deadline to substantially complete document production was less than a month away and trial was set for ten months); *Rembrandt Wireless Techs., LP v. Apple Inc.*, 2019 WL 6344471, at *5 (E.D. Tex. Nov. 27, 2019) (Gilstrap, J.) (stay denied where fact discovery was set to close in six weeks and expert discovery was set to close in three months); *Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc.*, No. 2:13-CV-000235-JRG, 2014 WL 4652117, at *3 (E.D. Tex. Sept. 18, 2014) (Gilstrap, J.) (timing weighed "heavily against" granting stay when discovery was nearly complete, the parties were preparing for expert depositions, and trial was less than six months away).[7]

Mad Dogg's request to stay this Action in the face of an impending dispositive motion deadline after the end of fact discovery and only four months out from trial, all due to its own

---

[7] Mad Dogg's authorities are inapposite. *See, e.g., Lindell v. Synthes*, 2012 WL 1657197, at *3-4 (E.D. Cal. May 10, 2012) (granting stay where initial scheduling conference had not yet occurred and no trial date had been set); *Nichia Corp. v. Mary Elle Fashion, Inc.*, 2016 WL 9558954, at *2 (E.D. Tex. Dec. 22, 2016) (granting stay where initial scheduling conference and docket control order were weeks before stay motion was filed, and fact discovery cutoff was nine months away); *Freshpoint Atlanta, Inc. v. Haywood*, 2020 WL 6361875, at *5-6 (S.D. Cal. Oct. 29, 2020) (granting stay where bankruptcy case could moot entire action, discovery had just commenced, and no trial date had been set); *AGIS Software Dev. LLC v. Google LLC*, 2021 WL 465424, at *2-3 (E.D. Tex. Feb. 9, 2021) (stay granted pending patent re-examination proceedings, which carry a "high likelihood" of abandoned or modified claims); *Ramot v. Cisco Sys., Inc.*, 2021 WL 121154, at *2-3 (E.D. Tex. Jan. 13, 2021) (same).

13

misconduct, should be rejected. The third *Soverain* factor heavily weighs against a stay here.

On balance, the *Soverain* factors all favor denial of the stay here, and Mad Dogg's Motion to Stay should therefore be denied.

## IV.    CONCLUSION

For the foregoing reasons, Peloton respectfully requests that this Court deny Mad Dogg's Motion to Stay in its entirety.

In the alternative, if the Court is inclined to stay proceedings on the merits of the patent infringement claims, the Action should be only partially stayed, permitting Peloton to move forward on any issues related to Mad Dogg's judicial estoppel defense and the related misconduct: Peloton's *Motion To Compel Regarding Mad Dogg's Concealment Of Claims From The Bankruptcy Court (Motion No. 1)* (ECF No. 97) (the "Motion to Compel") should be resolved and the related discovery completed; Peloton should be permitted to move for summary judgment; and Peloton should be permitted to move for terminating and other sanctions based on Mad Dogg and Mr. Baudhuin's misconduct.[8]

---

[8] If a litigation trustee is ultimately permitted to join this Action, then Peloton should be permitted to move for partial summary judgment (even if the dispositive motion deadline has lapsed) to limit the trustee's recovery to the amount owed to Mad Dogg's creditors, and to ensure that Mad Dogg and Mr. Baudhuin cannot receive any recovery.

Dated: August 19, 2021                                          Respectfully Submitted

                                                                                           */s/ Melissa R. Smith*

Melissa R. Smith
TX State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***COUNSEL FOR DEFENDANT
PELOTON INTERACTIVE, INC.***

OF COUNSEL:
Steven N. Feldman
New York Bar No. 4775052
Benjamin Zachary Bistricer
New York Bar No. 5590922
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: steven.feldman@lw.com
Email: ben.bistricer@lw.com


Douglas E. Lumish
California Bar No. 183863
Gabriel S. Gross
California Bar No. 254672
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: douglas.lumish@lw.com
Email: gabe.gross@lw.com

Sarah M. Gragert
Ethan Lawrence Plail
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2384

15

Facsimile: (202) 637-2201
Email: sarah.gragert@lw.com
Email: ethan.plail@lw.com

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: kimberly.li@lw.com

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on August 19, 2021, pursuant to Local Rule CV-5(a), and has been served on all counsel who have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Melissa R. Smith*
Melissa R. Smith