IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MAD DOGG ATHLETICS, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:20-CV-00382-JRG |
| § | |
| PELOTON INTERACTIVE, INC., § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Peloton Interactive, Inc.'s ("Peloton") Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) and Brief in Support of Same (the "Motion to Dismiss"). (Dkt. No. 27). Having considered the parties' briefing and oral arguments at the hearing held on August 19, 2021 (Dkt. No. 136), and for the reasons stated herein, the Court is of the opinion that the Motion to Dismiss should be **GRANTED-AS-MODIFIED** and Plaintiff Mad Dogg Athletics, Inc. ("Mad Dogg") Complaint is **DISMISSED WITHOUT PREJUDICE**.

    **I.    BACKGROUND**

    **a.  Procedural History**

Mad Dogg filed its Complaint on December 14, 2021. (Dkt. No. 1). Mad Dogg alleges that Defendant Peloton infringes U.S. Patent Nos. 9,694,240 (the "'240 Patent") and 10,137,328 (the "'328 Patent") (collectively, the "Patents-in-Suit"). (*Id*.). On February 22, 2021, Peloton filed this Motion to Dismiss, arguing that Mad Dogg's Complaint should be dismissed with prejudice because the Asserted Patents are ineligible under 35 U.S.C. § 101. (*See* Dkt. No. 27).

b. The Patents-in-Suit

Broadly speaking, the Patents-in-Suit are directed to exercise bike technology, which provides instructions to the rider similar to an instructor-led class. Claim 1 of the '240 Patent and Claim 1 of the '328 Patent recite as follows:

'240 Patent Claim 1:

An exercise bike, comprising:
a frame that is configured to allow a rider to ride in sitting and standing positions;
a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;
a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;
a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;
a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding positions including sitting and standing positions, and that stores power exerted by the rider;
a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions, thereby simulating an instructor-led exercise class, and that displays power exerted by the rider; and
an input device that is coupled to the computer and that enables the rider to input data into the computer.

(Dkt. No. 1-1 (the "'240 Patent") at 7:50–8:10).

'328 Patent Claim 1:

A stationary bike, comprising:
a frame that is configured to allow a rider to ride in sitting and standing positions;
a direct drive mechanism that couples a pedal assembly and a flywheel and that facilitates a smooth transition between sitting and standing positions;
a set of handlebars that is coupled to the frame and that provides the rider with at least one hand position;
a mechanism that provides resistance to the flywheel and that is manually adjustable by the rider to vary the pedaling resistance;

> a computer that is coupled to the stationary bike, that is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding position including sitting and standing positions;
> wherein the computer is configured to measure the pedaling resistance and the rider's cadence and is configured to calculate power exerted by the rider based on the pedaling resistance and the rider's cadence; and
> a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding positions including sitting and standing positions;
> wherein the display displays cadence, pedaling resistance and the power exerted by the rider.

(Dkt. No. 1-2 (the "'328 Patent") at 8:2–31).

## II.   LEGAL STANDARD

### a.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court can dismiss a complaint that fails to state a claim upon which relief can be granted. To survive dismissal at this early stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true, and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true. *Id.*

The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see also Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017) ("[M]atters or theories raised in a response are not part of the pleadings."). However, documents attached to a defendant's motion to dismiss are considered a

part of the pleadings if they are referred to in the complaint and are central to the claim. *Collins*, 224 F.3d at 498–99.

### b. Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent ineligible subject matter and those that "integrate the building blocks into something more." *Id*.

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 2355. However, in doing so, the court should be mindful that, to some degree, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original). In other words and as an example, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

If the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application."

*Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, 725 Fed. App'x. 959, 965 (Fed. Cir. 2018). There are many obscure references that may qualify as prior art but are insufficient to establish that something rises to the level of "well-understood, routine, and conventional activit[ies] previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field,

[patent eligibility] can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368.

### III.   ANALYSIS

#### a.   Representativeness

As an initial matter, the Court addresses whether Peloton has shown that Claim 1 of the '240 Patent is representative of the other claims at issue. "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer*, 881 F.3d at 1365. A party seeking to invalidate claims under § 101 bears the burden of either addressing each claim or showing that a claim is representative. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021 (E.D. Tex. 2019). Peloton analyses the claims under both assumptions in its Motion. (*See* Dkt. No. 27 at 9–10, 14–18).

