**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MAD DOGG ATHLETICS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 2:20-cv-00382-JRG |
| PELOTON INTERACTIVE, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | REDACTED |

**DEFENDANT'S MOTION TO EXCLUDE EXPERT CATHARINE LAWTON'S
<u>IMPROPER RELIANCE ON STAR TRAC AGREEMENT</u>**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT BACKGROUND ...............................................................................1

  A. The Patents-in-Suit............................................................................................1
  B. Mad Dogg's Partnership Agreements ...............................................................4
  C. Lawton's Damages Analysis Regarding the Star Trac RDLA .............................6

III.  LAWTON'S OPINIONS BASED ON THE NON-COMPARABLE STAR TRAC
  RDLA SHOULD BE EXCLUDED..........................................................................7

  A. An Expert Witness May Not Rely on a License to Support a Damages
    Theory Without a Showing of Both Technological and Economic
    Comparability. ...................................................................................................8
  B. Lawton Provides No Facts or Evidence to Show the Star Trac RDLA Is
    Technologically Comparable to the Hypothetical License...............................10
  C. Lawton Provides No Facts or Evidence to Show the Star Trac RDLA Is
    Economically Comparable to the Hypothetical License....................................12

IV.   CONCLUSION......................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Biscotti Inc. v. Microsoft Corp.*,
   Case No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882 (E.D. Tex. May 25,
   2017) (Payne, Mag. J.) (order adopted by Gilstrap, J.)..............................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993)........................................8

*GREE, Inc. v. Supercell Oy*,
   No. 2:19-CV-00070, 2020 WL 4288345 (E.D. Tex. July 27, 2020) (Payne,
   Mag. J) (order adopted by Gilstrap, J.) ....................................................................9

*IP Innovation L.L.C. v. Red Hat, Inc.*,
   705 F. Supp. 2d 687 (E.D. Tex. 2010).....................................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)..................................................................9, 12, 13, 15

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)................................................................................9

*Omega Patents, LLC v. Calamp Corp.*,
   Case No. 20-1793 (Fed. Cir. Sept. 14, 2021)...........................................................9

*ResQNet.com., Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)..................................................................................8

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
   No. 2:17-CV-00651-JRG, 2019 WL 2267212 (E.D. Tex. May 28, 2019)
   (Gilstrap, J.) .......................................................................................................9, 12

*United Services Automobile Ass'n v. Wells Fargo Bank*,
   Case No. 2:18-CV-00366, 2019 WL 7041725 (E.D. Tex. 2019) ............................8

*VirnetX, Inc. v. Cisco Sys.*,
   767 F.3d 1308 (Fed. Cir. 2014)................................................................................8

### **RULES**

Fed. R. Evid. 702 ...............................................................................................................8

## I.      INTRODUCTION

Plaintiff Mad Dogg Athletic Inc.'s damages expert, Catharine M. Lawton, intends to testify that Mad Dogg is entitled to a "reasonable royalty" of $400 for every Peloton Bike and Bike+ sold since July 2017, totaling more than $743 million.  A cornerstone of her damages theory is that Mad Dogg once contracted to receive <sup>REDACTED</sup> per-unit royalty from a third party supplier, Star Trac, on sales of a product called the eSpinner, which she uses as a starting point for her calculations. Yet there is no dispute that (1) the eSpinner does not practice the patents-in-suit, (2) the Star Trac agreement did not confer any rights to the patents-in-suit, (3) the agreement was entered into seven years before either of the patents-in-suit came into existence; and (4) it was a complex commercial contract governing a multi-faceted international business relationship.

Seeking justification for a sky-high royalty rate, Lawton inappropriately relies on the per-unit royalty from the Star Trac agreement without making any showing—no facts, no evidence— of technological or economic comparability to the facts of this case.  Notably, Lawton even admits that an equivalent agreement Mad Dogg entered into with another supplier that replaced Star Trac is not comparable.  Federal Circuit law is clear: her failure to show comparability requires exclusion of any opinion flowing from the Star Trac agreement.  Respectfully, Peloton asks the Court to exercise its gatekeeping authority under *Daubert* to preclude Mad Dogg and Lawton from relying on the Star Trac agreement and its eSpinner royalty and from offering any opinions, arguments, or evidence at trial based on them.

