**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| |
|---|
| MAD DOGG ATHLETICS, INC. |
| Plaintiff, |
| v. |
| PELOTON INTERACTIVE, INC. |
| Defendant. |

Case No.  2:20-cv-00382-JRG

JURY TRIAL DEMANDED

## <u>PELOTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF (1) NO WILLFULNESS AND (2) NO PRE-SUIT DAMAGES FOR FAILURE TO MARK</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ...................................2

III.    STATEMENT OF UNDISPUTED FACTS .................................................................2

      A.     Mad Dogg's Patents and Its Infringement Claims..................................2
      B.     Mad Dogg's Failures to Mark Its Patented Articles ...............................3

IV.     LEGAL STANDARD..............................................................................................6

V.      ARGUMENT ........................................................................................................7

      A.     Mad Dogg's failure to show that Peloton knew of the Asserted Patents or
             any alleged infringement compels summary judgment of no willfulness. .............7
      B.     The undisputed facts show that Mad Dogg failed to mark its patented
             products, compelling summary judgment of no pre-suit damages. ......................13

VI.     CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Adrea, LLC v. Barnes & Noble, Inc.*,
  No. 13-cv-4137 (JSR), 2015 WL 4610465 (S.D.N.Y. July 24, 2015), abrogated on other
  grounds .....................................................................................................................................14

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002).........................................................................................18, 20

*Amsted Indus. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994).........................................................................15, 17, 18, 23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................................6

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)....................................................................................14, 15

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  950 F.3d 860 (Fed. Cir. 2020).............................................................................................14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................................6, 7

*Egenera, Inc. v. Cisco Sys.*,
  No. 16-11613-RGS, 2021 WL 2582406 (D. Mass. June 23, 2021)......................................22

*Frolow v. Wilson Sporting Goods Co.*,
  710 F.3d 1303 (Fed. Cir. 2013)...........................................................................................15

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010)...........................................................................................23

*Halo Elecs. v. Pulse Elecs.*,
  136 S. Ct. 1923 (2016)....................................................................................................7, 12

*Intell. Ventures I LLC v. T Mobile USA, Inc.*,
  No. 17-cv-00577-JRG, 2018 WL 5809267 (E.D. Tex. Nov. 6, 2018) .....................................7

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
  No. 17-cv-00662-JRG-RSP, 2019 WL 1987172 (E.D. Tex. Apr. 12, 2019), *report &
  recommendations adopted*, No. 17-cv-00661-JRG-RSP, 2019 WL 1979866 (E.D. Tex.
  May 3, 2019)...............................................................................................................7, 10

*Mass. Inst. of Tech. v. Abacus Software, Inc.*,
   No. 01cv344, 2004 WL 5268123 (E.D. Tex. Aug. 4, 2004)............................................15, 16

*Mfg. Res. Int'l v. Civiq Smartscapes, LLC*,
   397 F. Supp. 3d 560 (D. Del. 2019)...........................................................................................18

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998)..................................................................................................19

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) .....................................................................................................7

*Robert Bosch LLC v. Alberee Prods., Inc.*,
   No. 12-574-LPS, 2015 WL 5576746 (D. Del. Sept. 16, 2015) ..................................................23

*Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*,
   400 F.3d 910 (Fed. Cir. 2005).....................................................................................................22

*Stagliano v. Cincinnati Ins. Co.*,
   633 F. App'x 217 (5th Cir. 2015) .................................................................................................6

*Team Worldwide Corp. v. Acad., Ltd.*,
   No. 19-cv-00092-JRG-RSP, 2021 WL 1854302 (E.D. Tex. May 10, 2021).............................14

*Traxcell Techs., LLC v. AT&T Corp.*,
   No. 17-cv-00718-RWS-RSP, 2019 WL 6006202 (E.D. Tex. Oct. 7, 2019), *report &
   recommendations adopted sub nom*, *Traxcell Techs., LLC v. AT&T, Inc.*, No. 17-cv-00718-
   RWS-RSP, 2020 WL 1872388 (E.D. Tex. Apr. 15, 2020)...........................................................7

*Unwired Planet, LLC v. Apple Inc.*,
   829 F.3d 1353 (Fed. Cir. 2016).....................................................................................................8

*VLSI Tech. LLC v. Intel Corp.*,
   No. 19-CV-977-ADA, 2021 WL 2773013 (W.D. Tex. Apr. 12, 2021) ............................18, 19

*Yufa v. TSI, Inc.*,
   652 F. App'x 939 (Fed. Cir. 2016) ............................................................................................6, 7

**STATUTES**

35 U.S.C.
   § 287..............................................................................................................................................2
   § 287(a) ............................................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 56(a) ...........................................................................................................................6

iii

## I.      INTRODUCTION

Mad Dogg claims that Peloton willfully infringes U.S. Patent Nos. 9,694,240 and 10,137,328, two related patents that Mad Dogg never told Peloton about until filing this lawsuit. Even after full fact discovery, Mad Dogg has failed to produce a shred of actual evidence to support central elements of its willfulness claim, making it ripe for disposal on summary judgment.  Mad Dogg also is not entitled to recover any pre-suit damages as a matter of law because the undisputed facts confirm that it failed to mark its patented products with its patent numbers, and did not give Peloton notice of any alleged infringement until filing this lawsuit.

First, Mad Dogg has failed to establish any proof that Peloton knew of the Asserted Patents or of any alleged infringement of them before this action began.  At most, Mad Dogg can show that Peloton knew of *Mad Dogg* prior to 2015, and that Mad Dogg notified Peloton of *trademarks* before this lawsuit.  Under well-established law, this is insufficient to establish willful patent infringement.  The undisputed evidence also confirms that Peloton did not know of the patents or any alleged infringement before this suit was filed, and once it did, it immediately and diligently investigated and analyzed the allegations and formed a good-faith belief that it has not infringed the patents and that they are invalid on several grounds, including their claiming of ineligible subject matter and their obviousness in view of the prior art.

