## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

MAD DOGG ATHLETICS, INC.

                Plaintiff,

      v.

PELOTON INTERACTIVE, INC.

                Defendant.

Case No.  2:20-cv-00382-JRG

**FILED UNDER SEAL**

JURY TRIAL DEMANDED

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON JUDICIAL ESTOPPEL GROUNDS

<u>**TABLE OF CONTENTS**</u>

**Page**

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND ........................................................................................1

    A.    Mad Dogg's Bankruptcy.......................................................................1

    B.    John Baudhuin was aware of Mad Dogg's potential litigation claims
         against Peloton during the Bankruptcy Case. ..........................................3

    C.    Mr. Baudhuin testified ██████████████ and later
         confessed that his testimony was false......................................................4

    D.    Mr. Baudhuin acknowledged Mad Dogg's deception to the Bankruptcy
         Court and is seeking to appoint an independent fiduciary to take over Mad
         Dogg's claims. ..................................................................................6

    E.    Mad Dogg represented to this Court that no money will ever flow to Mad
         Dogg on account of the claims asserted in this action. ...............................8

III.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ....................9

IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS .................................9

V.    JUDICIAL ESTOPPEL BARS MAD DOGG'S CLAIMS. ...........................12

    A.    Mad Dogg's pursuit of its patent infringement claims is plainly
         inconsistent with its representation to the Bankruptcy Court that no such
         claims exist......................................................................................14

    B.    The Bankruptcy Court accepted Mad Dogg's concealment of its litigation
         claims by confirming Mad Dogg's bankruptcy plan. ..............................16

    C.    Mad Dogg's failure to list its claims against Peloton was not
         "inadvertent."...................................................................................16

         1.    Mad Dogg admits it had knowledge of the undisclosed claims................17

         2.    Mad Dogg was motivated to conceal its claims.........................18

VI.   SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO
      REAL PARTY IN INTEREST WITH STANDING TO PURSUE MAD DOGG'S
      CLAIMS. ...............................................................................................20

VII.  CONCLUSION...........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abreu v. Zale Corp.*,
   2013 WL 1949845 (N.D. Tex. May 13, 2013) ....................................................13, 15, 16, 18

*Allen v. C&H Distribs., L.L.C.*,
   813 F.3d 566 (5th Cir. 2015) ...............................................................................................13

*Anderson v. Entergy Operations, Inc.*,
   2012 WL 5400059 (S.D. Miss. Nov. 5, 2012).......................................................................15

*Austin v. McNamara*,
   2007 WL 5787498 (E.D. Tex. Mar. 30, 2007) .....................................................................17

*Brandon v. Interfirst Corp.*,
   858 F.2d 266 (5th Cir. 1998) ...............................................................................................12

*Cannon-Stokes v. Potter*,
   453 F.3d 446 (7th Cir. 2006) ...............................................................................................13

*In re Coastal Plains*,
   179 F.3d 197 (5th Cir. 1999) ........................................................................................ *passim*

*Edwards v. Huntington Ingalls, Inc.*,
   2011 WL 3891872 (S.D. Miss. Aug. 29, 2011).....................................................................16

*Feist v. Consol. Freightways Corp.*,
   100 F. Supp. 2d 273 (E.D. Pa. 1999), aff'd, 216 F.3d 1075 (3d Cir. 2000) ...........................20

*In re Flugence*,
   738 F.3d at 130 ...............................................................................................................15, 16

*Jethroe v. Omnova Sols., Inc.*,
   412 F.3d 598 (5th Cir. 2005) ...................................................................................13, 16, 17

*Leventhal v. Schenberg*,
   917 F. Supp. 2d 837 (N.D. Ill. 2013) ..................................................................................20

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
   798 F.3d 265 (5th Cir. 2015) ...............................................................................................13

*Love v. Tyson Foods, Inc.*,
   677 F.3d 258 (5th Cir. 2012) .........................................................................................13, 18

*Maxie v. Dolet Hills Lignite Co., L.L.C,*
 2008 WL 4762982 (W.D. La. Oct. 28, 2008) ........................................................................18

*Reed v. City of Arlington,*
 650 F.3d 571 (5th Cir. 2011) ................................................................................................13

*Reynolds v. C.I.R,*
 861 F.2d 469 (6th Cir. 1988) ................................................................................................12

*In re Superior Crewboats, Inc.,*
 374 F.3d 330 (5th Cir. 2004) ......................................................................................... *passim*

*Wieburg v. GTE Southwest Inc.,*
 272 F.3d 302 (5th Cir. 2001) ................................................................................................20

## STATUTES

11 U.S.C.
 § 521...........................................................................................................................................20
 § 521(a)(1)(B) ..........................................................................................................................14
 § 541...........................................................................................................................................20
 § 554...........................................................................................................................................20

18 U.S.C.
 § 152......................................................................................................................................8, 14
 § 157...........................................................................................................................................14

## I.      INTRODUCTION

It is black letter law that where a debtor fails to disclose potential litigation claims—*i.e.*, estate assets—to a federal bankruptcy court and the bankruptcy court then confirms the debtor's plan of reorganization without knowing about those claims, the reorganized debtor is judicially estopped post-bankruptcy from asserting or benefitting from those claims.