The parties dispute whether Claim 1 of the '240 is representative. Peloton argues that the other claims are "'substantially similar and linked to the same abstract idea.'" (Dkt. No. 27 at 9 n.2) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). Mad Dogg argues that Peloton did not meet its burden "to show that there are no legally relevant distinctions between claim 1 and the remaining asserted claims." (Dkt. No. 37 at 19 n.2).

The Court finds that Claim 1 of the '240 Patent is representative of all claims in the '240 Patent and Claim 1 of the '328 Patent is representative of all claims in the '328 Patent. The dependent claims of the '240 Patent add: a menu and selection input device (Claim 2); pre-programmed exercise routines (Claim 3); a log-in feature (Claim 4); stored exercise routines

(Claim 5); saved exercise routines (Claim 6); a target cadence display (Claim 7); an actual cadence display (Claim 8); a configuration to receive heart rate information (Claim 9); user input (Claims 10, 11); power storage (Claim 12); and power exertion history (Claim 13). ('240 Patent at 8:11–53). The dependent claims of the '328 Patent add: a menu and selection device (Claim 2); total power display (Claim 3); target cadence display (Claim 4); and resistance fluctuation directed by the computer (Claim 5). ('328 Patent at 8:31–47). The Court finds that Peloton has met its burden to show that the claims are substantially similar.

### b. *Alice* Step One

In the first step of the patent eligibility analysis discussed by the Supreme Court in *Alice*, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Alice,* 573 U.S. at 218. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *See id.* at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification," and asks "whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). In Step One, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original).

Peloton focuses on the recitation of "computer" and "display" in Claim 1 of the '240 Patent, which are used to "access" and "display" exercise routines, wherein such routines instruct the rider "regarding cadence, pedaling resistance, and riding positions," and which "simulat[e] an

7

instructor-led exercise class." (Dkt. No. 27 at 9). Claim 1 also recites the storing and displaying of "power exerted by the rider." (*Id*.). Claim 1 recites that the computer is "coupled to" a "stationary bike," which Peloton argues is insufficient to make the claims non-abstract. (*Id*. at 10). Peloton argues that the other two independent claims of the Asserted Patents, which are Claim 14 of the '240 Patent[1] and Claim 1 of the '328 Patent, are largely the same. (*Id*.). Peloton argues that the other two claims merely recite the collection, analysis, and display of additional exercise-related information. (*Id*.). Mad Dogg states that, looking to the asserted claims as an ordered combination, they embody a frame, direct drive mechanism, and handlebars that allow the rider to smoothly transition between riding positions. (Dkt. No. 37 at 12). Additionally, the claims teach a mechanism providing resistance to the flywheel and adjustable pedaling resistance, along with the mounted computer, display, and input device, so the rider can adjust resistance and cadence as instructed. (*Id*.). Mad Dogg argues that the claims are directed to specific solutions to technological problems and are therefore patent-eligible. (*Id*. at 13–14). Mad Dogg also points out that Peloton has advanced similar arguments to support the eligibility of its own patents. (*Id*. at 16). In response to case law cited by Peloton, Mad Dogg argues that the claims here are not directed to mere results. (*Id*. at 18).

Certain limitations within the claims are directed to the ineligible concept of collecting, analyzing, and presenting information. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54; *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017). Particularly, the "computer" that "stores" and "displays" power exerted in Claim 1 of the '240 Patent and the "computer" configured to "measure" and "display" the rider's

---

[1] The Court determined Claim 14 of the '240 Patent was invalid as indefinite during claim construction. (*See* Dkt. No. 88 at 36).

"pedaling resistance" and "cadence" in Claim 1 of the '328 Patent are within this category. *See* '240 Patent at 7:61–8:8; '328 Patent at 8:19–28.

The claims recite mechanical components of the exercise bike, including a "frame," "direct drive mechanism that couples a pedal assembly and a flywheel," "handlebars," and "a mechanism that provides resistance to the flywheel." '240 Patent at 7:50–60; '328 Patent at 8:2–12. "[W]hether a device is 'a tangible system (in § 101 terms, a 'machine')' is not dispositive*." ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 224). The invention claimed here is not merely a stationary bike, but a stationary bike that provides instruction to the rider in the absence of an in-person instructor.