## II.     RELEVANT BACKGROUND

### A.      The Patents-in-Suit

Mad Dogg alleges that Peloton's Bike and Bike+ infringe U.S. Patent Nos. 9,694,240 and 10,137,328.  These Asserted Patents pertain generally to a "stationary exercise bike along with a

display that provides instruction to lead a rider through an exercise program." Ex. 2, '240 Patent at Abstract; Ex. 3, '328 Patent at Abstract. Independent claim 1 of each patent is representative:

| Claim 1 of the '240 Patent | Claim 1 of the '328 Patent |
|---|---|
| 1. An exercise bik⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ a frame that is con⬛⬛⬛⬛⬛ and standing po⬛⬛⬛ a direct drive mec⬛⬛⬛ and a flywheel⬛⬛⬛ between sitting⬛⬛⬛ a set of handlebar⬛⬛ provides the rid⬛⬛ a mechanism that⬛⬛ that is manuall⬛⬛ pedaling resista⬛⬛ a computer that is⬛⬛ configured to co⬛⬛ puter network t⬛⬛ tines, wherein th⬛⬛ regarding caden⬛⬛ tions including⬛⬛ stores power ex⬛⬛ a display that is d⬛⬛ exercise routin⬛⬛ so that the rid⬛⬛ rider to man⬛⬛ instructions fo⬛⬛ positions incl⬛⬛ thereby simula⬛⬛ that displays p⬛⬛ an input device t⬛⬛ enables the rid⬛⬛ | 1. A stationary bik⬛⬛⬛⬛⬛ a frame that is conf⬛⬛⬛ and standing po⬛⬛⬛ a direct drive mec⬛⬛⬛ and a flywheel a⬛⬛⬛ between sitting⬛⬛⬛ a set of handlebars⬛⬛ provides the rid⬛⬛ a mechanism that p⬛⬛ that is manually⬛⬛ pedaling resistan⬛⬛ a computer that is⬛⬛ configured to co⬛⬛ puter network to⬛⬛ tines, wherein th⬛⬛ regarding caden⬛⬛ tion including si⬛⬛ wherein the compu⬛⬛ aling resistance⬛⬛ ured to calculate⬛⬛ the pedaling resi⬛⬛ a display that is co⬛⬛ exercise routine⬛⬛ so that the rider⬛⬛ rider to manua⬛⬛ instructions for⬛⬛ positions includi⬛⬛ wherein the display⬛⬛ and the power e⬛⬛ |

Although Peloton disputes that the Asserted Patents claim anything new or non-obvious over the prior art, the incremental value of the claimed invention over the prior art, as represented by the applicant during the prosecution history, is tied to, at most, the ability of an internet-connected computer coupled to a stationary bike to store or calculate power exerted by the rider. The latter power-related feature was the sole basis of the applicant's final claim amendments and arguments immediately prior to allowance. The applicant had previously amended the claims (which otherwise include conventional, well-known bike parts) to recite other limitations in response to other prior art cited by the examiner over the course of prosecution, however, in each case the examiner found the prior art disclosed or rendered obvious the applicant's amendments.

For example, earlier during prosecution, the applicant amended its pending claims to recite that the computer is "configured to connect to the internet or other computer networks to access a collection of exercise routines."  Ex. 4, MDA_0000027 at -114 (Sept. 30, 2015 Amendment and Response to Non-Final Office Action).  But the examiner rejected the pending independent claim over two prior patents—Hernandez and Rice—because Rice discloses "a computer that is coupled to the stationary bike and that is configured to connect with the internet or other computer network to access a collection of exercise routines," and "[i]t would have been obvious to use Rice's system with Hernandez, as it is well known as taught by Rice, to use a computer to connect with the internet for simulating a group or a class."  *Id*. at -158–159 (July 13, 2016 Non-Final Rejection) (further noting that Hernandez alone discloses all other claim limitations including the frame, direct drive mechanism, handlebars, mechanism that provides resistance to the flywheel, exercise routines, display, instructions for the rider).