Second, although Mad Dogg has openly sold a product embodying its patents since December 2017, it took no steps to mark that product until March 2020 at the earliest.  And even then, Mad Dogg's attempts at marking were incomplete and laden with errors and confusion, and wholly failed to satisfy the statutory marking requirement, which remains true today.  Accordingly, Mad Dogg is not entitled to recover any pre-suit damages as a matter of law.

Peloton therefore respectfully requests, for the reasons detailed herein, that summary judgment be granted finding no willfulness and no pre-suit damages.

1

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.     Whether Mad Dogg has come forward with sufficient evidence to avoid summary judgment that Peloton has not willfully infringed the Asserted Patents.

2.     Whether there is a genuine factual dispute that Mad Dogg failed to mark its patented products under 35 U.S.C. § 287 and thus is not entitled to pre-suit damages.

## III.     STATEMENT OF UNDISPUTED FACTS

### A.     Mad Dogg's Patents and Its Infringement Claims

1.     The '240 and '328 patents (the "Asserted Patents") are identically titled "Programmed Exercise Bicycle With Computer Aided Guidance" and share a common specification.  Gross Decl. Ex. 1A ('240 patent); Gross Decl. Ex. 1B ('328 patent).  Mad Dogg claims that Peloton's Bike and Bike+ (the "Accused Products") infringe claims 1, 4-10, and 12-13 of the '240 patent, and claims 1, and 3-5 of the '328 patent.  Gross Decl. Ex. 2 (Pl.'s Disclosure of Asserted Claims and Infringement Contentions) at 2.

2.     Mad Dogg never accused Peloton of infringement or notified Peloton about the Asserted Patents before filing this lawsuit.  Gross Decl. Ex. 3 (Pl.'s Resps. and Objs. to Def.'s Revised Reqs. for Admis. (Nos. 1-38)) at No. 4; Gross Decl. Ex. 4 (Baudhuin Dep. Tr. vol. 2) at 501:1-12.

3.     Peloton was unaware of the Asserted Patents before this lawsuit.  Gross Decl. Ex. 5 (Cortese Dep. Tr.) at 16:4-11.  Peloton believes in good faith that the Accused Products do not infringe the '240 or '328 patents and that they are invalid, and formed this belief upon investigating Mad Dogg's claims in this lawsuit.  *See, e.g.*, Gross Decl. Ex. 6 (Def.'s Resps. to Pl.'s First Set of Interrogs. to Def. (Nos. 1-11)) at No. 1; Gross Decl. Ex. 7 (Def.'s Invalidity Contentions) at 55-59; Gross Decl. Ex. 8 (Rawls Non-Infringement Rpt.) ¶ 166; Gross Decl. Ex. 9 (Rawls Invalidity

Rpt.) ¶¶ 485, 534, 619; Gross Decl. Ex. 10 (Rice Invalidity Rpt.) ¶ 229-32; Gross Decl. Ex. 5 (Cortese Dep. Tr.) at 230:5-11.

4. ████████████████████████████████████████████

████████████████████████████████████████████████

██████████   Gross Decl. Ex. 11 (MDA_0281564) at MDA_0281564. ██████████

████████████████████████████   *Id.* at MDA_0281584-85.

5.      Peloton acquired Precor on or around December 21, 2020, after the filing of this lawsuit.  Peloton did not learn of the Asserted Patents through due diligence relating to the acquisition of Precor.  Gross Decl. Ex. 12 (Pl.'s Second Suppl. Resps. to Def.'s Interrogs. (Nos. 25-32)) at No. 28; Gross Decl. Ex. 5 (Cortese Dep. Tr.) at 16:4-11.  No evidence suggests that Peloton learned about the Asserted Patents through its dealings with Precor.

6.      It thus is undisputed that Mad Dogg did not provide constructive or actual notice of the alleged patent infringement to Peloton before filing this lawsuit, and that immediately upon learning of Mad Dogg's accusations, Peloton investigated them and formed a good-faith belief that it has not infringed the patents and that they are invalid on several grounds.

**B.      Mad Dogg's Failures to Mark Its Patented Articles**

7.      A Mad Dogg product called the Spinner® Chrono™ Power bike (the "Chrono"), when used with Mad Dogg's Spinning® ("Spinning") Digital App running on a user device, practices the Asserted Patents.  Gross Decl. Ex. 13 (Cook Dep. Ex. 19) at 3.  Mad Dogg designed the Chrono to be coupled with user devices, namely smartphones or tablets.  *See* Gross Decl. Ex. 15 (Golenz Infringement Expert Rpt.) ¶ 60.  The Chrono can "measure and display power," even without the addition of a separate component or computer.  Gross Decl. Ex. 14 (MDA_0101860) at MDA_0101863; *see also* Gross Decl. Ex. 16 (Cook Dep. Tr.) at 286:9-12.

8.      Mad Dogg has sold the Chrono since December 2017 and the Spinning Digital App that runs on smartphones or tablets since November 2017.  Gross Decl. Ex. 17 (Pl.'s Resps. and Objs. to Def.'s Third Set of Interrogs. (Nos. 33-36)) at Nos. 33, 34.

9.      Since December 2017, Mad Dogg has advertised and bundled the Chrono with a subscription to Spinning Digital, which is available to customers on computer platforms such as iOS and Android.   Gross Decl. Ex. 18 (MDA_0424062); *see also* Gross Decl. Ex. 19 (MDA_0122556) at MDA_0122584, MDA_0122649; Gross Decl. Ex. 20 (MDA_0137204).