It is undisputed that while Mad Dogg was in bankruptcy in 2019 and 2020, John Baudhuin—Mad Dogg's CEO and sole shareholder—was acutely aware of the patent infringement claims that Mad Dogg now asserts against Peloton, and that Mad Dogg did not disclose those claims to the bankruptcy court.  That is textbook judicial estoppel.  Mad Dogg and Mr. Baudhuin are therefore barred as a matter of law from pursuing or benefitting from the claims asserted in this action.

Further, as Mad Dogg has conceded, the potential patent infringement claims that Mad Dogg failed to disclose to the Bankruptcy Court are assets of the bankruptcy estate.  Therefore, Mad Dogg lacks standing to assert those claims, and without any real party in interest to pursue the patent infringement claims in this action, they should be dismissed.

Accordingly, Peloton respectfully requests that the Court grant summary judgment for Peloton as Mad Dogg is judicially estopped from pursing its claims in their entirety and, in any event, lacks standing.

## II.     BACKGROUND

### A.      <u>Mad Dogg's Bankruptcy.</u>

On July 26, 2019 (the "<u>Petition Date</u>"), Mad Dogg commenced in the United States Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>") a chapter 11 proceeding (the "<u>Bankruptcy Case</u>").  *See* Declaration of Michael J. Reiss ("Reiss Decl."), ¶ 3, Ex.

1.[1]  Like all debtors, Mad Dogg was required to disclose to the Bankruptcy Court and its creditors all of its assets, including specifically any potential litigation claims against third parties.

Mad Dogg admits that during the pendency of its Bankruptcy Case, which did not finally close until December 23, 2020 (after Mad Dogg filed its lawsuit against Peloton), it never disclosed to its creditors or the Bankruptcy Court that it had any potential or actual patent infringement claims against Peloton.  *See* Ex. 2 at 5; ECF No. 1.  To the contrary, Mr. Baudhuin signed two sworn disclosures attesting that Mad Dogg was not aware of any potential litigation claims against Peloton that might bring money into the estate.  Exs. 3, 4.  Furthermore, in Mad Dogg's bankruptcy valuation report (dated April 30, 2020), Mad Dogg's valuation expert rested his opinion regarding Mad Dogg's value on representations from Mad Dogg's "management" that Mad Dogg's patents "are more for defensive purposes," and that "[a]ctively enforcing the patents, should the Company choose to do so, would be expensive and probably not successful."  Ex. 5 at 7; *id*. at 12 ¶ 183.[2]

On June 29, 2020, the Bankruptcy Court confirmed Mad Dogg's plan of reorganization (the "Plan").  Exs. 6, 7.  The Plan includes 11 classes of creditors, and provides that 10 of the 11 classes are to be paid in full by Mad Dogg according to specific payment schedules.  Mr. Baudhuin himself, either directly or indirectly, is the creditor for the claims for Class 1 (the Baudhuin Senior Secured Claim), Class 3 (the Syrac Secured Claim), Class 4 (the Phoenix Secured Loan), Class 5 (the Baudhuin Secured Claim) (together, the "Baudhuin Secured Debt"), and Class 6 (the Baudhuin DIP[3] Secured Claim).  *See generally* Ex. 8 at 48-56.  Pursuant to the Plan, only Class 9

[1] All Ex. references are to Exhibits attached to the Declaration of Michael J. Reiss, filed concurrently herewith.

[2] Mad Dogg's expert identified Mr. Baudhuin and Mad Dogg's CFO, Jay Marvin, as the "management" with whom he spoke in preparing his expert report.  *See id*. at 10.

[3] Mr. Baudhuin provided a secured DIP (debtor-in-possession) loan of $500,000 to the debtor. *See* Ex. 2.

2

(the "General Unsecured Claims") will never recover in full, with the General Unsecured Claims receiving only 51% of the amount of debt owed to them by Mad Dogg, according to a payment schedule.  *Id.*, Ex. 6.  Mad Dogg represents that it is current on its payments to the creditors and that it intends to remain current.  Ex. 2.

Pursuant to the Plan, Mr. Baudhuin infused $500,000 of new cash, converted his $500,000 court-approved secured DIP financing to equity, and became owner of 100% of the equity of the reorganized debtor.  Ex. 6; Ex. 2 at 7.  In other words, he was able to retain sole ownership of all the equity of his company and avoid or extend most of its repayment obligations.  Under the Plan, Mr. Baudhuin (and his non-debtor affiliated entities) also received releases from the debtor of all claims against them, as well as indemnification for any claims that arise from or relate to Mad Dogg's business operations or claims against Mad Dogg.  Ex. 6.

On June 29, 2020, the Bankruptcy Court entered an order closing the case on an interim basis.  Ex. 9.  The Bankruptcy Case was closed on a final basis on December 23, 2020.  Ex. 2.

**B.**   **John Baudhuin was aware of Mad Dogg's potential litigation claims against Peloton during the Bankruptcy Case.**

It is undisputed that Mad Dogg, and specifically its CEO and founder, Mr. Baudhuin, was aware of Mad Dogg's potential litigation claims against Peloton both before and during Mad Dogg's Bankruptcy Case.  The evidence of this is overwhelming:

- ███████████████████████████████████████████████ Exs. 10-12, 37; Ex. 13 at 78:18-79:13.