The remaining language in the claims recites that the computer "is configured to connect with the internet or other computer network to access a collection of exercise routines, wherein the exercise routines include instructions regarding cadence, pedaling resistance, and riding positions." '240 Patent at 7:61–66; '328 Patent at 8:13–18. The claims also recite "a display that is coupled to the computer, that displays an exercise routine from the collection of exercise routines so that the rider is provided with instructions for the rider to manually adjust pedaling resistance, and instructions for the rider to vary cadence and riding." '240 Patent at 8:1–8; '328 Patent at 8:23–28. The claim language supports a conclusion that the claims are directed to an abstract idea—providing instruction for an exercise bike class. The claims here are not "directed to an improvement in the functioning of a computer." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016). The Court construed the "rider is provided with instructions" term to not preclude the participation of an instructor. (Dkt. No. 88 at 31–32).

The claims here are similar to those in *Ubisoft Entertainment, S.A. v. Yousician Oy*, a case where the patent claims recited a process for "(i) 'presenting' notations; (ii) 'receiving' input; (iii)

9

'assessing' performance; (iv) 'determining' weaknesses; and (v) 'changing' the difficulty level or 'generating' mini-games." 814 F. App'x 588, 591 (Fed. Cir. 2020). The court held in that case that a "mini-game generation step" was "no different from the ordinary mental processes of a guitar instructor teaching a student how to play the guitar." *Id*. at 592 (citing *Elec. Power*, 830 F.3d at 1355). Although the claims in this case are apparatus claims, the primary purpose of the invention claimed in the Patents-in-Suit is to simulate an instructed exercise bike class at home.

The claim language governs § 101 analysis—however, the specification can assist in determining whether claims are directed to an abstract idea. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016). The Patents-in-Suit share the same specification, which describes the invention—a display that provides instruction to the rider in a manner similar to instructor-led exercise classes despite the rider having scheduling conflicts with pre-scheduled classes. *See, e.g.*, '240 Patent at 2:64–3:2.

Accordingly, the Court finds that the Asserted Patents are directed to an abstract concept under *Alice* Step One.

### c.  *Alice* Step Two

Step Two of *Alice* involves a determination of whether the elements of the invention involve "well-understood, routine, [and] conventional activities previously known to the industry." *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359). *Alice* Step Two involves questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Peloton argues that the claims add nothing inventive, because they recite generic computer components (i.e., "computer" connected to a "network" and "display") which perform routine

computer functions. (Dkt. No. 27 at 14–15). Peloton argues that the fact that the claims collect and display exercise routines and information such as user power does not render them eligible, (*Id*. at 15), and even when viewed as an ordered combination, the claims recite well-known exercise bike components coupled with conventional computer components to reach an abstract goal. (*Id*. at 16). Peloton argues that the dependent claims suffer from the same defects. (*Id*. at 17–18). Mad Dogg argues that the independent claims recite an ordered combination of structures and software that embody an inventive concept. (Dkt. No. 37 at 22–23). Mad Dogg further argues that there is at least a fact issue as to whether the concepts were well-understood, routine, and conventional, which precludes dismissal. (*Id*. at 23). Mad Dogg cites the common specification to support the idea that the invention was a technological improvement over existing exercise bikes. (*Id*. at 24). Mad Dogg disputes Peloton's characterization of the computer as a generic computer component, noting that generic computer components cannot access routines, calculate the rider's power, and display such information. (*Id*. at 26). Mad Dogg argues that Peloton's analysis with respect to dependent claims is lacking. (*Id*. at 29).

While the Court does not reach a conclusion as to whether the claims recite elements that are well-understood, routine, or conventional, the Court finds, as discussed below, that there are not enough facts pled to avoid a Rule 12(b)(6) dismissal.