In response, the applicant again amended the claims.  Its amendment recited that the computer also "stores power exerted by the rider," and that the display "displays power exerted by the rider."  *Id*. at -178–179 (January 13, 2017 Amendment and Response to the Non-Final Office Action).  The applicant defended the amendment: "Hernandez [] does not disclose or otherwise teach a computer that stores power exerted by the rider" or "a display that displays power exerted by the rider as now recited by the amended claims," and Rice "does not serve to disclose or otherwise teach the measurement and display of power," though "Rice do[es] address resistance settings."  *Id*. at -183–184.  The applicant argued that none of the cited art disclosed or taught "the new features [of the amended claims] regarding the measurement and display of power," and that these amendments were critical to the "revolutionary SPINNING exercise program."  *Id*. at -182, -184–185.  Accordingly, the four corners of the file history establish that the applicants

3

invented—at most—an internet-connected indoor cycling bike that can measure, store, and display a rider's power output, combined with only conventional, well-known bike components.[1]

### B.    Mad Dogg's Partnership Agreements

Mad Dogg does not make its own products; historically, it has contracted with third parties to manufacture, distribute, and market its bikes, and to assist with marketing and sales of Mad Dogg's Spinning instructor program.  Far more than mere patent licenses, these contracts are more like partnership agreements, establishing multi-faceted international rights and obligations.

**Schwinn.**  Mad Dogg began with an October 21, 1994 Distribution and License Agreement with Schwinn Cycling & Fitness Inc. ("Schwinn").  Ex. 5, MDA_0000602.  Among other things, it granted Schwinn an                    REDACTED

. *Id.* at -602–603.

**Star Trac.**   On April 1, 2002, Mad Dogg entered into a Distribution and License Agreement with Unisen, Inc., DBA Star Trac ("Star Trac"), which established a complex business arrangement covering                    REDACTED

. Ex. 6, MDA_0000721 at -728–731.   Among other things, Mad Dogg granted an

REDACTED

," which did not include either of the Asserted Patents.  *Id.* at -728.   The agreement also granted a                    REDACTED                    .

*Id.* at -728–729.  Effective January 1, 2006, Mad Dogg and Star Trac entered into a new agreement that continued their business relationship and many of the prior arrangements.  *See generally* Ex.

---

[1] Peloton disputes that these features were in fact inventive and intends to offer testimony and evidence that many prior art references disclose the features.

8, MDA_0108945.  It also granted Star Trac the                    REDACTED

                    *Id.* at -954–955.  Mad Dogg and Star Trac further agreed to        REDACTED

, *see, e.g.*, *id.* at -956–958, -972-973, and Star Trac agreed to        REDACTED

                                 *Id.* at -965-966.

On June 1, 2010, Star Trac and Mad Dogg entered into their third agreement, the Restated Distribution and License Agreement (the "Star Trac RDLA" or "RDLA").  Ex. 9, MDA_0153552. This 111-page agreement continued Mad Dogg and Star Trac's prior business partnership in which Star Trac manufactured bikes as well as partnered with Mad Dogg in        REDACTED

                         *Id.* at -565-585.  Star Trac was expected to                    REDACTED                    .  *Id.* at -564, -565-566.  The RDLA also addressed                REDACTED

        and  established                REDACTED

        *Id.* at -553, -573–574.  The RDLA further memorialized the per-unit royalties that Star Trac would pay Mad Dogg in exchange for the complex bundle of commercial and other rights it received.  Each Mad Dogg bike carried a per-unit royalty between [REDACTED], with the exception of a product called the "eSpinner"—which was                REDACTED                per unit.  *Id.* at -571.  The RDLA does not include a license to either of the patents-in-suit.

According to Mad Dogg, the license for the eSpinner commanded a higher royalty per unit because,                    REDACTED                    Ex. 1, Lawton Rpt. ¶ 758; *see also id.* at ¶ 60.  Lawton describes the eSpinner as an   REDACTED bike, but it is undisputed that the eSpinner does not practice the Asserted Patents.  *See id.* at ¶¶ 756, 858; Ex. 10, J. Baudhuin Dep. 97:2-7.  It is also undisputed that the eSpinner lacks the ability to

store and display power—the potentially inventive feature of the Asserted Patents the applicant emphasized during prosecution.  Ex. 11, J. Cook Dep. 132:21-22.  Nor does it offer the other feature that Mad Dogg emphasized during prosecution: the ability to connect to the internet to access exercise classes.  Ex. 10, J. Baudhuin Dep. 270:2-10.  In May 2015, Mad Dogg terminated its agreement with Star Trac.  *See, e.g.*, Ex. 12, MDA_0007275.

**Precor.**  Mad Dogg's next partner was Precor.  On August 1, 2015, Mad Dogg and Precor contracted to have Precor manufacture co-branded bikes and              REDACTED

("Precor Agreement").[2]  *See, e.g.*, Ex. 13, MDA_0215845 at -868-869.  Like the Star Trac Agreement before it, the agreement also included provisions on

REDACTED

.  *Id.* at -848, -852.  The Precor Agreement established REDACTED

*Id.* at -851.  The agreement ended on July 31, 2021. *Id.* at -871.

### C.    Lawton's Damages Analysis Regarding the Star Trac RDLA

Lawton's damages opinion is largely based upon a per-unit royalty of $400 for each Peloton Bike and Bike+ (collectively, "Peloton Bike" or "Bike")[3] sold since July 4, 2017, and she uses the eSpinner bike royalty contained in the Star Trac RDLA as the foundation of her

---

[2] The Precor Agreement states that it provides Precor a "non-exclusive" license to a list of patents, but it is, in fact, an exclusive grant of rights subject only to co-exclusive rights retained by Mad Dogg.  Mad Dogg "reserves the balance of [Mad Dogg's] non-exclusive rights only for itself for use in accordance with this Agreement, and may not license such rights to third parties[.]"  Ex. 13, Precor Agreement at MDA_0215876.

[3] Lawton does not perform separate calculations for the Peloton Bike and Peloton Bike+.  Ex. 1, Lawton Rpt. ¶ 29 (calculating and applying the same "per unit running royalty" to both "the number of units of Peloton Bike and Peloton Bike+ that Peloton has sold").  Accordingly, "Peloton Bike," as discussed herein, refers to both products.

calculations.  Ex. 1, Lawton Rpt. ¶¶ 29-30, 756, 760, 858, 933.  Lawton's opinions assume—without evidence—that "Mad Dogg would consider the eSpinner royalty as a benchmark and demand a royalty of no less than the <sup>REDACTED</sup>/bike."  *Id.* at ¶ 760.  From this, she concludes that the eSpinner royalty "is a reasonable proxy for the price point of a[n] 'interactive fitness' bike"—in the same sentence that she concedes the "eSpinner does not practice the claimed invention of the Patents-in-Suit."  *Id.* at ¶ 756.  Lawton does not rely on any technical evidence or testimony from a qualified technical expert to support her conclusion that the eSpinner is a "reasonable proxy" for the inventions claimed in the Asserted Patents.

She proceeds to use the <sup>REDACTED</sup> royalty for the eSpinner—a product comprised of conventional prior art bike and computer components and admittedly *not* covered by the Asserted Patents—as the starting point for further calculations of a royalty rate and a royalty base.  She determines that the <sup>REDACTED</sup> per-unit royalty represented approximately <sup>REDACTED</sup> of Mad Dogg's profit margin for the eSpinner in 2014 to 2015.  *See id.* at ¶¶ 760, 858.  She then calculates <sup>REDACTED</sup> of the profit margins of the Peloton Bike[4] in order to arrive at a base royalty of **$353.14** per Bike.  *Id.* at ¶ 858, Table 10.2.  Last, she applies the *Georgia-Pacific* factors to make an arbitrary upward adjustment on the total (in particular, due to factors 8, 9, and 11), resulting in a final calculation of **$400** per Peloton Bike as a reasonable royalty.  *Id.* ¶¶ 933–34.

## III.  LAWTON'S OPINIONS BASED ON THE NON-COMPARABLE STAR TRAC RDLA SHOULD BE EXCLUDED.

Expert opinion testimony is permitted only if such testimony "will assist the trier of fact" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

---

[4] Lawton bloats her profit margin calculations by including not only 100% of Peloton's margins on the Peloton Bike itself—without adjustment for the many conventional features of the Bike—but also she also includes full profits of any item a customer purchases at the same time as the Peloton Bike ("basket" sales)—regardless of any connection to the Bike—and *half of eight years* of the separate subscription revenue.  Lawton Rpt. ¶¶ 744, 858; *id.* at Table 10.2.

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. District courts act as gatekeepers tasked with the inquiry into whether expert testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993). The Court must exclude testimony that does not meet the requirements of Rule 702. *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010).

The foundation for the reasonable royalty that Lawton opines should be the measure of damages here is the [REDACTED] per-unit royalty in the Star Trac RDLA. *See, e.g.*, Ex. 1, Lawton Rpt. ¶¶ 760, 850(b), 858. She provides no support, however, for the technological or economic comparability of this commercial agreement to the license Mad Dogg and Peloton would enter into after a hypothetical negotiation. Her opinion should be excluded as a matter of law.

### A.  An Expert Witness May Not Rely on a License to Support a Damages Theory Without a Showing of Both Technological and Economic Comparability.

A damages expert may not rely on a prior license to derive a reasonable royalty unless that license is both technologically and economically comparable with the patents-in-suit. *ResQNet.com., Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010) (holding an expert's reliance on prior licenses requires "account[ing] for the technological and economic differences between those licenses" and the hypothetical negotiation.); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) ("[D]istrict courts performing reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies other than the patent in suit, and must account for differences in the technologies and economic circumstances of the contracting parties." (internal quotations and citations omitted) (alteration in original)); *United Services Automobile Ass'n v. Wells Fargo Bank*, Case No. 2:18-CV-00366, 2019 WL 7041725, at *1 (E.D. Tex. 2019) ("For an expert to introduce other licenses[,] ... the Federal Circuit requires a showing of

comparability … both technologically and economically, to the hypothetical negotiation between the parties."). And it is the burden of the party relying on the license to demonstrate its comparability. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1332 (Fed. Cir. 2009).

Critically, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). As a result, courts routinely exclude expert opinions as insufficient and unreliable for failure to establish comparability. *See, e.g.*, *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *12 (E.D. Tex. May 28, 2019) (Gilstrap, J.) (excluding expert opinion due to lack of evidence to establish comparability of licenses); *Omega Patents, LLC v. Calamp Corp.,* Case No. 20-1793, *29-30 (Fed. Cir. Sept. 14, 2021) (finding plaintiff failed to adequately account for economic differences between proffered multi-patent licenses and hypothetical single-patent license); *LaserDynamics, Inc.*, 694 F.3d at 78 (excluding reliance on a prior license that had "very little relation to demonstrated economic demand for the patented technology"); *Biscotti Inc. v. Microsoft Corp.*, Case No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882, at *3-4 and n.1 (E.D. Tex. May 25, 2017) (Payne, Mag. J.) (order adopted by Gilstrap, J.) (excluding expert testimony of certain licenses—even when used merely to "confirm expert's analysis"—for failure to account for technological and economic differences from patents-in-suit); *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00070, 2020 WL 4288345, at *3-4 (E.D. Tex. July 27, 2020) (holding that expert could not testify about value of licenses because comparability had not been established) (Payne, Mag. J) (order adopted by Gilstrap, J.).

Lawton fails to provide any evidence to demonstrate comparability. As discussed below, she entirely fails to establish either the technological comparability of the eSpinner bike to the

alleged inventions of the Asserted Patents, or the economic comparability of the Star Trac RDLA

to the hypothetical license.  Her opinions related to the eSpinner and its royalty should be excluded.

**B.      Lawton Provides No Facts or Evidence to Show the Star Trac RDLA Is Technologically Comparable to the Hypothetical License.**

Nowhere in her 575-page report does Lawton offer a suggestion that the eSpinner is

technologically comparable to the inventions claimed in the Asserted Patents.   This is

unsurprising—it would be impossible to make such a showing.  Indeed, there is no dispute that the

eSpinner neither connects to the internet to access a collection of exercise routines, nor stores or

calculates power exerted by the rider, as the claims require.  Ex. 11, J. Cook Dep. 132:21-22; Ex.

10, J. Baudhuin Dep. 270:2-10.  Lawton and Mad Dogg readily admit that the eSpinner does not

practice the Mad Dogg Patents.  Ex. 1, Lawton Rpt. ¶¶ 756, 858; Ex. 10, J. Baudhuin Dep. 97:2-

7.[5]  Moreover, Mad Dogg's technical expert on issues relating to the alleged infringement, Doug

Golenz, likewise *provides no opinion in his report that the eSpinner is technologically comparable

to the Asserted Patents.*  Further, the RDLA states that the eSpinner is        REDACTED

                                            .  Ex. 9, MDA_0153552 at -620.  Yet Golenz offers

no opinions on the purported technological comparability of any of those patents to the Asserted

Patents.   Thus, Lawton has no support from a technical expert or anyone else to establish

technological comparability.

Rather, Lawton concludes that the eSpinner was "groundbreaking" and claims it is

comparable because the Asserted Patents supposedly were also "groundbreaking," according to

Mr. Golenz.   *See, e.g.*, Ex.1, Lawton Rpt. ¶ 54 (noting reference to the eSpinner as

"groundbreaking"); *id.* at ¶ 833 (calling the "claimed invention of the Patents-in-Suit is

---

[5] *See also* Ex. 15, Rawls Non-Infringement Rpt. at ¶¶ 397-414 (discussing technological non-comparability of technology licensed in RDLA).

groundbreaking"); *id.* at ¶ 809 (claiming no other license is comparable because none related to "groundbreaking" patents); Ex. 16, Golenz Rpt. ¶ 315 (calling the Asserted Patents "pioneering and ground-breaking," with no technological comparison to the eSpinner).  That one might label a product "groundbreaking," says nothing about whether it is technologically comparable to the inventions claimed by the Asserted Patents.

Lawton appears to have chosen the eSpinner because it had a display with "on-board training videos."  *See id.* at ¶ 60 (eSpinner was a "premium bike" with "on-board training videos"); *id.* at ¶ 758 (The NXT bike and eSpinner "are closely related" but the eSpinner "added a touch screen display which was described as 'provid[ing] the ultimate in at-home, start-of-the-art training.'").  Presumably, Lawton was focused on the fact that the Peloton Bike provides video content to its users.  She misses the mark.  The Asserted Patents *nowhere claim videos* of any sort. *See, e.g.*, *supra* at 2 (Claim 1 for each Patent).  Videos are neither required nor sufficient to practice claims of the Asserted Patents.  In fact, the only mentions of exercise class videos in the Asserted Patents is to disparage and differentiate such prior art from the claimed inventions and to identify an *alternative* to the claimed invention (e.g., "DVD, VHS tape" to play video).  Ex. 2, at 2:21-27, 4:66-5:2 ('240 Patent) (noting that indoor cycling videos were available but required separate equipment and that video players can be used as "an alternative to the computer" required by the claims).  As the examiner noted, and Mad Dogg never disputed, the prior art already disclosed a bike with access to exercise classes (through a computer configured to connect to the internet). *See* Ex. 4, MDA_0000027 at -158-159, -183-184.  Similarly, it is undisputed that a stationary bike with a "display," which Lawton seems to think is a differentiating factor, was also in the prior art and thus is not the inventive contribution of the Asserted Patents.  Indeed, that feature is taught and described in the Hernandez patent, which nearly derailed the applications for the Mad Dogg

Patents during prosecution.  *See supra* at 3.  In other words, the eSpinner simply embodies the prior art and sheds no light on the value of the Asserted Patents.

Thus, Lawton relies on a license that provides no probative evidence whatsoever to the value of a hypothetical license to the Asserted Patents and contains a prejudicially high royalty reflecting, if anything, the value of features that Mad Dogg *did not even claim to invent*.  *See* Ex. 9, MDA_0153552 at -571 (listing higher royalty for eSpinner than other Mad Dogg bikes); Ex. 1, Lawton Rpt. ¶ 758 (eSpinner's higher price point due to touchscreen display as differentiating feature); *id.* at ¶ 60; *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012) (holding it was error to permit expert to rely on prior licensing program evidence that did not involve the patent at issue or even the technology in question and concluding that the evidence "simply [has] no place in this case" (citation omitted and alteration in original)).[6]

The analysis is that simple.  In a 575-page report, Lawton has no evidence of any technological comparability of the eSpinner technology to the Asserted Patents.  Mr. Golenz does not help fill this gap.  As a matter of law, Lawton's opinions regarding a reasonable royalty that rely on or flow from the Star Trac RDLA should be excluded.  *See, e.g.*, *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 2019 WL 2267212, at *12; *LaserDynamics, Inc.*, 694 F.3d at 78.

### C.   Lawton Provides No Facts or Evidence to Show the Star Trac RDLA Is Economically Comparable to the Hypothetical License.

The lack of technological comparability alone is enough to exclude Lawton's royalty opinions.  But her testimony should also be excluded for the independent reason that she also fails

---

[6] Lawton claims that the eSpinner "pioneered" "interactive fitness," and that it featured the first "touchscreen display." *See, e.g.*, Ex. 1, Lawton Rpt. ¶ 25.  However, she does not claim in her report that those features demonstrate technological comparability.  *See id.*  In any event, the Asserted Patents claim neither a touchscreen display nor "interactive fitness," *see supra* at 2 (reciting Claim 1 of each Asserted Patent), and there is no dispute they were in the prior art.

to address, much less reconcile, the numerous and obvious economic differences between the Star

Trac RDLA from a hypothetical license agreement here.

In the hypothetical negotiation, Peloton and Mad Dogg would willingly enter into a non-exclusive license to two U.S. patents around the time of the first alleged infringement in 2017, with no other business terms or arrangements.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).  The Star Trac RDLA is nothing of the sort.  It was a complex commercial contract from 2010 that did not involve the Asserted Patents, but did address many other business arrangements.  For example, it addressed the                REDACTED

and  established  an                    REDACTED



.  *See* Ex. 1,

Lawton Rpt. ¶¶ 45, 757; Ex. 9, MDA_0153552 at -610–619 (Exhibit A, Spinning Trademarks); *id*. at -620 (Exhibit B, Issued Patents); *see also id.* at -561.

As Lawton recognizes, the Star Trac RDLA also established Star Trac as the REDACTED

Ex. 1, Lawton Rpt. ¶ 45.  As discussed above at 4–6, it also conferred various other benefits and value on the companies.  For example, it provided Star Trac a                REDACTED

and a              REDACTED              .  Ex. 9, MDA_0153552 at -561–564.  And the license to Mad Dogg's trademarks was a significant component of the agreement, for Mad Dogg historically (if inaccurately) has placed extensive       REDACTED       .  Mad Dogg claimed in 2012 that                REDACTED


Ex. 17, MDA_0071320 at -329.

13

The Star Trac RDLA royalty rates were negotiated in the context of a complex business arrangement involving a suite of performance obligations and intellectual property and other rights—none of which involved the Asserted Patents.  The value of these many other business terms is impossible to determine.  The Star Trac royalties certainly were not the result of an arms' length negotiation of a bare, non-exclusive license to two U.S. patents, like the royalties that would result from the hypothetical negotiation.  The two are not remotely economically comparable.

Indeed, Lawton herself disregards two other agreements as not economically comparable for *exactly these reasons*.  She dismisses the MDA-Precor agreement—the successor to the Star Trac RDLA—stating that the agreement is not comparable because, *inter alia*, it "includes certain additional benefits to Mad Dogg, such as the                    REDACTED

    .  The hypothetical license would not include these additional advantages."  Ex. 1, Lawton Rpt. at ¶ 808.  She explains that what the Precor Agreement "*reflected is a partnership and was not a naked license.*"  *Id*. ¶ 783 (emphasis added).  But the Precor Agreement contained similar provisions to the RDLA and is also not a bare license like the one that would result from the hypothetical negotiation.  Like the RDLA, the Precor Agreement established a complex business arrangement for the                    REDACTED                    ; it conferred a                    REDACTED                    ; and authorized Precor to                    REDACTED                    .  In short, Lawton rightly excludes the Precor Agreement from her analysis as not economically comparable—while doing the exact opposite in her treatment of the Star Trac RDLA.[7]

Likewise, Lawton concludes that an agreement between Peloton and ICON Health & Fitness, Inc. ("ICON Agreement") is "not economically comparable" because, among other things,

---

[7] Lawton also dismisses the Precor Agreement because it went into effect two years before the '240 patent was issued. Lawton Rpt. at ¶ 783.  But the Star Trac RDLA was effective in 2010—*seven years* before the '240 patent was issued.

it *"includes many other business terms and the value of these terms, if any, is not known."*  Ex. 1, Lawton Rpt. ¶ 839 (emphasis added).  So too with the Star Trac RDLA.  The ICON Agreement licensed to Peloton the                                    REDACTED                                    .  Ex. 18, ICON_MDOGG_SUB000453.  The ICON Agreement is far more economically comparable to the Asserted Patents than the Star Trac RDLA.[8]  Unlike the RDLA, it contains almost no "other business terms."  Other than a license to ICON's patents, it contains only REDACTED

.  *See generally* Ex. 19, Peloton-MDA00184637 (ICON Agreement).  The ICON Agreement also became effective REDACTED, a mere *six weeks* before the hypothetical negotiation between Mad Dogg and Peloton, *id.* at -643; in contrast, the Star Trac RDLA began long before, on REDACTED, Ex. 9, MDA_0153552.

Under Lawton's own reasoning regarding the Precor and ICON Agreements, the Star Trac RDLA is not economically comparable to the license resulting from the hypothetical negotiation; it "includes many other business terms and the value of these terms, if any, is not known." Lawton's opinion that the Star Trac RDLA is economically comparable to the hypothetical license—and all of her conclusions that flow from it—is factually unsound and unreliable, and these infirmities are confirmed by her own dismissal of two other agreements as not economically comparable for equally applicable reasons.  Her royalty rate opinion—inextricably rooted in the Star Trac RDLA—should be excluded.  *See, e.g.*, *LaserDynamics, Inc.*, 694 F.3d at 78.

## IV.   CONCLUSION

For the forgoing reasons, Lawton should be precluded from offering any opinion of a reasonable royalty for a hypothetical negotiation that relies on or flows from the Star Trac RDLA.

---

[8] The ICON Agreement also licenses comparable technology—the ability to measure a rider's metrics for an internet-connected stationary bike—but such analysis not necessary for the present motion.

Dated: September 14, 2021

Respectfully Submitted

/s/ Gabriel S. Gross
Douglas E. Lumish
California Bar No. 183863
Gabriel S. Gross
California Bar No. 254672
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: douglas.lumish@lw.com
Email: gabe.gross@lw.com

Melissa R. Smith
TX State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**COUNSEL FOR DEFENDANT**
**PELOTON INTERACTIVE, INC.**

OF COUNSEL:
Steven N. Feldman
New York Bar No. 4775052
Benjamin Zachary Bistricer
New York Bar No. 5590922
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: steven.feldman@lw.com
Email: ben.bistricer@lw.com

Sarah M. Gragert
Ethan Lawrence Plail
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2384
Facsimile: (202) 637-2201

Email: sarah.gragert@lw.com
Email: ethan.plail@lw.com

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: kimberly.li@lw.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on September 14, 2021, pursuant

to Local Rule CV-5(a), and has been served on all counsel who have consented to electronic service.

Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Gabriel S. Gross*

**CERTIFICATION OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the

Protective Order entered in this case.

*/s/ Gabriel S. Gross*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Peloton and counsel for Mad Dogg have

complied with Local Rule CV-7(h) by conferring.  The undersigned certifies that on September 14,

2021, Tom Gorham of Gillam & Smith LLP, representing Defendant Peloton, met and conferred with

Elizabeth DeRieux of Capshaw DeRieux LLP, on behalf of Plaintiff Mad Dogg, regarding the present

motion.  Mad Dogg did not consent to the relief requested.

*/s/ Gabriel S. Gross*