10.      For example, on its "Next-Evolution" webpage, Mad Dogg advertises the Chrono (and its other bike products) in connection with SPINtv™ ("SPINtv") (the previous name for Spinning Digital).  Gross Decl. Ex. 21 (MDA_0122153) at MDA_0122154-55.  This webpage has been live since around November 2017 and invites customers to "Bring the Studio Home" by "combining the next generation of Spinner® bikes with our brand new home streaming service of Spinning® Master Instructor-led rides for every occasion—SPINtv® [*i.e.*, Spinning Digital]."  *Id.*; *see also* Gross Decl. Ex. 22 (9/2/2021 website PDF).

11.      This SPINtv (*i.e.*, Spinning Digital) website instructs customers to "Create the Ultimate Home Fitness Experience" by "STEP 1: Choose Your Bike" (including the Chrono), followed by "Step 2: Choose Your Ride" by streaming SPINtv's exercise routines on the customer's "favorite mobile device."  Gross Decl. Ex. 21 (MDA_0122153) at MDA_0122154-55 (website mockup).

12.      Mad Dogg did not mark the Chrono with the Asserted Patents ████████████ ████████  on its virtual marking website.  Gross Decl. Ex. 16 (Cook. Dep. Tr.) at 344:10-23.

13.     Mad Dogg's virtual marking website states that the Chrono practices the '328 patent "where additionally configured with a Studio Power Crank."  Gross Decl. Ex. 13 (Cook Dep. Ex. 19) at 3.

14.     Mad Dogg's virtual marking website also describes the JGS, A1, A3, A5, P1, P3, and P5 bikes, "where additionally configured with a Studio Power Crank," as "protected by" the '328 patent.  *Id.* at 2-3.  However, these bikes are not compatible with and cannot be used with the Studio Power Crank.  They are only compatible with a different crank that Mad Dogg calls the Performance series crank—which is nowhere mentioned on the virtual patent marking website. *See* Gross Decl. Ex. 16 (Cook Dep. Tr.) at 283-295; Gross Decl. Ex. 13 (Cook Dep. Ex. 19).

15.     Mad Dogg's virtual marking website also states that at least the JGS, A1, A3, A5, P1, P3, P5, Ride, Shift, and Climb bikes practice the '240 patent without being configured with a power crank or any other device capable of sensing, measuring, calculating, storing, or displaying power.  *See id.* at 2-3.  However, these bikes cannot store, display, or calculate power without such additional equipment, Gross Decl. Ex. 16 (Cook Dep. Tr.) at 249:6-18, meaning they cannot meet the power-related limitations of the Asserted Patents.

16.     Mad Dogg's virtual marking website also states that at least the JGS, A1, A3, A5, P1, P3, P5, Ride, Shift, Climb, and Chrono bikes practice the '240 and '328 patents "when configured . . . with a computer programmed with the Spinning Connect App, Spinning Digital App or Spinning Digital + App" and "[w]here the computer in the above-described configuration is connected with the Internet or other network to access a collection of exercise routines."  Gross Decl. Ex. 13 (Cook Dep. Ex. 19) at 2.  However, the "Spinning Digital App" does not display "advanced metrics," such as "power exerted by the rider," and thus cannot meet the power-related limitations of the Asserted Patents.  Gross Decl. Ex. 23 (MDA_0036736) at MDA_0036737; *see*

*also* Gross Decl. Ex. 24 (Degtjarewsky Dep. Tr.) at 138:12-24; Gross Decl. Ex. 1A ('240 patent) at Cl. 1.   Conversely, the "Spinning Connect App" does not include "Spinning instructional content," and thus cannot meet the instructions-related limitations of the Asserted Patents.   Gross Decl. Ex. 23 (MDA_0036736) at MDA_0036737; *see also* Gross Decl. Ex. 24 (Degtjarewsky Dep. Tr.) at 148:24-149:13; Gross Decl. Ex. 1A ('240 patent) at Cl. 1.

17.   ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████   Gross Decl. Ex. 25 (Cook Dep. Ex. 22).

18.   It thus is undisputed that Mad Dogg has failed to mark its patented articles with the numbers of the Asserted Patents.

## IV.   LEGAL STANDARD

Summary judgment is in order "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A party may prevail on summary judgment by either producing "evidence negating an essential element of the nonmoving party's claim or defense" or by showing that "the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Yufa v. TSI, Inc.*, 652 F. App'x 939, 944 (Fed. Cir. 2016) (citation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) ("Put another way, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial.") (quoting *Celotex*, 477 U.S. at 322).  If the moving party "carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citations omitted).  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* (citation omitted); *see also Yufa*, 652 F. App'x at 944; *Intell. Ventures I LLC v. T Mobile USA, Inc.*, No. 17-cv-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire*, 210 F.3d at 1102); *Traxcell Techs., LLC v. AT&T Corp.*, No. 17-cv-00718-RWS-RSP, 2019 WL 6006202, at *3 (E.D. Tex. Oct. 7, 2019), *report & recommendations adopted sub nom*, *Traxcell Techs., LLC v. AT&T, Inc.*, No. 17-cv-00718-RWS-RSP, 2020 WL 1872388 (E.D. Tex. Apr. 15, 2020) (granting partial summary judgment of non-infringement).

## V.      ARGUMENT

### A.      Mad Dogg's failure to show that Peloton knew of the Asserted Patents or any alleged infringement compels summary judgment of no willfulness.

Because Mad Dogg has failed to adduce any evidence of Peloton's alleged willfulness, summary judgment is appropriate.  Mad Dogg's claim of willful infringement requires a showing of egregious misconduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs. v. Pulse Elecs.*, 136 S. Ct. 1923, 1932 (2016).  Mad Dogg has failed, however, to adduce any evidence of Peloton's willfulness, either by Peloton's knowledge of the patents or of any alleged infringement.  *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, No. 17-cv-00662-JRG-RSP, 2019 WL 1987172, at *1 (E.D. Tex. Apr. 12, 2019) ("For an accused infringer to willfully infringe, the risk of infringement must either be 'known or so obvious that it should have been known to the accused infringer.'  To have a finding of willful infringement, a patent must exist, and the infringing party must have

knowledge of the patent.") (citations omitted), *report & recommendations adopted*, No. 17-cv-00661-JRG-RSP, 2019 WL 1979866 (E.D. Tex. May 3, 2019) (Gilstrap, J.).  Willful blindness to alleged infringement requires that (1) the defendant subjectively believed there was a high probability of infringement and (2) the defendant took deliberate actions to avoid learning this fact. *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016) (granting summary judgment on remand of no willful infringement prior to lawsuit).  The record is devoid of evidence to support such a claim.

1.  Mad Dogg's Failure of Proof on Pre-Suit Willfulness

After ▮ depositions, the production of over ▮ documents, and extensive written discovery, Mad Dogg has not come forward with any evidence that Peloton knew about the '240 or '328 patents before this lawsuit.  Nor has Mad Dogg come forward with any evidence that Peloton subjectively believed there was a high probability of infringement or deliberately avoided learning that fact.  *See* Gross Decl. Ex. 12 (Pl.'s Second Suppl. Resp. to Def.'s Second Set of Interrogs. (Nos. 25-32)) at No. 28.

Mad Dogg's interrogatory responses, which purport to explain the basis for its claim of willfulness, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Not one of these emails demonstrates knowledge of the Asserted Patents, much less of any potential infringement. *See, e.g.*, Gross Decl. Ex. 26 (MDA_0271015) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮);  Gross  Decl.  Ex.  27  (Peloton_MDA00178456)  (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Nor does Mad Dogg have any evidence suggesting that it put Peloton on notice of alleged infringement before filing suit, or that Peloton was independently aware of any alleged

infringement.  To the contrary, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████   Gross Decl. Ex. 4 (Baudhuin Dep. Tr. vol. 2) at

501:1-12.  ██████████████████████████████████████████████████████

██████████████████████████████  Gross Decl. Ex. 3 (Pl.'s Resps. and Objs. to

Def.'s Revised Reqs. for Admis. (Nos. 1-38)) at No. 4.  The only notices that Mad Dogg ever

provided to Peloton are trademark infringement notices that have nothing to do with the Asserted

Patents.  *See* Gross Decl. Ex. 28 (Peloton_MDA00171983) (████████████████████

████████████████).

The undisputed testimony from Peloton independently confirms that it had no awareness

of the Asserted Patents before this lawsuit.  Gross Decl. Ex. 5 (30(b)(6) deposition of Peloton COO

Tom Cortese) at 13:2-19)████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████; *id.*

at 16:4-11 ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████; *see* Gross Decl. Ex. 29 (Peloton's Resps. and Objs. to Mad Dogg's

Notice of Dep. of Peloton Pursuant to Rule 30(b)(6)) at 21; Gross Decl. Ex. 30 (Cortese Dep.

Ex. 2) at 6 (Topic 16, calling for testimony regarding "Peloton's knowledge of the Asserted Patents

or any related patents").

Mad Dogg also has no evidence to support its bare allegation that Peloton "became aware of the Asserted Patents at least during due diligence conducted in connection with its acquisition of Precor," which ████████████████████████████████████████ Gross Decl. Ex. 12 (Pl.'s Second Suppl. Resps. to Def.'s Second Set of Interrogs. (Nos. 25-32)) at No. 28.  Mad Dogg points to no evidence that anyone at Peloton ever reviewed or even saw ███ ████████████████████████████████  *See id.*  In an interrogatory response, Mad Dogg cites ████████████████████████████████████████

████████  *See id.*; Gross Decl. Ex. 31 (Peloton_MDA00299445).  But Mad Dogg has offered nothing to suggest that ████████████████████████████████████████

████████████████████████████████████████

████████████████████████  Gross Decl. Ex. 12 (Pl.'s Second Suppl. Resps. to Def.'s Second Set of Interrogs. (Nos. 25-32)) at No. 28.

In any event, ████████████████ could not have put anyone on notice of the Asserted Patents because ████████████████, which is undisputed.  *See* Gross Decl. Ex. 11 (MDA_0281564)████████████ at MDA_0281584-85.  ████████████████████ ████████████████████████████████████  But mere knowledge of a *parent* does not provide notice of the asserted patent itself.  *Intell. Ventures II LLC*, 2019 WL 1987172, at *2 (granting partial summary judgment of no willful infringement, holding that "simply pointing out knowledge of the parent of one of the asserted patents or knowledge of other patents that share the same inventor as one of the asserted patents is insufficient.").

In discovery, Mad Dogg made the puzzling argument that Peloton had notice of the Asserted Patents merely because one of Peloton's founders, Tom Cortese, "personally rode" a Mad

Dogg eSpinner at some point in 2014, years before either of the Asserted Patent issued.  Gross Decl. Ex. 12 (Pl.'s Second Suppl. Resps. to Def.'s Second Interrogs.) at No. 28.  This is irrelevant and proves nothing about willfulness, ███████████████████████████████████████

███████████████████.  Gross Decl. Ex. 16 (Cook Dep. Tr.) at 132:14-22 ██████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████.  By Mad Dogg's own admission, ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████   *See* Gross Decl. Ex. 4 (Baudhuin Dep. Tr.) at 270:2-10 █████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████.  Mad Dogg released the eSpinner in 2008, nine years before the issuance of the '240 patent, and ten years before the issuance of the '328 patent.  Gross Decl. Ex. 15 (Golenz Rpt.) ¶ 56; Gross Decl. Ex. 1A ('240 patent) (issued July 4, 2017); Gross Decl. Ex. 1B ('328 patent) (issued Nov. 27, 2018).  And it is undisputed that the eSpinner was never marked with the numbers of the Asserted Patents.  *See* Gross Decl. Ex. 8 (Rawls Non-Infringement Rpt.) ¶¶ 474-76.  Thus, even if Mr. Cortese rode an eSpinner in 2014, it could not have put him or Peloton on notice of the Asserted Patents because those patents did not exist yet, and it is undisputed that the eSpinner does not practice those patents and is not marked with them.

Finally, Mad Dogg erroneously suggests that Peloton had an affirmative duty to investigate patents in its field prior to creating the Peloton Bike.  *See* Gross Decl.  Ex. 12 (Pl.'s Second Suppl. Resps. to Def.'s Second Set of Interrogs. (Nos. 25-32)) at No. 28 ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ This is not the law, and the Court should reject the argument.  *See, e.g.*, *Halo*, 136 S. Ct. at 1935 (Section 298 rejects "an 'affirmative duty' to obtain advice of counsel prior to initiating any possible infringing activity").  In short, Mad Dogg has come forward with no evidence of willful infringement before the commencement of this lawsuit, and separately, it is undisputed that Peloton was not aware of the Asserted Patents and had no indication that it allegedly infringed them.

### 2.   Mad Dogg's Failure of Proof on Post-Suit Willfulness

Mad Dogg also has failed to show any willful or egregious conduct by Peloton after its complaint was filed.  Gross Decl. Ex. 12 (Pl.'s Second Suppl. Resps. to Def.'s Second Set of Interrogs. (Nos. 25-32)) at No. 28.  The undisputed facts show that upon learning of the allegations in this action, Peloton immediately investigated them and formed a good-faith belief that the Asserted Patents were not infringed and were invalid on several grounds.  *See generally* Gross Decl. Ex. 6 (Def.'s Resps. to Pl.'s First Set of Interrogs. to Def. (Nos. 1-11)) at No. 1; ECF No. 27 (Peloton's Mot. to Dismiss); Gross Decl. Ex. 7 (Def.'s Invalidity Contentions) at 55-59; Gross Decl. Ex. 8 (Rawls Non-Infringement Rpt.) ¶ 166; Gross Decl. Ex. 9 (Rawls Invalidity Rpt.) ¶¶ 485, 534, 619; Gross Decl. Ex. 5 (Cortese Dep. Tr.) at 230:5-11 ███████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████; *id.* at 232:18-25 ████████

████████████████████; *id.* at 233:17-20 ███████████████████████████

███████████████████████████████████████████████████████.

Mad Dogg's failure to identify any deliberate conduct, and Peloton's good faith and reasonable

belief that the Asserted Patents are not infringed and are invalid, show that there is no genuine dispute of material fact that Peloton has not willfully infringed since this suit was filed.

At bottom, Mad Dogg's willfulness claim rests on nothing more than innuendo.  It is not supported by facts that could establish the sort of egregious misconduct that *Halo* requires to take a willfulness allegation to trial.  Respectfully, summary judgment of no willfulness is in order.

### B.   The undisputed facts show that Mad Dogg failed to mark its patented products, compelling summary judgment of no pre-suit damages.

Mad Dogg is not entitled to recover pre-suit damages as a matter of law because of its failure to mark its patented products with its patent numbers.  It is undisputed that Mad Dogg sells patented articles, providing their essential components along with instructions to assemble and use the patented articles.  This triggers the marking requirement that Mad Dogg has failed to satisfy.  In this situation, "no damages shall be recovered" from the period before Peloton had actual notice of Mad Dogg's infringement claims.  35 U.S.C. § 287(a).

As an example, Mad Dogg sells the Chrono.  Mad Dogg admits that the Chrono practices the Asserted Patents when coupled with "a computer programmed with the . . . Spinning Digital App," which is a software application that Mad Dogg provides to its customers to run on their own computers, including smartphones or tablets.  Gross Decl. Ex. 13 (Cook Dep. Ex. 19) at 3; *see also* Gross Decl. Ex. 16 (Cook Dep. Tr.) at 286:9-12; Gross Decl. Ex. 2 (Pl.'s Disclosure of Asserted Claims and Infringement Contentions) at 3-4; Gross Decl. Ex. 32 (Paulus Validity Expert Rpt.) ¶¶ 74-75.  Mad Dogg has sold the Chrono since December 2017 and the Spinning Digital App since November 2017, and has been instructing its customers to use the Spinning Digital App with the Chrono since December 2017.  *See* Gross Decl. Ex. 17 (Pl.'s Resps. and Objs. to Def.'s Third Set of Interrogs. (Nos. 33-36)) at No. 33 (███████████████████████████ ███); *id.* at No. 34 ████████████████████████.  There is no genuine dispute

13

that Mad Dogg has sold the patent-practicing Chrono and Spinning Digital App since December 2017.

It also is beyond dispute that Mad Dogg did not attempt to mark these products with its patent numbers ███████████████████████, *see* Gross Decl. Ex. 16 (Cook Dep. Tr.) at 344:10-23, and even then, Mad Dogg failed to mark them effectively.  *See infra* Section V.B.2. Indeed, prior to filing this lawsuit, Mad Dogg *never* properly marked any products with the numbers of the Asserted Patents.  *Id.*  Since it is also undisputed that Mad Dogg did not provide Peloton with actual notice of Peloton's alleged infringement of the Asserted Patents before filing its complaint in December 2020, Mad Dogg is not entitled to pre-suit damages and summary judgment is in order.

To recover pre-suit damages, a patentee must give an alleged infringer either constructive or actual notice of the alleged infringement.  Constructive notice occurs when a patentee affixes the relevant patent number to any article it makes or sells that practices the patent.  35 U.S.C. § 287(a); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) ("*Arctic Cat I*").   Section 287 "prohibits a patentee from receiving *any* damages in a subsequent action for infringement after a failure to mark, rather than merely a reduced amount of damages in proportion to the amount of time the patentee was actually practicing the asserted patent."  *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 865 (Fed. Cir. 2020) ("*Arctic Cat II*").  "[O]nce a patentee (or its licensee) is non-compliant with § 287, recovery of damages is limited to either the period after marking resumes or after the alleged infringer has been given actual notice."  *Team Worldwide Corp. v. Acad., Ltd.*, No. 19-cv-00092-JRG-RSP, 2021 WL 1854302, at *2 (E.D. Tex. May 10, 2021) (citing *Arctic Cat I*, 950 F.3d at 864); *see also Adrea, LLC v. Barnes & Noble, Inc.*, No. 13-cv-4137 (JSR), 2015 WL 4610465, at *3 (S.D.N.Y.

14

July 24, 2015) ("The statute is clear that, where plaintiff fails to mark its patented articles, it may not recover damages until after it gives actual notice to the accused infringer." (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997))), abrogated on other grounds.  After an alleged infringer satisfies the "low bar" of identifying an unmarked patented article subject to § 287(a), the patentee bears the burden of proving its compliance with the marking requirement.  *Arctic Cat I*, 876 F.3d at 1367-68.

The statutory marking requirement is triggered by "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them." 35 U.S.C. § 287(a).  This applies to patentees that sell "less than the entire 'patented article,' but with instructions to its customers to assemble the product actually sold with other components in accordance with the patent-in-suit."  *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. 01cv344, 2004 WL 5268123, at *22 (E.D. Tex. Aug. 4, 2004) (citing 35 U.S.C. § 287(a)).  As the Federal Circuit has made clear, selling component parts of a patented article creates an "implied license" through which customers make or use the patented article "for or under" the patentee, giving rise to a duty for the patentee to mark the component.  *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).

### 1.   Mad Dogg had a duty to mark.

Mad Dogg's virtual marking website is an undisputed admission that the Chrono bike, along with the Spinning Digital App on a user's smartphone or tablet, practices the Asserted Patents.  *See* Gross Decl. Ex. 13 (Cook Dep. Ex. 19); *see also Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1309 (Fed. Cir. 2013) ("[t]he practice of marking a product with a patent number is a form of extrajudicial admission that the product falls within the patent claims.").  Consistent with this admission, Mad Dogg's expert concedes that ███████████████████

15

███████████████████████████████████████████████████████████████

██████████████ *See, e.g.*, Gross Decl. Ex. 32 (Paulus Validity Expert Rpt.) ¶ 74-75 (███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████).

These admissions necessarily follow from the undisputed features of the Chrono and Spinning Digital products.  As its name implies, the Chrono Power bike can "measure and display power," Gross Decl. Ex. 14 at MDA_0101863, without the addition of a separate component or computer.  *See* Gross Decl. Ex. 16 (Cook Dep. Tr.) at 286:9-12.  Thus, while the Spinning Digital App alone may lack power-related features required by the Asserted Claims (and the Chrono alone may lack internet connectivity), the combination of a Spinning Digital-enabled user device and the Chrono practices the Asserted Patents, as Mad Dogg admits.

Though Mad Dogg itself does not sell the computers or smartphones that its customers use to run its Spinning Digital App,[1] that does not negate the implications of Mad Dogg selling the Chrono *with* Spinning Digital *while* instructing its customers to "assemble the product actually sold with other components in accordance with the patent-in-suit."  *Mass. Inst. of Tech.*, 2004 WL 5268123, at \*22.  Mad Dogg designed the Chrono to be used with smartphones and tablets, *see* Gross Decl. Ex. 15 (Golenz Infringement Expert Rpt.) ¶ 60 (Chrono "is compatible with phone/tablet mounts"), and it advertises and bundles Chrono with a subscription to Spinning Digital, which is available on computer platforms such as iOS and Android.  *See* Gross Decl. Ex. 18 (December 2017 marketing email explaining that Chrono "[p]urchase includes . . . a free

---

[1] Referring to ████████████████████ Mad Dogg admits that its products █████████████ Gross Decl. Ex. 16 (Cook Dep. Tr.) at 265:17-20.

year-long subscription to SPINtv™"[2]); *see also* Gross Decl. Ex. 19 (MDA_0122556) at MDA_0122584, MDA_0122649 (bundling Chrono with SPINtv (*i.e.*, Spinning Digital) in 2018); Gross Decl. Ex. 20 (MDA_0137204) ████████████████████████████████████ ███████████████████████████████████████. Faced with these undisputed facts, Mad Dogg cannot manufacture a genuine dispute by insisting that it ████████████████ ████████████████████████████ Gross Decl. Ex. 33 (Pl.'s Second Suppl. Resps. and Objs. to Peloton's First Set of Interrogs. (1-24)) at No. 2. Mad Dogg had a duty to mark the Chrono and its Spinning Digital App with its patent numbers. *Amsted*, 24 F.3d at 185.

This conclusion is underscored by Mad Dogg's explicit instructions to customers to practice the Asserted Patents. On its "Next-Evolution" webpage, for example, Mad Dogg advertises the Chrono (and its other bike products) alongside SPINtv (*i.e.*, Spinning Digital). This website, which has been live since in or around November 2017,[3] invites customers to "Bring the Studio Home" by "combining the next generation of Spinner® bikes with our brand new home streaming service of Spinning® Master Instructor-led rides for every occasion—SPINtv® [*i.e.*, Spinning Digital]." Gross Decl. Ex. 21 (MDA_0122153) at MDA_0122154-55 (website mockup). This SPINtv website instructs customers to "Create the Ultimate Home Fitness Experience" by "STEP 1: Choose Your Bike" (including the Chrono), followed by "Step 2: Choose Your Ride" by streaming SPINtv's exercise routines on the customer's "favorite mobile device." *Id.*

---

[2] SPINtv was "rebranded" and is "now called Spinning Digital." *See* Gross Decl. Ex. 24 (Degtjarewsky Dep. Tr.) at 54:21-55:6.

[3] There are no substantive differences between Mad Dogg's "Next Evolution" website mockup, created on November 14, 2017 as per its document metadata, and the "Next Evolution" website today, which is still live as of this writing. *Compare* Gross Decl. Ex. 21 (MDA_0122153) at MDA_0122154-55) (website mockup) *with* Gross Decl. Ex. 22 (9/2/2021 website PDF).

Because Mad Dogg has long sold the Chrono *with* Spinning Digital *and* instructed its customers to use them with iOS and Android devices, evincing a clear "expectation that [its customers] would use" those products to practice the Asserted Patents, Mad Dogg had a duty under Section 287(a) to mark both the Chrono and Spinning Digital App.  *Amsted*, 24 F.3d at 184.

2.   <u>Mad Dogg's 2020 attempts at patent marking are deficient.</u>

Mad Dogg concedes it did not mark the Chrono ████████████████████, despite the patented article being available since 2017.  *See* Gross Decl. Ex. 16 (Cook. Dep. Tr.) at 344:10-23.  The inquiry into whether Mad Dogg complied with the marking statute—and it plainly did not, at least between 2017 and ████—can end here.  However, even after ████████, Mad Dogg's attempted marking did not come close to satisfying Section 287(a) as a matter of law.

In order to comply with Section 287(a), a patentee's virtual marking website must "associate the patent and the patented article . . .  even where a patentee may use a single website to mark multiple products."  *VLSI Tech. LLC v. Intel Corp.*, No. 19-CV-977-ADA, 2021 WL 2773013, at *3-4 (W.D. Tex. Apr. 12, 2021) (adopting the reasoning of and quoting *Mfg. Res. Int'l v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 577-78 (D. Del. 2019)).  While a "manifestly obvious typographical error" will not necessarily show non-compliance, *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1356 (Fed. Cir. 2002), ambiguity or confusion in the language used in an attempt to mark, caused by error or otherwise, can amount to a failure to mark as a matter of law.  *Cf. VLSI Tech.*, 2021 WL 2773013, at *3-4 ("[s]imply listing all patents that could possibly apply to a product or all patents owned by the patentee on the patentee's marking website does not give the public notice.  *It merely creates a research project for the public*.") (emphasis added).

Here, Mad Dogg cannot establish that it properly marked the Chrono (let alone "substantially all" of its other patented articles) *even after* its virtual marking website was published. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (finding plaintiff must show "substantially all of the [patented articles] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous.").

First, Mad Dogg's virtual marking website is laden with errors in its attempts to mark the Chrono, and at least ten of Mad Dogg's other twelve patent-practicing articles. This patchwork of inaccuracy creates the sort of "research project for the public" that courts have warned about as failing to comply with the marking statute. *VLSI Tech.*, 2021 WL 2773013, at *3-4. The many errors pervading the virtual marking website underscore the lack of compliance with Section 287(a). For example:

- Mad Dogg's virtual marking website falsely states that the Chrono practices the '328 patent "where additionally configured with a Studio Power Crank." Gross Decl. Ex. 13 (Cook Dep. Ex. 19). As discussed above, it is undisputed that the Chrono does not need a separate crank or computer to measure, calculate, and display power. *See* Gross Decl. Ex. 16 (Cook Dep. Tr.) at 286:9-12. Mad Dogg's failure to mark the Chrono as patented when it is *not* "additionally configured with a Studio Power Crank" is an ongoing failure to mark the patented article.

- The website describes the JGS, A1, A3, A5, P1, P3, and P5 bikes, "where additionally configured with a Studio Power Crank," as "protected by" the '328 patent. Gross Decl. Ex. 13 (Cook Dep. Ex. 19). But as Mr. Cook admitted, these seven bikes are not compatible with and cannot be used with the Studio Power Crank. *See, e.g.*, Gross Decl. Ex. 16 (Cook Dep. Tr.) at 283-295 (including: ████████████████████

19

██████████████████████████).  This is no minor typo that would be "manifestly obvious" to a reader.  *Allen Eng'g*, 299 F.3d at 1356.  It is a factual error that falsely identifies combinations of components that are incompatible with one another, as though they are patented.

- Mad Dogg also erroneously claims that at least the JGS, A1, A3, A5, P1, P3, P5, Ride, Shift, and Climb bikes practice the '240 patent *without* being configured with a power crank or any other device capable of measuring, calculating, or storing power.  Gross Decl. Ex. 13 (Cook Dep. Ex. 19).  However, without some sort of power device, these products cannot meet the '240 patent's claim limitations relating to storing, displaying, or calculating power.  Gross Decl. Ex. 16 (Cook Dep. Tr.) at 124:6-9, 125:4-8, 125:17-23, 249:6-250:1; *see also, e.g.*, Gross Decl. Ex. 1A ('240 patent) at Cl. 1 ("stores power exerted by the rider"; "displays power exerted by the rider").  This error, identifying products that admittedly do not practice the patent claims as patented articles, renders this attempt at marking defective and erroneous.

- Mad Dogg fails to mark (or even mention) on its web page the ION or Rally bikes that Mad Dogg claims practice the Asserted Patents ████████████████████████

  ████████████████████████████████████████████

  ████████████████████████████████████████████

  ████████████████████████████████████████████

  ███████████████   Gross Decl. Ex. 2 (Pl.'s Disclosure of Asserted Claims and Infringement Contentions) at 3-4.  It is undisputed that Mad Dogg sold the ION or Rally bikes in 2018 and 2019.  *See* Gross Decl. Ex. 34 (MDA_0069837).  Mad Dogg's total failure to mark these patented articles is yet another example of its failure to mark.

- Mad Dogg's website erroneously claims that at least the JGS, A1, A3, A5, P1, P3, P5, Ride, Shift, and Climb bikes practice the '240 and '328 patents "when configured . . . with a computer programmed with the Spinning Connect App, *Spinning Digital App* or Spinning Digital + App" and "[w]here the computer in the above-described configuration is connected with the Internet or other network to access a collection of exercise routines." Gross Decl. Ex. 13 (Cook Dep. Ex. 19).  However, the "Spinning Digital App" does not display ██████████████████████████████ and thus cannot meet the power-related limitations of the Asserted Patents.  Gross Decl. Ex. 23 (MDA_0036736) at MDA_0036737; *see also* Gross Decl. Ex. 24 (Degtjarewsky Dep. Tr.) at 138:12-24; Gross Decl. Ex. 1A ('240 patent) at Cl. 1.  The JGS, A1, A3, A5, P1, P3, P5, Ride, Shift, and Climb bikes cannot practice the claims while "configured . . . with" only the "Spinning Digital App" as Mad Dogg's website falsely states.

- Conversely, the "Spinning Connect App" does not include ████████████ ████ and thus cannot meet the instructions-related limitations of the Asserted Patents. Gross Decl. Ex. 23 (MDA_0036736) at MDA_0036737 (Spinning Connect has ████████████ whereas Spinning Digital has ████████████████); *see also* Gross Decl. Ex. 24 (Degtjarewsky Dep. Tr.) at 148:24-149:13 ████████████ ████████████; Gross Decl. Ex. 1A ('240 patent) at Cl. 1.  Therefore, at least the JGS, A1, A3, A5, P1, P3, P5, Ride, Shift, Climb, and Chrono bikes cannot practice the claims while "configured with" only the "Spinning Connect App," contrary to what Mad Dogg says on its virtual marking website.

Any one of the above errors *alone* deprives the public of proper notice under Section 287(a) because they do not accurately identify the patented articles or correctly associate them with Mad

Dogg's patents.  Collectively, these defects confirm as a matter of law that Mad Dogg has failed to sufficiently mark its patented articles since 2017.  *See Egenera, Inc. v. Cisco Sys.*, No. 16-11613-RGS, 2021 WL 2582406, at *9 (D. Mass. June 23, 2021) (finding patentee's marking to be defective as a matter of law because a user would be unable to identify the combination of products necessary to make a patented article from the virtual marking).

Additionally, though Mad Dogg's virtual patent marking website allegedly went live on ████████████, Gross Decl. Ex. 16 (Cook. Dep. Tr.) at 344:10-23, it is undisputed that Mad Dogg did not affix to its bikes the labels directing the reader to that website until after ██████████ ██████████████████████████████████████████████████ *See id.* at 312:9-20, 316:8-25; *see also* Gross Decl. Ex. 25 (Cook Dep. Ex. 22) ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (emphasis added).  A virtual marking website does not comply with Section 287(a) where the corresponding physical components are not marked to direct to such a website.  *See Egenera*, 2021 WL 2582406, at *9 (entering summary judgment of no pre-suit damages because physical component of the patented hardware/software combination were not marked).  Accordingly, Mad Dogg's attempted patent marking is deficient as a matter of law, and it is not entitled to recover pre-suit damages.

### 3.   Mad Dogg did not provide actual notice before filing suit.

Since Mad Dogg cannot demonstrate constructive notice through proper marking, Mad Dogg bears the burden of proving when it provided Peloton with actual notice of infringement to start the period in which it may be entitled to recover damages.  *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005).  Actual notice requires the *patentee* to communicate

a charge of infringement of specific patents by specific products prior to filing suit.  *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *see also Amsted*, 24 F.3d at 187; *Robert Bosch LLC v. Alberee Prods., Inc.*, No. 12-574-LPS, 2015 WL 5576746, at *3 (D. Del. Sept. 16, 2015) (holding on summary judgment that third-party email did not satisfy the notice requirement because it was not an affirmative act by the patentee).

It is undisputed that Mad Dogg provided no such notice, *see* Gross Decl. Ex. 4 (Baudhuin Dep. Tr. vol. 2) at 501:1-12; Gross Decl. Ex. 3 (Pl.'s Resps. and Objs. to Def.'s Revised Reqs. for Admis. (Nos. 1-38)) at No. 4, and in failing to do so, Mad Dogg forfeited any pre-suit damages to which it might otherwise be entitled.

## VI.    CONCLUSION

For the reasons discussed above, Peloton respectfully requests that the Court grant its motion for summary judgment of no willfulness and no pre-suit damages.

Dated:  September 14, 2021            Respectfully submitted,

*/s/* Gabriel S. Gross
Gabriel S. Gross
California Bar No. 254672
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: gabe.gross@lw.com

***COUNSEL FOR DEFENDANT PELOTON INTERACTIVE, INC.***

OF COUNSEL:

Steven N. Feldman
New York Bar No. 4775052
Benjamin Zachary Bistricer

23

New York Bar No. 5590922
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: steven.feldman@lw.com
Email: ben.bistricer@lw.com

Douglas E. Lumish
California Bar No. 183863
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com

Sarah M. Gragert
Ethan Lawrence Plail
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2384
Facsimile: (202) 637-2201
Email: sarah.gragert@lw.com
Email: ethan.plail@lw.com

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: kimberly.li@lw.com

Melissa R. Smith
TX State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document was filed electronically on September 14, 2021, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.  Any other counsel of record will be served by first class U.S. mail on this same date.

<div style="margin-left:50%">

*/s/* Gabriel S. Gross
Gabriel S. Gross

</div>

## <u>CERTIFICATION OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.


/s/ Gabriel S. Gross
Gabriel S. Gross