- ███████████████████████████████████████████████ Exs. 15-16; Ex. 17 at 33:10-14, 45:12-47:11.

- ███████████████████████████████████████████████ *See, e.g.,* Exs. 18-20; Ex. 29 at 53:7-56:11, 137:6-139:12.

3

- In September 2019, Mr. Baudhuin and Mad Dogg's agents discussed and explored a lawsuit against Peloton:

    1. Mr. Baudhuin admitted that Mad Dogg's attorney, Paul Robinson, contacted Milbank LLP about evaluating Mad Dogg's potential patent infringement claims that may exist against Peloton (Ex. 21);

    2.  (Ex. 22; *see also* Ex. 36); and

    3. ████████████████ Ex. 23; Ex. 29 at 130:24-139:24.

- ██████████████████████████████████████. Ex. 24. ██████████████████████████████. Ex. 25.

- ████████████████████████████████████████████████ Ex. 26.

- ████████████████████████████████████████████████ Ex. 21 at ¶ 8.

- ████████████████████████████████████████████████ Ex. 28.

**C.** **Mr. Baudhuin testified that** ██████████████████████ **and later confessed that his testimony was false.**

On December 14, 2020, Mad Dogg initiated this action against Peloton, alleging infringement of two patents issued by the Patent Office on July 4, 2017, and November 27, 2018.[4]

---

[4] Mad Dogg alleges that the Peloton Bike and Bike+ infringe the asserted patents in substantially the same way. *See, e.g.*, ECF No. 1 at ¶¶ 29, 54. In particular, for claim limitations of the asserted independent claims, Mad Dogg's expert Mr. Golenz ██████████████████████████████████████████████████████████████████████████

ECF No. 1.  Mad Dogg claims the patent infringement claims are worth in excess of ████████

████████████████████████████████████████████████████████. Ex. 31

at ¶ 30.

At Mr. Baudhuin's deposition on July 16 and July 17, 2021, ████████████████████



████████████████████ *See, e.g.,* Ex. 27 at 144:17-145:11; 352:15-353:5; 353:13-354:10; 355:3-

356:2; 360:9-19; 362:7-24; 373:22-374:4.  Mr. Baudhuin further testified that ████████████

████████████████████ *See id*. at 361:9-10, 362:18-20.

The  discovery  that  followed  showed  that  Mr. Baudhuin's  testimony  was  false.   Peloton

sought  discovery  from  multiple  sources,  including  Mad  Dogg  and  third  parties,  to  ascertain

precisely when Mr. Baudhuin became aware of Mad Dogg's potential patent infringement claims

against  Peloton.   To  impede  this  investigation,  and  as  detailed  in  Peloton's  *Motion  to  Compel*

*Regarding Mad Dogg's Concealment of Claims from the Bankruptcy Court (Motion No. 1),* ECF

─────────────────────

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████.

No. 97, Mad Dogg asserted specious privilege objections and withheld inculpatory documents. Despite the obstruction, Peloton exposed sufficient facts through discovery that established decisively that Mad Dogg was aware of Mad Dogg's potential patent infringement claims while it was still in bankruptcy and failed to disclose the potential claims to the Bankruptcy Court or creditors.   On July 27, 2021, Peloton sent Mad Dogg a letter outlining these objective and undeniable facts, and advising Mad Dogg that Peloton would raise judicial estoppel as a defense in this action.  Ex. 32.

On August 1, 2021, Mad Dogg responded with a declaration from Mr. Baudhuin which sought to ███████████████████████.  Ex. 21.  This declaration amounts to ██ ████████████████████████████████████████████████████████████ ███████████.  After adamantly denying under oath ████████████████████ ████████████████████, Mr. Baudhuin conceded that in or around September 2019, Mr. Robinson began looking "for counsel to evaluate Mad Dogg's … potential patent infringement claims that may exist against Peloton" and that starting "in late 2019 or early 2020," Milbank was looking into "potential patent infringement claims that may exist against Peloton." *Id.* ¶¶ 6-7. █████████████████████████████ ████████████████████████ *Id.* ¶ 7.

Mr. Baudhuin's declaration omitted other details regarding his awareness of the claims, which Peloton later discovered when Mad Dogg withdrew some of its specious privilege assertions, including that ████████████████████████████████████ ███████████████████████████████████████████.  Ex. 22.

### D.   Mr. Baudhuin acknowledged Mad Dogg's deception to the Bankruptcy Court and is seeking to appoint an independent fiduciary to take over Mad Dogg's claims.

On August 13, 2021, Mad Dogg filed a motion in the Bankruptcy Court seeking to reopen

the Bankruptcy Case to amend its schedules to include the claims against Peloton and to appoint an independent fiduciary "to administer these assets and use any net litigation proceeds generated to pay creditor claims." Ex. 2.  In that motion, Mad Dogg admitted that its claims against Peloton "arose prior to commencement of th[e] bankruptcy case." *Id.* at 4.  Mad Dogg's Bankruptcy Case was reopened on August 17, 2021.  *See* ECF No. 115-1, Ex. A.

On August 18, 2021, Mad Dogg moved to appoint an independent fiduciary to control and administer the claims at issue in this action.  Ex. 2.  In that motion, Mad Dogg admitted:  "**[T]he Debtor holds patent infringement claims against Peloton (the "Infringement Claims") that should have been, but were not, listed in the Debtor's bankruptcy schedules and/or statement of financial affairs**[.]"  *Id.* (emphasis added); *see also id.* at 9 ("the potential Infringement Claims should have been, but were not, listed in its bankruptcy schedules or otherwise disclosed in the bankruptcy case"); *id.* at 15 (same).

On September 3, 2021, Peloton filed a conditional objection to Mad Dogg's motion, requesting that the Bankruptcy Court clarify that the independent fiduciary could act only on behalf of *innocent* creditors—*i.e.*, that Mr. Baudhuin and Mad Dogg would be excluded from the independent fiduciary's representation.  Ex. 33.  On September 10, 2021, Mad Dogg filed a reply, requesting that the Bankruptcy Court defer to this Court on the adjudication of Peloton's judicial estoppel defense.  Ex. 34.  Mad Dogg's proposed order, attached to its reply, provides that if the independent fiduciary recovers any money on account of the patent infringement claims, then the money would **first** be used to pay Mad Dogg's attorneys' fees and costs and expert and consultancy fees and costs, as well as Mad Dogg's litigation funder, **before** any innocent creditor.  *Id.* at Ex. 1. The proposed order further provides that Mad Dogg will not be permitted to receive any recovery on account of alleged infringement on or prior to June 29, 2020, but leaves Mad Dogg (and so

7

Mr. Baudhuin) free to seek damages for alleged infringement post-dating June 29, 2020.  *Id*.

On September 14, 2021, the United States Trustee (the United States Department of Justice "watchdog" assigned to each bankruptcy case; referred to herein as the "US Trustee") filed its own objection to Mad Dogg's motion.  *See* Ex. 38.  The US Trustee reiterated that "[i]nadvertence or ignorance of the law does not justify a failure to list a known or actual or potential claim on the bankruptcy schedules."  *Id*. at 2.  She further noted that 18 U.S.C. § 152 provides for criminal liability where a person knowingly and fraudulently conceals assets from a bankruptcy court.  *Id*. The US Trustee described the manifest injustice that would result from allowing Mad Dogg to pursue these claims:  "To now allow the debtor to pursue the claim post-bankruptcy would produce an inequitable result whereby the debtor would be rewarded for its omission, while its general non-insider creditors would suffer as non-insider general unsecured creditors are not receiving 100% of their claim."  *Id*. at 3.  Objecting to the fact that Mad Dogg's proposal calls for attorneys to "be paid first from any proceeds of the litigation as will the Liquidating Trustee and the litigation financing company," the US Trustee levied a final blow:  "**It appears that the only creditor to benefit from the appointment of the Liquidation Trustee would be the insider who failed to disclose the asset during the bankruptcy case**."  *Id*. at 4.

E.   **Mad Dogg represented to this Court that no money will ever flow to Mad Dogg on account of the claims asserted in this action.**

On August 19, 2021, at the hearing on Mad Dogg's motion to stay this action (ECF No. 105), Mad Dogg's counsel represented to this Court that Mad Dogg cannot and will not receive any money on account of its patent infringement claims:

> So in this situation, because the fiduciary is being appointed to administer the case, **there's no money that's going to flow to Mad Dogg**. It will not be getting any of the assets.  That's the entire point of seeking the appointment of an independent fiduciary.  That fiduciary is completely in control of the litigation.  It makes all decisions in the litigation, whether to settle, whether not to settle.

8

> **The entire case is administered by the fiduciary and no money is ever going to go into Mad Dogg's hands because the fiduciary is appointed for the benefit of the creditors**.

*See* Ex. 35 (emphasis added).[5]  Mad Dogg further represented to the Court that, if appointed, the independent fiduciary would pursue claims not on behalf of the debtor, but on behalf of Mad Dogg's "innocent[]" creditors.  *See id.* at 44:1-20.

## III.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

The issues to be decided by this Court are:

1.     Whether Mad Dogg is judicially estopped from pursuing its patent infringement claims because Mad Dogg: (a) has asserted plainly inconsistent positions to the Bankruptcy Court (that it had no such claims) and to this Court (that it has such claims); (b) the Bankruptcy Court issued an order confirming Mad Dogg's bankruptcy plan of reorganization, based in part on Mad Dogg's failure to disclose its potential claims against Peloton; and (c) Mad Dogg's nondisclosure was not "inadvertent" as a matter of Fifth Circuit law.

2.     Whether Mad Dogg's patent infringement claims should be dismissed for lack of standing because Mad Dogg is not the real party in interest.

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████.  Exs. 37, 10-12, 13 at 78:18-79:13.

2.     On July 26, 2019, Mad Dogg commenced a chapter 11 proceeding in the United States Bankruptcy Court for the Central District of California.  Exs. 1, 2.

---

[5] Mad Dogg later attempted to walk back these comments, protesting that the representation was somehow taken out of context.  *See* ECF No. 130.  The transcript speaks for itself.

9

3.      Before and during the Bankruptcy Case, ███████████████████████

███████████████████████████████████████████████████████████ .

Exs. 14-16, 18-20, 23-26; Ex. 13 at 42:24-44:1, 69:3-19, 76:16-77:11, 78:18-79:13; Ex. 17 at

31:24-34:3, 38:1-23, 40:14-41:6; Ex. 29 at 50:24-52:25, 53:7-56:11.

4.      ████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████ . Ex. 22.

5.      ████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ Ex. 23; Ex. 29 at 130:24-139:24.

6.      In September 2019, Mr. Baudhuin "had conversations with Paul Robinson in

connection with . . . potentially finding a law firm to assess Mad Dogg's portfolio of patents."

Mr. Baudhuin was further "aware that, in the months following [his] initial communications with

Mr. Robinson, [Mr. Robinson] began to look for counsel to evaluate Mad Dogg's patent portfolio

and any potential patent infringement claims that may exist against Peloton."  Ex. 21.

7.      ████████████████████████████████████████

███████████████████████ . Exs. 24-25.

8.      ████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████ Ex 25.

9.      ████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

████████  Ex. 26.

10.     Mr. Baudhuin, and thus Mad Dogg, was aware during Mad Dogg's Bankruptcy Case that Mad Dogg had potential patent infringement claims against Peloton.  Exs. 1-2, 10-29, 33-39.

11.     Mad Dogg's potential litigation claims against Peloton should have been, but were not, listed in Mad Dogg's bankruptcy schedules or otherwise disclosed to the Bankruptcy Court. Ex. 2; *see also* Exs. 10-29, 33-39.

12.     On June 29, 2020, the Bankruptcy Court confirmed Mad Dogg's plan of reorganization that endowed Mr. Baudhuin with 100% of Mad Dogg's equity and entered an order closing the Bankruptcy Case on an interim basis.  Exs. 6-7; Ex. 2 at 7, 18.

13.     Under Mad Dogg's plan of reorganization, creditors holding General Unsecured Claims will receive only 51% of the debts owed to them by Mad Dogg.  Exs. 2, 6, 7, 38.

14.     On July 6, 2020, Mad Dogg formally hired Milbank as its patent litigation counsel after discussing with Milbank potential claims against Peloton throughout the Bankruptcy Case. Exs. 2, 21.

15.     Mad Dogg filed this lawsuit on December 14, 2020.  ECF No. 1.

16.     On December 23, 2020, the Bankruptcy Case was closed on a final basis.  Ex. 2.

17.     Mad Dogg did not seek to reopen the Bankruptcy Case until August 13, 2021, after Peloton advised Mad Dogg on July 27, 2021 that Mad Dogg's claims are barred by the doctrine of judicial estoppel.  Exs. 32, 39.

18.     On August 1, 2021, Mr. Baudhuin provided a declaration to ████████████████ ████████████████  regarding his awareness of Mad Dogg's claims against Peloton.  Ex. 21.

11

19.     On September 14, 2021, the US Trustee wrote in an objection to Mad Dogg's motion to appoint an independent fiduciary:  "To now allow the debtor to pursue the claim post-bankruptcy would produce an inequitable result whereby the debtor would be rewarded for its omission, while its general non-insider creditors would suffer as non-insider general unsecured creditors are not receiving 100% of their claim.  Based upon the failure to disclosure the asset, the claim does not automatically revert back to the debtor at the conclusion of the bankruptcy case; rather the claim remains property of the estate and is not abandoned pursuant to section 554(d)."  Ex. 38 at 3.

## V.     JUDICIAL ESTOPPEL BARS MAD DOGG'S CLAIMS.

The purpose of judicial estoppel "is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (quoting *In re Coastal Plains*, 179 F.3d 197, 205 (5th Cir. 1999)); *Reynolds v. C.I.R*, 861 F.2d 469, 472 (6th Cir. 1988) ("The purpose of the doctrine is to protect the courts from the perversion of judicial machinery.").  It is a common law doctrine that prevents a party from asserting inconsistent positions.  *In re Superior Crewboats, Inc.*, 374 F.3d at 334 (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1998)).

The application of judicial estoppel in the bankruptcy context is straightforward.  When a debtor is aware of potential litigation claims that could bring money into the estate, but fails to disclose those claims, the reorganized debtor is barred from asserting or benefitting from those claims post-bankruptcy.  As the Fifth Circuit put it in the seminal case, *In re Coastal Plains*:

> The rationale for ... decisions invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy is that **the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.  The courts will not**

> **permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding**.

179 F.3d at 208; *see also Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) ("[J]udicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system[.]").

Indeed, the Fifth Circuit has routinely barred claims asserted post-bankruptcy that debtors failed to disclose during the bankruptcy. *See, e.g.*, *Superior Crewboats*, 374 F.3d at 334-36 (holding district court abused its discretion by rejecting judicial estoppel where plaintiff-debtor failed to disclose $2.5 million litigation claim in its bankruptcy and subsequently prosecuted that claim); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (affirming summary judgment on judicial estoppel grounds where plaintiff-debtor knew about, but failed to disclose, litigation claims during bankruptcy); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (affirming dismissal under judicial estoppel where plaintiff-debtor failed to disclose claims during bankruptcy); *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (affirming dismissal on judicial estoppel grounds where claims were pending during bankruptcy).[6]

Judicial estoppel applies when: "(1) the position of the party to be estopped is plainly inconsistent with its previous position, (2) the court accepted the previous position, and (3) the party did not act inadvertently." *Abreu v. Zale Corp.*, 2013 WL 1949845, at *2 (N.D. Tex. May 13, 2013) (citing *Reed*, 650 F.3d at 574). All three elements are easily met here.

---

[6] Applying judicial estoppel to bar claims under these circumstances is not unique to this Circuit: "All six appellate courts that have considered this question hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (collecting cases from the First, Third, Fifth, Eighth, Ninth, and Eleventh Circuits).

A.    **Mad Dogg's pursuit of its patent infringement claims is plainly inconsistent with its representation to the Bankruptcy Court that no such claims exist.**

The first prong of judicial estoppel is met when a party "assert[s] a legal position that is plainly inconsistent with a prior position." *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015). In the bankruptcy context, this prong is satisfied when a debtor fails to disclose potential litigation claims to a bankruptcy court and later pursues those undisclosed claims in a separate proceeding. *See, e.g., id.* (finding first prong of judicial estoppel satisfied where debtor pursued claims after omitting such claims from its schedules); *Superior Crewboats*, 374 F.3d at 335 (finding omission of litigation claim from bankruptcy filings and subsequent representation to state court that claim was viable and worth $2.5 million a "blatant inconsistency," which "readily satisfies" the first prong of judicial estoppel).

Mad Dogg does not dispute, nor could it, that it was obligated to but did not disclose to the Bankruptcy Court its potential claims against Peloton. Dkt. No. 104-1 at 4 (admitting "the potential Infringement Claims should have been, but were not, listed in its bankruptcy schedules or otherwise disclosed in the bankruptcy case."). *See also Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 207-08) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims."); *Coastal Plains*, 179 F.3d at 208 ("*Any claim with potential must be disclosed*, even if it is 'contingent, dependent, or conditional.'" (emphasis in original)); *id.* ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be

14

disclosed.").[7]  *See also* Ex. 38 (US Trustee Objection) at 1 ("A basic premise of bankruptcy law is that a debtor is required to make a full disclosure of its assets and liabilities in a bankruptcy case. The obvious reason for this requirement is to ensure that full and candid disclosures are made to the trustee, the Court and the debtor's creditors.").

Consequently, Mad Dogg's failure to disclose the potential litigation claims against Peloton constituted a representation that it had no such claims, which is inconsistent with its later assertion of those claims in this Court.[8]  *See In re Flugence*, 738 F.3d at 130 ("Because Flugence had an affirmative duty to disclose her personal-injury claim to the bankruptcy court and did not do so, she impliedly represented that she had no such claim."); *Superior Crewboats*, 374 F.3d at 335 ("[T]he [debtors'] omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed."); *Abreu*, 2013 WL 1949845, at *2 (finding post-bankruptcy claim "plainly inconsistent" with failure to disclose such claim during bankruptcy); *Anderson v. Entergy Operations, Inc.*, 2012 WL 5400059, at *3 (S.D. Miss. Nov. 5, 2012) ("[I]t was plainly inconsistent for Ward to represent to the bankruptcy court that he owned no contingent or unliquidated claims but then later pursue such claim in a different court.").

Accordingly, Mad Dogg's assertion of the patent infringement claims in this action constitutes a "plainly inconsistent" position, satisfying the first prong of judicial estoppel.

_____

[7] It is a felony for a debtor to conceal assets, including possible litigation claims, from a bankruptcy court.  *See* 18 U.S.C. § 152 (prohibiting concealment of assets); 18 U.S.C. § 157 (prohibiting schemes to defraud in bankruptcy); Collier on Bankruptcy ¶ 521.06[b] (16th ed. 2021) ("The intentional and fraudulent omission of property from the sworn schedules is an offense punishable under the Criminal Code."); 11 U.S.C. § 521(a)(1)(B) (requiring disclosure of assets).

[8] Mad Dogg's misconduct was not limited to omissions.  Mad Dogg's bankruptcy valuation expert opined, based on representations by Mad Dogg "management," that Mad Dogg's patents were of minimal value because the patents "are more for defensive purposes," and that "[a]ctively enforcing the patents, should the Company choose to do so, would be expensive and probably not successful."  Ex. 5 at 10.

**B.     The Bankruptcy Court accepted Mad Dogg's concealment of its litigation claims by confirming Mad Dogg's bankruptcy plan.**

The second prong of judicial estoppel—judicial acceptance—requires "that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Superior Crewboats*, 374 F.3d at 335 (quoting *Coastal Plains*, 179 F.3d at 206). "Courts have consistently held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan." *Abreu*, 2013 WL 1949845, at *3. "This reliance need not be explicit; the court assumes reliance on the debtor's schedules when the bankruptcy court confirms the debtor's plan." *Id.* (confirmation of plan constituted judicial acceptance); *see also Jethroe*, 412 F.3d at 600 ("[The bankruptcy] court certainly confirmed [debtor's] plan at least in part based on its assessment of her assets and liabilities." (citing *Coastal Plains*, 179 F.3d at 210)); *Edwards v. Huntington Ingalls, Inc.*, 2011 WL 3891872, at *6 (S.D. Miss. Aug. 29, 2011) ("This Court concludes that, by confirming [plaintiff's plan], the Bankruptcy Court relied, at least in part, on Plaintiff's bankruptcy schedules as presented[.]").

Here, the second prong is also easily met.  The Bankruptcy Court accepted Mad Dogg's representations when it confirmed the Plan based in part on Mad Dogg's bankruptcy schedules, which failed to identify any potential litigation claims against Peloton among Mad Dogg's assets. *See* Ex. 3 at 7, ¶ 74; Ex. 4 at 9, ¶ 74.

**C.     Mad Dogg's failure to list its claims against Peloton was not "inadvertent."**

Where a debtor fails to disclose its litigation claims during its bankruptcy case, it is judicially estopped from pursuing those claims unless it can show that the non-disclosure was "inadvertent"—*i.e.*, that (1) it was wholly unaware of the undisclosed claims, or (2) that there was no motive to conceal the claims. *Coastal Plains*, 179 F.3d at 210.  The undisputed material facts make it impossible for Mad Dogg to show either.

16

### 1.    Mad Dogg admits it had knowledge of the undisclosed claims.

To prove that the debtor "did not know of the inconsistent position," it has the burden to show that it "was unaware of the facts giving rise to [the claims]." *In re Flugence*, 738 F.3d at 130. **Whether or not the debtor was aware of its legal obligation to disclose them is irrelevant**: "[T]he controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions …. [A] lack of awareness of a statutory disclosure duty for [ ] legal claims is not relevant." *Id.* (quoting *Jethroe*, 412 F.3d at 601 n.4). *See also* Ex. 38 (US Trustee Objection) at 2 ("Inadvertence or ignorance of the law does not justify a failure to list a known actual or potential claim on the bankruptcy schedules.").  Moreover, the threshold knowledge required is minimal.  "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Coastal Plains*, 179 F.3d at 208; *see also, e.g., Austin v. McNamara*, 2007 WL 5787498, at *3 (E.D. Tex. Mar. 30, 2007) (granting summary judgment on judicial estoppel grounds and finding debtor corporation had knowledge of factual predicate for claims where debtor corporation's sole shareholder and director was involved in the origination of the business deal that gave rise to the suit).

Here, despite Mr. Baudhuin's initial testimony under oath that ████████████████████ ██████████████████████████████████████████████████████, the objective evidence and Mr. Baudhuin's own declaration—which he provided only after further discovery had proven his sworn testimony to be false—confirm that Mr. Baudhuin, and thus Mad Dogg, were acutely aware of the potential patent infringement claims against Peloton during the Bankruptcy Case. *See* Ex. 21; *see also* Exs. 1-2, 10-29, 33-39.

17

Indeed, Mr. Baudhuin's false deposition testimony is particularly contemptible in light of the undisputed facts, among others, that: (1) he was aware during the Bankruptcy Case that Milbank was analyzing the claims against Peloton; (2) ███████████████████████████ ███████████████████████; (3) ████████████████████████████████ ████████████; (4) he acknowledged receipt during the Bankruptcy Case of ███████████ ████████████████████████████; (5) ████████████████████ ██████████████████████████; and (6) ████████████████ ████████████████████████████████. *See* Exs. 10-12, 14-16, 18-26, 36, 38.  Thus, Mad Dogg cannot plausibly claim lack of awareness as a defense to judicial estoppel.

### 2.     Mad Dogg was motivated to conceal its claims.

Courts routinely find that a debtor cannot show a complete lack of motive, as it must, where it is "self-evident" that a debtor stands to gain from pursuing undisclosed claims for its own benefit after the bankruptcy has concluded.  *Abreu*, 2013 WL 1949845, at *4 (granting motion for judgment on the pleadings on judicial estoppel grounds: "Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure."); *see also Love*, 677 F.3d at 262 (affirming summary judgment and finding motivation to conceal from prospect that debtor could keep a recovery for himself).   Here, it is likewise self-evident that Mad Dogg and Mr. Baudhuin stood to gain from pursuing Mad Dogg's patent infringement claims against Peloton for Mad Dogg's own benefit once the bankruptcy had concluded.   And Mr. Baudhuin further benefited by acquiring all of Mad Dogg's equity for a small contribution after having suppressed claims the company now contend are worth as much as ███████████. *See* Ex. 31 at ¶ 30; Ex. 2.

*Maxie v. Dolet Hills Lignite Co., L.L.C*, 2008 WL 4762982, at *4 (W.D. La. Oct. 28, 2008) is instructive.  In *Maxie*, the bankruptcy court confirmed a plan—in part based on schedules that

omitted mention of the litigation claims—that provided less than a full recovery for unsecured creditors. *Id.* In granting defendant's motion for summary judgment, the district court noted that the reorganized debtor would "certainly reap a windfall" if permitted to pursue the undisclosed claims for its own benefit, and thus concluded that the plaintiffs could not establish the lack of a motive to conceal. *Id.* The court further noted that "the doctrine of judicial estoppel was designed to prevent such results." *Id.*

The motivation to conceal here is obvious. By failing to disclose Mad Dogg's claims against Peloton that Mad Dogg now asserts are worth ███████████████████, Mr. Baudhuin was able to depress the debtor's value, short-change its creditors, personally buy Mad Dogg out of bankruptcy, and then pursue those claims for his own benefit.[9] The undisputed facts therefore demonstrate that Mad Dogg and Mr. Baudhuin cannot show there was "no motive" to conceal the claims, and the third element of judicial estoppel is satisfied as a matter of law. *See* Ex. 38 (US Trustee Objection) at 3 ("To now allow the debtor to pursue the claim post-bankruptcy would produce an inequitable result whereby the debtor would be rewarded for its omission, while its general non-insider creditors would suffer"). With all three prongs satisfied based on an undisputed record, the Court should enter summary judgment in Peloton's favor on all of Mad Dogg's claims for patent infringement.

---

[9] Mad Dogg's intent to conceal the potential infringement claims is also evident from its decision to delay its formal engagement of the Milbank firm to pursue those claims until *one week after confirmation of Mad Dogg's plan of reorganization*. This, despite having been working with Milbank for nearly a year while representing to its valuation expert (who repeated as much to the Bankruptcy Court) that Mad Dogg's patents "are more for defensive purposes," and that "[a]ctively enforcing the patents, should the Company choose to do so, would be expensive and probably not successful." Ex. 5 at 10, ¶ 183.

## VI.   SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO REAL PARTY IN INTEREST WITH STANDING TO PURSUE MAD DOGG'S CLAIMS.

As Mad Dogg concedes, because the alleged infringement occurred prior to the Petition Date, "the Infringement Claims were assets of the bankruptcy estate," not of Mad Dogg.  Dkt. No. 104-1 at 11.[10]  *See also* Ex. 38 (US Trustee Objection) ("Based upon the failure to disclosure the asset, the claim does not automatically revert back to the debtor at the conclusion of the bankruptcy case; rather the claim remains property of the estate and is not abandoned pursuant to section 554(d).").  Thus, Mad Dogg is not the real party in interest and lacks standing to pursue this action. *See Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (bankruptcy trustee is the real party in interest with exclusive standing to assert undisclosed claims occurring prior to the Petition Date); *see also Degamo*, No. 13-00141 JAO-KJM, 2019 WL 1209086, at *8-9 (D. Haw. Mar. 14, 2019) (dismissing for lack of prudential standing action brought by plaintiff-debtor based on claims belonging to the bankruptcy estate); *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 848 (N.D. Ill. 2013) (dismissing copyright infringement claims for lack of standing which debtor failed to disclose during bankruptcy proceedings).  Accordingly, this Court should dismiss Mad Dogg's patent infringement claims for the independent reason that it lacks standing to pursue them.

## VII.   CONCLUSION

For the foregoing reasons, Peloton respectfully requests that the Court enter an order granting summary judgment in Peloton's favor and against Mad Dogg on all of Mad Dogg's patent infringement claims because they are barred by judicial estoppel and because Mad Dogg lacks

---

[10] While Mad Dogg asserts that the asset revested to the reorganized debtor as an unadministered asset, Mad Dogg is incorrect.  Based on its failure to disclose the asset, the claim does not automatically revert back to the debtor at the conclusion of the bankruptcy case; rather, the claim remains property of the estate and is not abandoned pursuant to section 554(d).  *See* 11. U.S.C. §§ 521, 541, 554; *see also* Ex. 38 (US Trustee Objection) at 2-3.

standing, without prejudice to an independent fiduciary bringing the claims in a separate action for

the benefit of innocent creditors.[11]

---

[11] While Mad Dogg has moved the Bankruptcy Court to approve the appointment of an independent fiduciary to pursue the patent infringement claims, that motion is irrelevant because any efforts to substitute in or join an independent fiduciary at this late stage of the action should fail. *See Feist v. Consol. Freightways Corp.*, 100 F. Supp. 2d 273, 280 (E.D. Pa. 1999), aff'd, 216 F.3d 1075 (3d Cir. 2000) (denying motion to substitute trustee as the real party in interest and granting defendant's motion for judgment on the pleadings because plaintiff could not establish it was an "honest mistake" to file in his own name where plaintiff failed to disclose claims to the bankruptcy court and sought litigation counsel immediately after close of bankruptcy case). Nonetheless, in the event an independent fiduciary is permitted to substitute into or join this action, the parties will need to amend the Court's Scheduling Order, including to provide for a new deadline by which the parties may move for summary judgment.

Dated:  September 14, 2021

Respectfully submitted,

/s/ Michael J. Reiss

Michael J. Reiss
California Bar No. 275021
LATHAM & WATKINS LLP
355 South Grand Ave., Suite 100
Los Angeles, CA 90071
Telephone: (213) 891-7522
Facsimile: (213) 891-8763
Email: michael.reiss@lw.com

**COUNSEL FOR DEFENDANT
PELOTON INTERACTIVE, INC.**

OF COUNSEL:

Steven N. Feldman
New York Bar No. 4775052
Benjamin Zachary Bistricer
New York Bar No. 5590922
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: steven.feldman@lw.com
Email: ben.bistricer@lw.com

Douglas E. Lumish
California Bar No. 183863
Gabriel S. Gross
California Bar No. 254672
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: gabe.gross@lw.com

Sarah M. Gragert
Ethan Lawrence Plail
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2384
Facsimile: (202) 637-2201

Email: sarah.gragert@lw.com
Email: ethan.plail@lw.com

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: kimberly.li@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed electronically on September 14, 2021, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.  Any other counsel of record will be served by first class U.S. mail on this same date.

<i>/s/</i> Michael J. Reiss<br>Michael J. Reiss

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ Michael J. Reiss
Michael J. Reiss

25