### d. Mad Dogg Failed to State a Claim for Which Relief Could be Granted

A complaint does not need to include detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). There are two guiding principles in determining

11

whether a complaint can survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* at 678–79. This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

In its Complaint, Mad Dogg describes the evolution of its Spinning classes into being available for home use, culminating in the introduction of the eSpinner. Dkt. No. 1 ¶¶ 4–5. The Complaint also states that Mad Dogg has "patented technology covering core features of a stationary exercise bike designed to simulate an instructor-led class in the rider's home," and that its patented inventions were "pioneering" in the indoor cycling market. *Id*. ¶ 9. However, Mad Dogg's Complaint does not allege any other facts relating to inventive concepts in the patents. Remarkably, counsel for Mad Dogg acknowledged during the hearing that neither of the *Alice* steps is addressed in Mad Dogg's Original Complaint. (Dkt. No. 136 at 29:15–30:6).

In *Aatrix*, the Federal Circuit reversed a district court that dismissed claims after the plaintiff requested leave to amend its complaint, which "supplie[d] numerous allegations related to the inventive concepts present in the claimed form file technology." 882 F.3d at 1127; *see also Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, Case No. 2:18-CV-390-RWS-RSP, 2019 WL 6483501, at *2–3 (E.D. Tex. Sept. 9, 2019) ("The Court concludes that fact questions remain as to whether the claimed inventions are well-understood, routine, and conventional. This is evident from the specifications of the asserted patents themselves and the Second Amended Complaint."). The Court should freely grant leave to amend, and the district court must have a "substantial

reason" to deny a request to amend a pleading. Fed. R. Civ. P. 15(a); *Aatrix*, 882 F.3d at 1126; *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). Here however, there was simply no request from Mad Dogg for leave to amend its Complaint. Even after the hearing before the Court where Mad Dogg's counsel admitted its complaint did not address either of the two steps required by *Alice*, there was no request from Mad Dogg to amend its complaint. It is difficult, in this case, for the Court to afford relief which is not requested.

Mad Dogg instead argued that the Patents-in-Suit are eligible on their face, and accordingly, dismissal at the pleadings stage would be inappropriate despite the total lack of pled factual allegations regarding patent eligibility. (Dkt. No. 136 at 30:4–11). However, even considering the face of the patents themselves, the Court finds that there are not sufficient allegations raised to support Mad Dogg's claim. The specification of the Asserted Patents states that the invention solves the problem of instructor-led classes, which may not accommodate a rider's schedule. *See* '328 Patent at 2:52–55. Further, the specification states that bikes available at gyms "typically do not have the open geometry, adjustability or other characteristics that allow an individual to experience an exercise program such as provided by indoor cycling programs." *Id*. at 2:58–61. The solution, then, is the display which provides instruction to the rider, as well as a layout that permits riding in different positions and is adjustable.

While it is true that a request to invalidate the Asserted Patents under § 101 would require a showing by Peloton of clear and convincing evidence that the patents are directed to patent-ineligible subject matter, the Court *may* determine patent eligibility at the Rule 12(b)(6) stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (emphasis added). The Court sees no basis in this case to hold that the patents-in-suit are ineligible as a matter of law.

That said, the Court is persuaded that a pleading in a patent infringement case must address patent eligibility to survive a Motion to Dismiss such as this one. *Cf. FairWarningIP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) ("We have also acknowledged, however, that plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'"). In this case, there is a clear absence of factual allegations to support the eligibility of the patents-in-suit. Having found the Asserted Patents abstract, and in light of a Complaint devoid of factual allegations to support the factual inquiry at *Alice* Step Two, the Court finds that dismissal without prejudice is an appropriate remedy. There is a wide gulf between a Defendant affirmatively showing by clear and convincing evidence that claims are ineligible under both steps of the *Alice* inquiry and a Plaintiff failing to plead adequate facts addressing the analytical steps called for in *Alice*. Hence while this complaint must fall under the analysis required by Rule 12(b)(6) its failure should be without prejudice, rather that with prejudice as requested by Peloton.

## IV.  CONCLUSION

In light of the foregoing, and for the reasons stated herein, the Court finds that Peloton's Motion to Dismiss should be and hereby is **GRANTED** but **without prejudice**. It is therefore **ORDERED** that all claims in the above-captioned matter are **DISMISSED WITHOUT PREJUDICE**. The Clerk of the Court is directed to **CLOSE** the above-captioned matter.

**So ORDERED and SIGNED this 15th day of September, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE